UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DAVID VANN,

                                    Plaintiffs,

                -against-                                    INDEX NO.: 18-CV-6464 (MAT)

THE CITY OF ROCHESTER, a municipal entity,
POLICE OFFICER MATTHEW DRAKE, IBM # 1956,
POLICE OFFICER STEVEN MITCHELL, IBM # 2134,
INVESTIGATOR JEFFREY KESTER, IBM # 2230,
SERGEANT JEFFREY LAFAVE, II, IBM # 1634
POLICE OFFICER DAVID E. KEPHART, IBM # 2074,
POLICE OFFICER ADAM BRODSKY, IBM # 2478,
POLICE OFFICER TIMOTHY DEMPSEY, IBM #
2122, INVESTIGATOR CHRISTOPHER MUSCATO,
IBM # 1331, CAPTAIN GARY MOXLEY, POLICE
OFFICER ANGEL PAGAN, IBM # 2421, POLICE
OFFICER CHRISTOPHER J. BARBER, IBM # 1949,
SERGEANT DANIEL J. ZIMMERMAN, IBM # 295,
POLICE OFFICER ERIC MCGRAW, IBM # 2131,
SERGEANT JOSEPH LAIOSA, IBM # 1180,
INVESTIGATOR TOMESHA ANGELO, IBM # 1665,
TECHNICIAN STEPHANIE MINTZ, IBM # 2496, ,
Police Officers "JOHN DOES 1-10" (whose names are
currently unknown), and other unidentified members of
the Rochester Police Department, THE COUNTY OF
MONROE, SANDRA DOORLEY, individually and as
District Attorney of the County of Monroe, and
MICHAEL HARRIGAN, as an employee of the Monroe
County District Attorney's Office and individually,

                                    Defendants.
-------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE COUNTY
DEFENDANTS' MOTION TO DISMISS**

                                    ROTH & ROTH, LLP
                                    Elliot D. Shields
                                    *Attorneys for Plaintiff*
                                    192 Lexington Avenue, Suite 802
                                    New York, New York 10016
                                    (212) 425-1020
                                    eshields@rothandrothlaw.com

## TABLE OF CONTENTS

TABLE OF CONTENTS  .................................................................................i

TABLE OF AUTHORITIES  .........................................................  iii

PRELIMINARY STATEMENT  ...................................................  1

STATEMENT OF FACTS …………..…………………………………4

MOTION TO DISMISS STANDARD …………………………………………5

ARGUMENT

    POINT I

    MR. VANN HAS STATED A PLAUSIBLE EVIDENCE
    MANUFACTURING CLAIM AGAINST ADA HARRIGAN ................... …  6

    POINT II

    HARRIGAN IS NOT ENTITLED TO ABSOLUTE IMMUNITY............. …  8

        A. *Hill* v. *City of New York* demonstrates the County's motion must be
        denied if the Amended Complaint is ambiguous as to whether
        Harrigan's evidence fabrication occurred during the investigatory
        or advocacy stage……………………………………………………..9

        B. Whether Harrigan's fabricated evidence was also introduced at the
        grand jury or trial is irrelevant to Mr. Vann's claim……………..10

        C. Mr. Vann's claim against Harrigan is based on Harrigan's own
        fabrication of evidence—**NOT** his evaluation of RPD evidence…..11

        D. Mr. Vann's claim against Harrigan is not based on a failure to
        investigate…………………………………………………………….11

    POINT III

    HARRIGAN IS NOT ENTITLED TO QUALIFIED IMMUNITY......... …  12

    POINT IV

    MR. VANN HAS STATED A PLAUSIBLE MUNICIPAL LIABILITY
    CLAIM........................................................................................ …  13

i

A.  The Law Governing *Monell* Liability ……………………………...14

B.  The County May Be Held Liable Under § 1983 Based on the Monroe County D.A.'s Actions (or Inaction) as a Final Policymaking Official …………………………………...………..14

C.  Mr. Vann Has Plausibly Pled an Underlying Fair Trial Violation 18

D.  Mr. Vann has plausibly pled that the Monroe County D.A. was deliberately indifferent to the need to train, supervise, or discipline prosecutors in their constitutional obligations and that this policy caused Harrigan to violate Mr. Vann's Constitutional Right to a Fair Trial………………………………………………………..20

**CONCLUSION** …………………………………………………………25

## <u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>                                                                                                                 <u>**Pages**</u>

*Amnesty Am.* v. *Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) ................................ 14, 24, 25

*Anderson News, LLC* v. *Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) ....................... 5

*Arista Records, LLC* v. *Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ................................. 5

*Babi-Ali* v. *City of New York*, 979 F. Supp. 268 (S.D.N.Y. 1997) ...........................22, 25

*Bailey* v. *City of New York*, 79 F. Supp. 3d 424 (E.D.N.Y. 2015) ........................ 13, 22

*Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007)............................................................ 5

*Benitez* v. *City of New York*, 17CV3827SJSJB, 2018 WL 2973387 (EDNY June 13,
2018) ................................................................................................................. 17, 22

*Bermudez* v. *City of New York*, 790 F.3d 368 (2d Cir. 2015).........................................7

*Buckley* v. *Fitzsimmons,* 509 U.S. 259 (1993) ...............................................................8, 9

*Cash* v. *Cty. of Erie*, 654 F.3d 324 (2d Cir. 2011)........................................... 14, 22, 25

*City of Canton* v. *Harris*, 489 U.S. 378 (1989) ......................................................... 14

*Collins* v. *City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. 2013) ..................................... 18, 22

*Connick* v. *Thompson*, 563 U.S. 51 (2011)............................................................... 14

*Disorbo* v. *Hoy*, 74 F. App'x 101 (2d Cir. 2003) ........................................................25

*Doe* v. *Phillips*, 81 F.3d 1204 (2d Cir. 1996) ......................................................... 10

*Dory* v. *Ryan*, 25 F.3d 81 (2d Cir. 1994) ................................................................ 10

*Dougherty* v. *Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002) ........... 5

*Drake* v. *Portuondo*, 553 F.3d 230 (2d Cir. 2009) .......................................................19

*Felmine* v. *City of N.Y.*, 2011 WL 4543268 (EDNY 2011) ...................................... 10

*Fiacco* v. *City of Rensselaer*, 783 F.2d 319 (2d Cir. 1986)....................................24, 25

*Garnett* v. *Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016)...............................5

*Garnett* v. *Undercover Officer C0039*, No. 1:13-CV-7083-GHW, 2015 WL 1539044
(S.D.N.Y. Apr. 6, 2015)....................................................................................7

*Gentile* v. *Cty. of Suffolk*, 926 F.2d 142 (2d Cir. 1991)..................................................... 15, 17, 24

*Giglio* v. *United States*, 405 U.S. 150 (1972) ............................................................................ 19

*Gogol* v. *City of New York*, 15 CIV. 5703 (ER), 2017 WL 3449352 (SDNY Aug. 10, 2017) .................................................................................................................................... 6

*Goldstein* v. *City of Long Beach*, 715 F.3d 750 (9th Cir. 2013).....................................17

*Harlow* v. *Fitzgerald*, 457 U.S. 800 (1982) .......................................................................... 12

*Hill* v. *City of New York*, 45 F.3d 653 (2d Cir 1995) ..................................................... 10

*Hutchison* v. *Deutsche Bank Sec. Inc.*, 647 F.3d 479 (2d Cir. 2011) ........................... 16

*Isufi* v. *Prometal Constr., Inc.*, 927 F. Supp. 2d 50 (E.D.N.Y. 2013) ......................... 16

*Jenkins* v. *City of New York*, 478 F.3d 76 (2d Cir. 2007)............................................12

*Johnson* v. *Kings Cty. Dist. Attorney's Office*, 308 A.D.2d 278 (2d Dep't 2003) .......................16

*Johnson* v. *Louisiana*, No. 09-55, 2010 WL 996475 (W.D. La. Mar. 16, 2010) .........................17

*Jones* v. *City of New York*, 988 F. Supp. 2d 305 (E.D.N.Y. 2013)................................... 17, 18, 24

*Jovanovic* v. *City of New York*, No. 04 Civ. 8437, 2010 WL 8500283 (S.D.N.Y. Sept. 28, 2010)..................................................................................................................................... 17

*Keene* v. *City of Rochester,* et al., 17-cv-6708 (Apr. 4, 2017) ...............................................20, 25

*Kyles* v. *Whitley*, 514 U.S. 419 (1995) ................................................................................20

*Malley* v. *Briggs*, 475 U.S. 335 (1986) .............................................................................. 12

*Manganiello* v. *City of New York*, 612 F.3d 149 (2d Cir. 2010) .................................... 6

*McCants* v. *City of Newburgh*, No. 14 CV 556, 2014 WL 6645987 (S.D.N.Y. Nov. 21, 2014).................................................................................................................................... 24-25

*McMillian* v. *Monroe Cty.*, 520 U.S. 781 (1997) ................................................... 14-16

*Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658 (1978)..............................................3, 14

*Morse* v. *Fusto,* 804 F.3d 538 (2d Cir 2015) ...................................................... 6-8, 19

*Myers* v. *County of Orange*, 157 F.3d 66 (2d Cir. 1998)........................................... 15, 16, 17, 18

*Napue* v. *Illinois*, 360 U.S. 264 (1959).......................................................................... 19

*Owen* v. *City of Independence*, 445 U.S. 622 (1980) ............................................. 16, 18

*People* v *Carver*, 114 AD3d 1199 (4th Dept 2014)........................................................22

*People* v. *Gayden*, 111 A.D.3d 1388 (4th Dept. 2013) ................................................23

*Poventud* v. *City of New York*, 750 F.3d 121 (2d Cir. 2014)........................................19

*Ramos* v. *City of New York*, 285 A.D.2d 284 (1st Dep't 2001).............................. 16, 22

*Redd* v. *N.Y. Div. of Parole*, 678 F.3d 166 (2d Cir. 2012) ..........................................19

*Reynolds* v. *Giuliani*, 506 F.3d 183 (2d Cir. 2007) ....................................................24

*Ricciuti* v. *N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997) ................................6, 12

*Safepath Sys. LLC* v. *N.Y.C. Dep't of Educ.*, 563 F. App'x 851 (2d Cir. 2014) ........... 5

*Simon* v. *City of New York*, 727 F.3d 167 (2d Cir. 2013) ............................................. 9

*Smith* v. *Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) ..................................................... 9

*Su* v. *Filion*, 335 F.3d 119, 126-27 (2d Cir. 2003) ................................................... 19

*United States* v. *Agurs,* 427 U.S. 97 (1976) ............................................................. 6

*United States* v. *Emmenegger,* 329 F. Supp. 2d 416 (S.D.N.Y. 2004)........................16

*United States* v. *Gaudin*, 515 U.S. 506 (1995) ....................................................... 19

*Van de Kamp* v. *Goldstein*, 555 U.S. 335 (2009) .......................................... 16, 17, 18

*Vann* v. *City of New York*, 72 F.3d 1040 (2d Cir. 1995) .......................................22, 24

*Walker* v. *City of New York,* 974 F.2d 293 (2d Cir. 1992) ...................................... 15-18

*Wearry* v. *Cain*, 136 S. Ct. 1002 (2016).................................................................19

*Zahrey* v. *Coffey*, 221 F.3d 342 (2d Cir. 2000)................................................... 6, 12-13

| **Statutes** | **Pages** |
| --- | --- |

42 U.S.C. §1983 …………………………………………………..…………………..*passim*

| **Rules** | **Pages** |
| --- | --- |

Fed. R. Civ. P. 12(b)…………………………………………………..……………… 3, 5

| **Misc.** | **Pages** |
| --- | --- |

2018 Monroe County Proposed Budget …………………………………………….…18

## PRELIMINARY STATEMENT

On September 4, 2015, at approximately 11:30 p.m., Rochester Police Department ("RPD") Officers Steven Mitchell, Jeffrey Kester and Matthew Drake brutally beat the Plaintiff, David Vann, while he was handcuffed, in front of a convince store on South Avenue known as the A & Z Market. Amended Complaint ("Am. Compl.") ¶¶ 1, 36, 82-133, 184. The beating was video recorded by four store security cameras. *Id*. ¶ 2. The Amended Complaint incorporates by reference and includes each fact depicted in the security camera videos. *Id*. ¶ 37, note 2.

The RPD immediately took steps to cover up Mr. Vann's brutal beating and falsely charged Mr. Vann with assaulting Kester and Drake. *Id. ¶* 157.  Numerous additional RPD personnel responded to the scene, *id*. ¶¶ 122-28, and Sergeant LaFave ordered Officer Kephart and other officers to detain witnesses and obtain favorable statements, whether or nor the means used to obtain said statements was lawful. *Id*. ¶¶ 230-34. Kephart and the other RPD officers obtained a "supporting deposition" from D.M., who was on parole and violating his 8:00 p.m. curfew at the time of the incident, *id*. ¶¶ 235-240. The allegations in D.M.'s "supporting deposition" were clearly contradicted by the security camera video. *Id*. ¶ 242. The RPD did not obtain statements from any other independent witnesses, including A.M., despite the security camera video depicting A.M. and several other witnesses. *Id*. ¶¶ 249-252.

Approximately seven months prior to the case being presented to the grand jury, the RPD provided Monroe County Assistant District Attorney Michael Harrigan ("Harrigan") with the grand jury referral. *Id*. ¶¶ 313-14, 327. The grand jury referral included copies of all original RPD documents created in connection with the incident, including a DVD containing a copy of the security camera recording of the incident ("security camera DVD"), the witness statements, and the felony complaints. *Id*. ¶¶ 303-12.

1

Harrigan fabricated his own account of the incident based on his observations of Mr.

Vann's alleged assault of Kester and Drake as depicted in the security camera DVD. *Id*. ¶ 320.

Harrigan's account was designed to secure an indictment and to nullify Kester, Mitchell and

Drake's constitutionally impermissible use of force against Mr. Vann. *Id*. ¶ 320-21. Because

Harrigan's account omitted facts depicted on the security camera DVD, and contained factual

misrepresentations that were contradicted by the security camera DVD, Harrigan's omissions

and misrepresentations were material to the grand jury's decision to indict. *Id*. ¶¶ 327-38.

Harrigan's false account of the incident, which was presented to the jury through the testimony

of Kester, Mitchell and Drake, omitted material facts, including that a video of the incident

existed, *id*. ¶ 324-25, and that the video contradicted the accounts as documented in the RPD

incident reports, arrest reports, use of force reports, felony complaints, and other RPD

documents. *Id*. ¶ 326. Harrigan's false account is further demonstrated by the false assertions

contained in Mitchell and Drake's grand jury testimony that was not contained in their RPD

paperwork, such as:

    a.  Drake's testimony that Mr. Vann "fought" with the RPD officers, *compare id*. ¶¶ 275-76 with *id*. ¶ 332;

    b.  Drake's testimony that, "as Officer Mitchell is taking the suspect to the vehicle, somehow there's another altercation and the subject is not wearing two handcuffs, so I go back there to effect that arrest. Again, we have to re-handcuff the defendant," *id*. ¶¶ 275-76 with *id*. ¶ 332;

    c.  Mitchell's testimony that after leaving the store Mr. Vann, "turned back around" and "be[gan] to walk back towards the store, and balled – he actually balled his fists up as he turned towards the officers. And he yelled out something"; *compare id*. ¶ 294 with *id*. ¶ 330;

    d.  Mitchell's testimony that, after Mr. Vann was first brought to the ground, he "had been reaching for part of his waistband"; *compare id*. ¶ 294 with *id*. ¶ 330;

e.  Mitchell's testimony that after he brought Mr. Vann to the patrol vehicle to try and complete searching him, "he bumped his chest off the patrol vehicle" causing Mitchell to lose control of him, *compare id*. ¶ 294 with *id*. ¶ 330;

f.  Mitchell's testimony that after he "bumped his chest off the patrol vehicle," Mr. Vann then stood in front of him "and kind of came at me", *compare id*. ¶ 294 with *id*. ¶ 330; and

g.  Mitchell's testimony that he pepper sprayed Mr. Vann because he refused to stop reaching for his waistband, *compare id*. ¶ 294 with *id*. ¶ 330.

As a result of Harrigan's fabricated account of the incident, the grand jury issued a true bill and Mr. Vann was prosecuted for approximately 10 additional months on for allegedly assaulting Kester and Drake. Mr. Vann was acquitted on both of the assault charges on February 16, 2017, after a three-day trial. *Id*. ¶¶ 4, 338, 385, 493.

This civil rights action seeks to hold ADA Harrigan personally liable for his fabrication of evidence, which caused Mr. Vann's deprivation of liberty. The action also seeks to hold the County of Monroe liable, under *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because Harrigan's unlawful conduct resulted from the unlawful, office-wide policies of the Monroe County District Attorney's Office ("D.A.'s Office"), a Monroe County agency.

The County Defendants, relying on Fed. R. Civ. P. 12(b)(6), seek to dismiss this action against them on the alleged basis that the Amended Complaint fails to state a claim. But the Amended Complaint, on its face, plainly states valid claims against them. To overcome this, the County Defendants ignore Mr. Vann's allegations, blatantly mischaracterize his claims, and make inapplicable, boilerplate legal arguments that ignore binding Second Circuit precedent.

Contrary to the County's argument, Mr. Vann's fabrication claim is not based on Harrigan's *presentation* of fabricated evidence to the grand jury, but instead is based on

3

Harrigan's *knowing creation of his own false account of the incident* that was material to the grand jury's decision to indict, and caused his deprivation of liberty.

The County Defendants also falsely claim that Plaintiff's theory of *Monell* liability is based on the D.A.'s Office failure to train prosecutors in their prosecutorial functions—no fair reading of the Amended Complaint supports this interpretation. Instead, Mr. Vann's *Monell* claim is clearly pled under a *failure to discipline* theory of municipal liability. Specifically, Mr. Vann alleges that the D.A. Office is deliberately indifferent to its prosecutors violating criminal defendants' fair trial rights, as demonstrated by its blatant failure to discipline prosecutors for violating criminal defendants' constitutional fair trial rights or for any other reason. In fact, the County Defendants completely ignore the Amended Complaint's damning allegations that in response to records requests under the New York State Freedom of Information Law ("FOIL"), the County admitted, *inter alia*, that since January 1, 1998, the D.A.'s Office has failed to discipline any prosecutor for any reason—including where appellate courts have reversed convictions based on findings that prosecutors committed egregious violations of the criminal defendants' fair trial rights. *Id.* ¶¶ 801-06. As detailed below, these allegations regarding the County's admissions *alone* are sufficient to plausibly allege municipal liability under a deliberate indifference theory of liability.

Meanwhile, the County Defendants, in opposing Plaintiff's evidence fabrication and *Monell* claims, ignore binding Second Circuit case law that squarely rejects their defenses. For the reasons set forth below, the County Defendants' motion should be denied.

## STATEMENT OF FACTS

A Rule 12(b)(6) motion concerns the contents of the pleadings. Mr. Vann relies on the facts alleged in his Amended Complaint and the materials incorporated by reference therein.

**<u>MOTION TO DISMISS STANDARD</u>**

A Rule 12(b)(6) motion must be denied if the complaint includes "enough facts to state a claim to relief that is plausible on its face," that is, enough factual allegations, taken as true, "to raise a right to relief above the speculative level." *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Arista Records, LLC* v. *Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). "[I]n determining whether a complaint states a claim that is plausible, the court is required to proceed '*on the assumption that all the [factual] allegations in the complaint are true*,' [e]ven if their truth seems doubtful." *Anderson News, LLC* v. *Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "Given that the plausibility requirement '*does not* impose a *probability* requirement at the pleading stage . . . a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

The Court must construe the complaint liberally and accept all facts alleged on information and belief when they are "peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista*, 604 F.3d at 120 (citations omitted); *see also Keiler* v. *Harlequin Enters. Ltd.*, 751 F.3d 64, 71 (2d Cir. 2014). Direct evidence of a defendant's intent, motive, or knowledge is rarely available to plaintiffs before discovery, and "[i]t is sufficient to allege facts from which [the relevant mental state] on the part of the defendants reasonably may be inferred." *Safepath Sys. LLC* v. *N.Y.C. Dep't of Educ.*, 563 F. App'x 851, 857 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Dougherty* v. *Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002)).

## ARGUMENT

## POINT I

## MR. VANN HAS STATED A PLAUSIBLE EVIDENCE-MANUFACTURING CLAIM AGAINST ADA HARRIGAN

A prosecutor violates a defendant's constitutional fair trial rights when he or she knowingly fabricates evidence prior to the grand jury presentation, which is found to be material to the decision to indict. *Morse* v. *Fusto*, 804 F.3d 538, 547 (2d Cir 2015) ("This right was violated … when the defendants knowingly created false or misleading billing summaries that were determined to be material to the grand jury's decision to indict"); see also *Manganiello* v. *City of New York*, 612 F.3d 149, 159 (2d Cir.2010)(affirming a verdict against a police officer who was found to have "misrepresented the evidence to the prosecutors, or failed to provide the prosecutor with material evidence or information, or gave testimony to the Grand Jury that *was false or contained material omissions,*" while knowing that he "was making a material misrepresentation or omission or giving false testimony"); *Zahrey* v. *Coffey*, 221 F.3d 342, 355–56 (2d Cir. 2000); *Ricciuti* v. *N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)("false information likely to influence a jury's decision ... violates the accused's constitutional right to a fair trial," because to hold otherwise, "works an unacceptable 'corruption of the truth-seeking function of the trial process.'" *quoting United States* v. *Agurs,* 427 U.S. 97, 104 (1976)).

Significantly, in the context of a fabrication of evidence claim, the Second Circuit equates "the fraudulent omission of factual information ... with the affirmative perpetration of a falsehood," and expressly disclaims any "plausible legal distinction between misstatements and omissions." *Morse* v. *Fusto*, 804 F.3d 538, 550 (2d Cir 2015); *Gogol* v *City of New York*, 15 CIV. 5703 (ER), 2017 WL 3449352, at *10 (SDNY Aug. 10, 2017). In *Morse*, the court further held that

prior case law concerning liability for law enforcement officials found to have falsified evidence applied with equal force to prosecutors. *Morse* v. *Fusto*, 804 F.3d at 550.

Moreover, an investigating official's own fabricated account of his or her observations of alleged criminal activity is sufficient to support an evidence fabrication claim. *Garnett* v. *Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti* v. *N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  An evidence-fabrication claim is complete once the prosecutor possesses the fabricated evidence and the plaintiff is deprived of liberty—the false evidence need not be admitted, or admissible, at trial to be "likely to influence a jury," nor does the claim require that the evidence result in a conviction. *Ricciuti*, 124 F.3d at 127, 130; *Garnett* v. *Undercover Officer C0039*, No. 1:13-CV-7083-GHW, 2015 WL 1539044, at *8 (S.D.N.Y. Apr. 6, 2015), *aff'd*, 838 F.3d 265. However, indictment, imprisonment, and prolonged prosecution are reasonably foreseeable, consequential damages for which the defendant who fabricates evidence may be held liable. *See, e.g.*, *Bermudez* v. *City of New York*, 790 F.3d 368, 376 (2d Cir. 2015) (dismissal of evidence-fabrication claim not appropriate because defendants' fabrication and forwarding of false evidence may have remained a proximate cause of the plaintiff's conviction and incarceration); *Shabazz* v. *Kailer*, 201 F. Supp. 3d 386, 398 (S.D.N.Y. 2016) (same). This is true even where the prosecutor is the investigator who fabricated the evidence. *Zahrey*, 221 F.3d at 357 ("Since a jury could find that Coffey would foresee that he himself would use the fabricated evidence and that a deprivation of Zahrey's liberty would result, Zahrey's claim survives Coffey's attempt to have the claim dismissed, as a matter of law, because of a qualified immunity defense.").

As set forth above, pp. 1-2, *supra*, and at Am. Compl. ¶¶ 303-21, Plaintiff alleges that Harrigan observed Mr. Vann's alleged criminal activity as depicted in the security camera DVD,

and manufactured his own false account of the incident that was intended to provide probable cause to indict, while also providing cover to Kester, Mitchell and Drake by nullifying their constitutionally impermissible use of excessive force against Mr. Vann.

Harrigan's fabricated account omitted material facts and contradicted the objective facts depicted on the security camera DVD. Knowing that these omissions and material misrepresentations were the type of information a reasonable grand jury would be likely to rely upon, Harrigan instructed Kester, Mitchell and Drake to testify consistent with his fabricated account to the grand jury, and thereby caused Mr. Vann to be indicted and prosecuted, in violation of his due process rights. These facts make out all the elements of Mr. Vann's claim. Mr. Vann then alleges further, consequential damages: his prolonged prosecution that culminated in a three-day jury trial. *Id.* ¶ 338.

## POINT II

## HARRIGAN IS NOT ENTITLED TO ABSOLUTE IMMUNITY

The Supreme Court has observed that absolute immunity is unavailable for investigative conduct that takes place before probable cause has been established. *Buckley* v. *Fitzsimmons,* 509 U.S. 259, 273 (1993); *see also Zahrey*, 221 F.3d at 347 n.2 (explaining that *Buckley* "suggests that a prosecutor's conduct prior to the establishment of probable cause should be considered investigative"). The Second Circuit has further clarified that absolute immunity is unavailable where, as here, a prosecutor fabricates evidence prior to the grand jury presentation, and said fabricated evidence was material to the grand jury's decision to indict. *Morse* v. *Fusto*, 804 F.3d 538, 547 (2d Cir 2015).

The Second Circuit has distinguished between "preparing for the presentation of an existing case," on the one hand, and attempting to "furnish evidence on which a prosecution could

be based," on the other hand—making clear that only the former entitles a prosecutor to absolute immunity. *Smith* v. *Garretto*, 147 F.3d 91, 94 (2d Cir. 1998). The fact that Harrigan later called a grand jury to consider the evidence he had previously fabricated does not retroactively transform that work from the investigative into the prosecutorial. *Buckley*, 509 U.S. at 275–276 (1993) ("A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same").

As explained above, pp. 1-2, *supra*, and Am. Compl. ¶¶ 303-321, Mr. Vann alleges that Harrigan knowingly fabricated evidence prior to the grand jury proceedings based on his observations of Mr. Vann's alleged criminal activity as depicted on the security camera DVD, which was material to the grand jury's decision to indict and caused Mr. Vann's deprivation of liberty. *Id.* ¶ 321.

The County Defendants fail to address Plaintiff's allegations regarding Harrigan's fabricated account of the incident based on his observations of Mr. Vann's alleged criminal conduct as depicted in the security camera DVD. Thus, they have not and cannot meet their burden of demonstrating that Harrigan's fabrication of evidence occurred during his advocacy and not his investigatory capacity. Since Defendants failed to meet their burden of showing that Harrigan was functioning as an advocate when he created his fabricated account of the incident, their absolute immunity defense fails as a matter of law. *See Simon* v. *City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (holding that the "ultimate question" in deciding if absolute immunity is available is

"whether [defendants] have carried their burden of establishing that they were functioning as advocates when they engaged in the challenged conduct.") (quoting *Doe* v. *Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996)).

### A. *Hill* v. *City of New York* demonstrates the County's motion must be denied if the Amended Complaint is ambiguous as to whether Harrigan's evidence fabrication occurred during the investigatory or advocacy stage

The County Defendants' reliance on *Hill* v. *City of New York*, 45 F.3d 653 (2d Cir 1995) is misplaced——in fact, *Hill* demonstrates that their motion should be denied. In *Hill*, the court held that where it could not be determined from the pleadings whether the prosecutor's fabrication of evidence occurred at the investigatory or advocacy stage, the prosecutor's motion to dismiss must be denied. *Id*. at 663 ("It is impossible, as the district court observed, to determine from the pleadings alone what function Adago was engaged in when he and the other defendants videotaped the interview of Joseph Hill. Quite plainly, when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss."). Thus, pursuant to *Hill*, if the Court finds that it cannot be determined from the Amended Complaint whether Harrigan's fabrication of evidence occurred during the investigatory or advocacy stage, then discovery is required, and the County's motion to dismiss must be denied.

### B. Whether Harrigan's fabricated evidence was also introduced at the grand jury or trial is irrelevant to Mr. Vann's claim

The County Defendants' reliance *Dory* v. *Ryan*, 25 F.3d 81 (2d Cir. 1994), and *Felmine* v. *City of N.Y.*, 2011 WL 4543268 (EDNY 2011) is similarly misplaced, because the plaintiff's claims in those cases were premised upon prosecutors' **presenting** false evidence at the grand jury and trial—which **is not** the basis of Mr. Vann's claims against Harrigan in this case.

10

As explained above, Mr. Vann's claim is based upon *Harrigan's fabrication of evidence before the grand jury presentation, and the injury it caused, long before the trial.* Mr. Vann's indictment and subsequent prosecution constitute the loss of liberty damages that foreseeably resulted from Harrigan's fabrication of evidence **before** the grand jury presentation. Thus, Defendants' motion to dismiss the claims against Harrigan must be denied.

### C.  Mr. Vann's claim against Harrigan is based on Harrigan's own fabrication of evidence—<u>NOT</u> his evaluation of RPD evidence

Mr. Vann's claim against Harrigan is based upon *Harrigan's own fabrication of evidence before the grand jury presentation,* and not Harrigan's alleged evaluation of evidence provided by the RPD. As set forth above, pp. 1-2, *supra*, and Am. Compl. ¶¶ 303-20, Plaintiff alleges that Harrigan fabricated his own account of the incident based on his observations of Mr. Vann's alleged crimes as depicted in the security camera DVD, which was material to the grand jury's decision to indict. Mr. Vann's indictment and subsequent prosecution constitute the loss of liberty damages that foreseeably resulted from Harrigan's ***fabrication of evidence*** before his presentation of said evidence to the grand jury. Thus, Defendants' motion to dismiss the claims against Harrigan must be denied.

### D.  Mr. Vann's claim against Harrigan is not based on a failure to investigate

No fair reading of the Amended Complaint supports the County's assertion that Mr. Vann's claims against Harrigan are plead under a failure to investigate theory of liability. This portion of Defendants' memorandum is obviously copied from a memorandum in a different case, and like many of the arguments in their memorandum, is completely inapplicable here. This argument demonstrates that Defendants have not even attempted to comprehend the claims pleaded against them, but instead have filed a boilerplate motion to dismiss, which is simply a waste of this Court's time and precious judicial resources.

## POINT III

## HARRIGAN IS NOT ENTITLED TO QUALIFIED IMMUNITY

A state actor "is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins* v. *City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (internal quotation marks omitted).

Conversely, qualified immunity is unavailable to state actors who knew or reasonably should have known that his or her actions would violate the plaintiff's constitutional rights. *Malley* v. *Briggs*, 475 U.S. 335, 341 (1986); *Harlow* v. *Fitzgerald*, 457 U.S. 800, 815 (1982); *see also Riccuti* v. *New York City Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997) (qualified immunity unavailable where plaintiff alleged defendants intentionally fabricated evidence against him).

Notably, the County Defendants do not even argue that Harrigan is entitled to qualified immunity, and thus have waived said argument.

Nevertheless, Harrigan is not entitled to qualified immunity because it is black letter law that a prosecutor who knowingly fabricates evidence acts unconstitutionally. *Zahrey*, 221 F.3d at 355–56 (2d Cir. 2000). The Second Circuit has explained,

> Although a prosecutor is protected by absolute immunity for his actions in presenting evidence *at trial,* these cases serve to inform every prosecutor that his knowing use of false evidence is unconstitutional. Any prosecutor aware of these cases would understand that fabricating evidence in his investigative role violates the standards of due process and that a resulting loss of liberty is a denial of a constitutional right.

*Id*. (emphasis in original).

This is true even where the prosecutor is the investigator who fabricated the evidence. *Zahrey*, 221 F.3d at 357 ("Since a jury could find that Coffey would foresee that he himself would use the fabricated evidence and that a deprivation of Zahrey's liberty would result, Zahrey's claim survives Coffey's attempt to have the claim dismissed, as a matter of law, because of a qualified immunity defense.").

Harrigan's fabrication of evidence in this case both (1) violated clearly established Second Circuit case law and (2) was objectively unreasonable. Thus, Harrigan is not entitled to qualified immunity and the County's motion to dismiss the evidence fabrication claim against him must be denied. *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 458 (E.D.N.Y. 2015) ("No defendant officer is entitled to qualified immunity when alleged fabrication of evidence is key to the case.").

## POINT IV

## MR. VANN HAS STATED A PLAUSIBLE MUNICIPAL LIABILITY CLAIM

As explained in the Amended Complaint and Points I-III, *supra*, Mr. Vann alleges that Harrigan's fabrication of evidence was material to the grand jury's decision to indict, and thus Harrigan violated his constitutional right to a fair trial. Am. Compl. ¶¶ 303-21. Harrigan is not entitled to immunity for these acts as they were performed in his investigative capacity.

Additionally, Mr. Vann alleges that Harrigan violated his fair trial rights through unconstitutional actions committed while acting in his prosecutorial capacity. He did so by presenting the false testimony of RPD Officers Kester, Mitchell and Drake to the grand jury, *id*. ¶¶ 327-41; by failing to correct their false grand jury testimony that Mr. Vann, *inter alia*, prevented the officers from handcuffing him until after they brought him to the ground, that he slipped out of his handcuffs after being brought to the ground, and that he repeatedly reached for his waistband, *id*. at ¶¶ 330-35; by withholding the RPD Subject Resistance Reports, despite

13

repeated demands for same by Mr. Vann's criminal defense attorney, *id.* ¶¶ 353-55; by failing to disclose D.M.'s pretrial statements that were favorable to Mr. Vann, *id.* ¶¶ 343-48; and by presenting false and misleading evidence at Mr. Vann's criminal trial that was directly contradicted by the security camera DVD. *Id.* ¶¶ 370-77.

While Harrigan is immune from personal suit for these prosecutorial actions, no immunity protects the County of Monroe from liability to the extent that the County's unlawful policies, customs, or practices concerning the training, supervision, and discipline of prosecutors caused Harrigan's misconduct in this case. This Court should reject the County's contrary arguments, which ignore binding Circuit precedent.

### A.      The Law Governing *Monell* Liability

"[A] local government is liable under § 1983 for its policies that cause constitutional torts." *McMillian* v. *Monroe Cty.*, 520 U.S. 781, 784 (1997); *see Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978). One way to establish *Monell* liability is to show that a policymaking official was on notice of, but was deliberately indifferent to, constitutional violations caused by subordinates; the policymaker's "acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Cash* v. *Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (quoting *Amnesty Am.* v. *Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (Sotomayor, then-C.J.)); *see Connick* v. *Thompson*, 563 U.S. 51, 61-62 (2011); *City of Canton* v. *Harris*, 489 U.S. 378, 395 (1989). "Policymakers" are those "officials . . . who speak with final policymaking authority" with respect to "the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian*, 520 U.S. at 785.

### B.      The County May Be Held Liable Under § 1983 Based on the Monroe County D.A.'s Actions (or Inaction) as a Final Policymaking Official

14

The County argues that it may not be held liable for policies of the Monroe County D.A. that caused the fair trial violations here because such policies are State, not municipal, functions. However, binding Second Circuit authority—which the County ignores—is to the contrary.

In *Walker* v. *City of New York*, 974 F.2d 293 (2d Cir. 1992), the Second Circuit squarely held that the City of New York could be held liable for a *Brady* violation that resulted from the Brooklyn D.A.'s deliberate indifference to the need to adequately train, supervise, and discipline prosecutors regarding *Brady* compliance. The Court reasoned that, under New York law, while a D.A. acts for the State in the prosecution of an individual case, he or she is a County policymaker when acting in his or her administrative or managerial function to train, supervise, and discipline prosecutors regarding *Brady* compliance; therefore, the County may be held liable if the D.A.'s policies cause a criminal defendant to be denied his constitutional right to a fair trial. *See id.* at 301 (citing *Gentile* v. *Cty. of Suffolk*, 926 F.2d 142, 152 n.5 (2d Cir. 1991)).

Following the Supreme Court's seminal decision in *McMillian*, the Second Circuit, in *Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998), reaffirmed and broadened its holding in *Walker*. Under *McMillian*'s analysis for determining whether a policymaker acts on behalf of a State or a locality for *Monell* purposes, the law of the state in question largely controls, consistent with principles of federalism. *See McMillian*, 520 U.S. at 786, 794-95. Applying *McMillian*, the *Myers* Court exhaustively analyzed New York law and explicitly reaffirmed that New York's D.A.s "are generally presumed to be local county officers, not state officers," with one "narrow exception": they are state policymakers when making "individual determinations about whether to prosecute violations of state penal laws." *Myers*, 157 F.3d at 76-77. The Court went on to hold that Orange County had properly been held liable, not merely for a personnel policy as in *Walker*, but for an *office-wide prosecutorial policy* not to pursue cross-complaints, which violated cross-complainants' rights to equal protection.

15

Significantly, New York State's own appellate courts have also held, after *McMillian* and consistent with *Walker* and *Myers*, that localities may be held liable for policies of their D.A.s that cause constitutional violations, including *Brady* violations, *see Ramos* v. *City of New York*, 285 A.D.2d 284, 303 (1st Dept 2001), and malicious prosecutions, *see Johnson* v. *Kings Cty. Dist. Attorney's Office*, 308 A.D.2d 278, 295-96 (2d Dept 2003).

The above case law is binding upon this Court. A district court "must follow the law as interpreted by the Court of Appeals." *Isufi* v. *Prometal Constr., Inc.*, 927 F. Supp. 2d 50, 52 (E.D.N.Y. 2013) (Weinstein, D.J.). Only where an intervening decision of the U.S. Supreme Court would "almost inevitably" require the Circuit Court to reverse its own precedent may a district judge disregard it. *United States* v. *Emmenegger,* 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004) (Lynch, then-D.J.). Even the Second Circuit may not "overrule" its own precedent unless it sits *en banc*. *Hutchison* v. *Deutsche Bank Sec. Inc.*, 647 F.3d 479, 488 (2d Cir. 2011).

The Supreme Court's decision in *Van de Kamp* v. *Goldstein*, 555 U.S. 335 (2009), does not "almost inevitably" require the Second Circuit to reverse its precedent. *Van de Kamp* involves not the issue decided in *Walker* and *Myers*—whether a *municipality* may be held liable for a D.A.'s office-wide policies—but rather the distinct question of whether a D.A. has *individual immunity* from suit for such policies. Municipalities, unlike individuals, do not enjoy absolute, qualified, or any other immunity. *See Owen* v. *City of Independence*, 445 U.S. 622, 657 (1980). Significantly, *Owen* recognizes, based upon the legislative history of Section 1983 as well as policy reasons, that municipalities *should* be liable for compensatory damages, even while individual policymakers are immune. *See id.* at 650-56. The issue of municipal liability decided in *Walker* and *Myers* (and *McMillian*) simply wasn't before the Court in *Van de Kamp.*

Significantly, in the *Van de Kamp* case itself, after the Supreme Court dismissed the personal-capacity claims, the Ninth Circuit held that the City of Long Beach *could still be held*

*liable. See Goldstein* v. *City of Long Beach*, 715 F.3d 750, 762 (9th Cir. 2013). Pointing out the distinction between individual immunity and municipal liability, the Court reasoned that *Van de Kamp*'s "prosecutorial immunity inquiry . . . is a federal question that will have a consistent answer nationwide," while *McMillian*'s "state-local determination . . . depends on a careful and thorough analysis of state constitutional and statutory provisions, and will vary from . . . State to State." *Id.* at 760 (internal quotation marks omitted). Several district courts agree. *See, e.g.*, *Benitez* v *City of New York*, 17CV3827SJSJB, 2018 WL 2973387, at *5 (EDNY June 13, 2018)("Defendants argue that *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), precludes a *Monell* claim premised upon a DA's failure to train, supervise or discipline its prosecutors on their fair trial obligations, because it classifies supervision and training regarding fair trial compliance as prosecutorial, rather than administrative. In so doing, Defendants improperly extend the principles that govern individual liability to those that govern municipal liability."); *Jovanovic* v. *City of New York*, No. 04 Civ. 8437, 2010 WL 8500283, at *16 n.12 (S.D.N.Y. Sept. 28, 2010) ("*Van de Kamp* did not address *Monell* liability."); *Johnson* v. *Louisiana*, No. 09-55, 2010 WL 996475, at *11-13 (W.D. La. Mar. 16, 2010) (finding that *Van de Kamp* did not alter municipal-liability doctrine).

The County's citation to *Jones* v. *City of New York*, 988 F. Supp. 2d 305 (E.D.N.Y. 2013) (Weinstein, D.J.), is also misplaced. *Jones* did not hold that *Van de Kamp* overrules *Walker* and *Myers.* While the *Jones* court, in *dictum*, questioned the wisdom of the Second Circuit's decisions, its *holding* dismissing the *Monell* claim turned on the narrower, entirely factual ground that the *pro se* plaintiff[1] had failed to allege any "long and persistent history of feckless training and discipline practices regarding personnel *that might give rise to municipal liability*."

---

[1] An attorney, Alan Nelson, was appointed to represent Jones for purposes of the motion to dismiss, but the complaint itself was filed by the prisoner-plaintiff *pro se.*

*Id.* at 317 (emphasis added) (citing *Gentile*, 926 F.2d at 152 n.5). Indeed, recognizing the

continuing viability of the Second Circuit case law he had questioned, Judge Weinstein later

*upheld* a virtually identical claim against the City. *See Bailey*, 79 F. Supp. 3d at 453-54. This

time, Judge Weinstein ruled, the plaintiff had demonstrated "a possible pattern and practice by

the District Attorney . . . in violation of the Constitution" and, refusing to allow the *Monell* issue

to be "swept under the rug," he denied the City's motion. *Id.* at 454 (citing *Collins v. City of New

York*, 923 F. Supp. 2d 462, 478 (E.D.N.Y. 2013) (Block, D.J.)).[2]

This Court should not let an equally reprehensible pattern and practice of the Monroe

County D.A. to be "swept under the rug" either. Just as *Walker* and *Myers* bound Judge

Weinstein after *Van de Kamp*, they bind this Court.

### C.  Mr. Vann Has Plausibly Pled an Underlying Fair Trial Violation

Importantly, the County does not contend that Mr. Vann has not adequately pled any

constitutional violation that a custom, policy, or practice of the Monroe County D.A. could have

caused. Instead, the County argues that both Harrigan and D.A. Doorley are entitled to absolute

immunity[3] for all of their allegedly unlawful acts, and so the County is also immune from liability

under *Monell*. As demonstrated in Point IV (B), *supra*, this argument fails under clearly established

precedent. *See Owen* v. *City of Independence*, 445 U.S. 622, 657 (1980),

---

[2] Judge Weinstein's chief reservation about the *Walker* line of cases is that, in his view, "[t]he City cannot control or intervene in" its D.A.s' practices. *Jones*, 988 F. Supp. 2d at 314. However, as the final policymaker for the management of a local D.A.'s office, the D.A. represents, and binds, "the City" just as surely as the Mayor, the City Council, and a Borough President may do for other functions over which they exercise authority as final policymakers. *See, e.g.*, *Myers*, 157 F.3d at 76; *Walker*, 974 F.2d at 301. Also, the Monroe County District Attorney's Office receives 100% of their budget from the County of Monroe, which totaled $15,263,565 in 2018. *See* 2018 Monroe County Proposed Budget at 369,
https://www2.monroecounty.gov/files/finance/2018%20Proposed%20Budget.pdf. Through budgetary appropriations, the County exercises much more influence over the D.A.'s policies than does New York State. *See id.* at 371 ("The District Attorney's Office will continue to pursue established priorities such as … the enhancement of prosecutorial efforts in cases involving violent felonies.").

[3] Notably, Plaintiff did not bring any causes of action directly against D.A. Doorley, and consents to amend the caption for the purposes of clarifying that no causes of action are alleged directly against her in either her individual or official capacities.

As detailed above in Point I, *supra*, the Amended Complaint makes legally sufficient, plausible factual allegations that Harrigan violated Mr. Vann's constitutional fair trial rights by knowingly fabricating his own account of the incident based on his observations of Mr. Vann's alleged assault of Kester and Drake as depicted on the security camera DVD, which was material to the grand jury's decision to indict. *Morse* v. *Fusto*, 804 F.3d 538, 547 (2d Cir 2015). Harrigan is not entitled to immunity for his fabrication of evidence, because he did so in his investigative capacity. *See* Points II-III, *supra*.

Mr. Vann has also pled legally sufficient, plausible factual allegations that Harrigan violated his constitutional right to a fair trial by suppressing *Brady* material, knowingly presenting or failing to correct false evidence, and deliberating making false or misleading arguments.

To ensure that the accused receives a fair trial, *Brady* requires the prosecution to disclose all evidence that is favorable to the defense, whether exculpatory or impeaching, and that is "material" to the jury's determination of guilt or innocence. *Poventud* v. *City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc). Evidence is material "when there is 'any reasonable likelihood' it could have 'affected the judgment of the jury.'" *Wearry* v. *Cain*, 136 S. Ct. 1002, 1006 (2016) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)). Materiality and causation are issues to be resolved by the trier of fact. *See United States* v. *Gaudin*, 515 U.S. 506, 512 (1995); *Redd* v. *N.Y. Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012).

A prosecutor also violates a defendant's constitutional fair trial rights by knowingly presenting, failing to correct, or arguing false evidence. *See Drake* v. *Portuondo*, 553 F.3d 230, 240 (2d Cir. 2009) (citing *Napue* v. *Illinois*, 360 U.S. 264, 269 (1959)); *Su* v. *Filion*, 335 F.3d 119, 126-27 (2d Cir. 2003).

The County does not contest Mr. Vann's allegations that Harrigan violated his fair trial rights by, *inter alia*, was material to the grand jury's decision to indict, and thus violated his constitutional right to a fair trial, Am. Compl. ¶¶ 303-21; presenting the false testimony of RPD Officers Kester, Mitchell and Drake to the grand jury, *id*. ¶¶ 327-41; failing to correct their false grand jury testimony that Mr. Vann, *inter alia*, prevented the officers from handcuffing him until after they brought him to the ground, that he slipped out of his handcuffs after being brought to the ground, and that he repeatedly reached for his waistband, *id*. at ¶¶ 330-35; withholding the RPD Subject Resistance Reports, despite repeated demands for same by Mr. Vann's criminal defense attorney, *id. ¶¶* 353-55; failing to disclose D.M.'s pretrial statements that were favorable to Mr. Vann, *id*. ¶¶ 343-48; and by presenting false and misleading evidence at Mr. Vann's criminal trial that was directly contradicted by the security camera DVD. *Id*. ¶¶ 370-77

The omission of the video from the grand jury was particularly egregious, because it exposed the bias of Kester, Mitchell and Drake and "undermine[d] the ostensible integrity of the investigation." *Kyles* v. *Whitley*, 514 U.S. 419, 448 (1995). At trial, the jury ignored Harrigan's argument that they should disregard the video and accept the officers' fabricated testimony: after deliberating for less than three hours, during which time they requested multiple playbacks of the video, the jury acquitted Mr. Vann on both of the false charges that he assaulted RPD Officers Kester and Drake. Am. Compl ¶¶ 381-85.

### D.     Mr. Vann has plausibly pled that the Monroe County D.A. was deliberately indifferent to the need to train, supervise, or discipline prosecutors in their constitutional obligations and that this policy caused Harrigan to violate Mr. Vann's Constitutional Right to a Fair Trial

This Court recently held in *Keene* v. *City of Rochester*, et al., 17-cv-6708 (Apr. 4, 2017) (MAT) (Dkt. No. 16), that the plaintiff adequately pled municipal liability under a deliberate

indifference theory of liability where the amended complaint alleged that (1) the City of Rochester failed to discipline RPD officers following just eight identified excessive force incidents, many of which were captured on video, where he also alleged that none of the officers involved in said incidents were disciplined by the City or the RPD; and (2) the City publicly claimed to follow certain procedures in investigating force complaints, but it failed to follow said procedures. *Id.* at 9-10.

Similarly, Mr. Vann's amended complaint plausibly pleads municipal liability under a deliberate indifference theory of liability, and that Harrigan's violation of his constitutional fair trial rights was substantially caused by the Monroe County D.A.'s longstanding policy of deliberate indifference to its prosecutors committing violations of criminal defendants' fair trial rights. In fact, "plausible" is an understatement. The Amended Complaint cites overwhelming evidence of the D.A.'s unlawful policy of deliberate indifference: Mr. Vann alleges that in response to records requests under the New York State Freedom of Information Law, the County admitted that the Monroe County D.A. (1) has not disciplined a single prosecutor for any reason in the past twenty years, Am. Compl. ¶ 456; (2) did not possess any records of discipline being imposed against a single trial prosecutor in the past twenty years after convictions obtained by said prosecutors were overturned due to prosecutorial misconduct, *id.* ¶ 457; and (3) did not investigate allegations of misconduct or discipline trial prosecutors in 20 specific cases between 1983 to 2017 where convictions obtained by said prosecutors were overturned due to prosecutorial misconduct, *id.* ¶ 458. Mr. Vann also alleged that D.A. Doorley failed to comply with the written policies of her office:

> Despite its written policies requiring the District Attorney to convene a review panel to review all *allegations* of misconduct, made by a court or otherwise, the District Attorney maintains a *de facto* policy of never reviewing allegations of misconduct or

> disciplining prosecutors who engage in misconduct—even where an appellate court has reversed the conviction due to serious prosecutorial misconduct—demonstrating that its written policies are merely a façade.

*Id*. ¶ 10.

This historic failure to discipline was part-in-parcel of a "win-at-all-cost" culture that the Office deliberately encouraged. *Id*. ¶¶ 11, 340, 391.

Numerous cases in this circuit involving similar allegations further demonstrate the plausibility of Mr. Vann's municipal liability allegations. *See e.g.*, *Benitez* v. *City of New York*, 17-cv-3827(SJ)(SJB) (EDNY June 13, 2018)(denying motion to dismiss similar *Monell* claim involving the Queens D.A. for fair trial violations); *Collins* v. *City of New York*, 923 F. Supp. 2d 462, 477-78 (E.D.N.Y. 2013)(denying motion to dismiss similar *Monell* claim involving the Brooklyn D.A.); *Bailey* v. *City of New York*, 79 F. Supp. 3d 424, 453-54 (E.D.N.Y. 2015) (same); *Babi-Ali* v. *City of New York*, 979 F. Supp. 268, 272-75 (S.D.N.Y. 1997) (denying motion to dismiss *Monell* claim involving Queens D.A.'s *Brady* compliance policies); *Ramos* v. *City of New York*, 285 A.D.2d 284, 305-06 (1st Dep't 2001) (denying dismissal of *Brady*-related *Monell* claim involving Bronx D.A.).

Faced with overwhelming evidence of the D.A.'s deliberate indifference in the form of the County's admission that it has failed to discipline <u>any</u> prosecutor for <u>any</u> reason since at least January 1, 1998, Am. Compl. ¶ 456, or any of the prosecutors involved in 20 specific cases in which courts have held that Monroe County prosecutors violated criminal defendants' fair trial rights, *id*. at 458, Defendant County advances nitpicking arguments that, in the context of Plaintiff's overall showing, are an embarrassment. For example, the County attempts to distinguish the 20 listed reported decisions[4] where courts have held that Monroe County

---

[4] Moreover, the complaint notes that this list is non-exhaustive. For example, the Court may take judicial notice of *People* v *Carver*, 114 AD3d 1199, 1199 [4th Dept 2014], which overturned the defendant's conviction of assault in

prosecutors violated criminal defendants' fair trial rights by arguing that the specific misconduct committed by prosecutors in those cases was different than the misconduct alleged here. MOL pp. 20-21. In doing so, the County ignores the key common allegation—the County's admission that the D.A. failed to investigate the misconduct or discipline the prosecutors in any of those cases. Am. Compl.  ¶¶ 454, 458. As explained above, this is in direct contravention to the D.A.'s written policies, which require the D.A. to convene a review panel to investigate all allegations of misconduct, whether made by a court or otherwise. *Id*. ¶ 9.

Moreover, the County completely disregards the allegations that for the period January 1, 1998 to the present:

- "no trial prosecutor employed by the Monroe County District Attorney's office has been disciplined following the reversal of a conviction due to an appellate court finding that the prosecutor engaged in prosecutorial misconduct and that such misconduct was not harmless," *id*. at 801.

- "no attorney employed by the Monroe County District Attorney's office has ever been disciplined for engaging in prosecutorial misconduct, or for any other reason," *id*. at 802.

- "the Monroe County District Attorney's office has failed to investigate even one instance of alleged prosecutorial misconduct," *id*. at 803.

- "the Monroe County District Attorney's Office has failed to maintain any system whatsoever concerning the supervision and oversight of prosecutors in its office," *id*. at 804.

- "Neither the County nor the District Attorney's Office maintains or has in its possession, custody, or control any records … regarding the investigation, disciplining, or decision not to investigate or discipline, prosecutors who have been the subject of allegations of prosecutorial misconduct," *id*. at 805.

---

the first degree based in its holding that the Monroe County D.A.'s delayed disclosure of a 911 recording constituted a *Brady* violation that deprived him of his right to a fair trial. And *People* v. *Gayden*, 111 A.D.3d 1388 [4[th] Dept. 2013], which reversed a murder conviction based on the Monroe County D.A.'s failure to disclose that a prosecution witness was a paid informant, which constituted a Brady violation.

Additionally, the County fails to respond to the allegation that,

> Neither the County nor the District Attorney's Office maintains or has in its possession, custody, or control any records, **without time restriction**, any records whatsoever regarding any correspondence by the Monroe County District Attorney, and any other supervisor or administrator at the D.A.'s Office, with any departmental disciplinary committee concerning possible misconduct by or disciplining of prosecutors employed by the D.A.'s Office.

*Id.* at 806.

"[D]eliberate indifference may be inferred where 'the need for more or better supervision to protect against constitutional violations was obvious,'" *Cash* v. *Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (quoting *Vann* v. *City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)), "but the policymaker 'fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs,'" *id.* (quoting *Reynolds* v. *Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)). Such "[a]n obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann*, 72 F.3d at 1049; *see Amnesty Am.* v. *Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004); *see also Fiacco* v. *City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986) ("The fact that none of the [reported complaints] ha[ve] yet been adjudicated in favor of the claimant [i]s not material").

Defendants further protest that the 20 cases listed in Plaintiff's Amended Complaint span a time period of "over the last 30 years or so." *See* Defs. Mem. 20. But this *supports* Mr. Vann's claim, as the Second Circuit has stressed the significance of a "long history" of a policymaker's deliberate indifference. *Gentile* v. *Cty. of Suffolk*, 926 F.2d 142, 152 n.5 (2d Cir. 1991) (cited by *Jones*, 988 F. Supp. 2d at 317); *McCants* v. *City of Newburgh*, No. 14 CV 556, 2014 WL

6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (past claims "removed in time from the instant action . . . simply evidences the City has allegedly long condoned police misconduct").

Here, District Attorney Doorley came into office in 2011, and the number of appellate reversals for egregious fair trial violations increased at an astounding pace: at least eleven in the next five years (2011-2015)[5] and four more in the next two years (2016-2017). Yet she did nothing to deter prosecutors from continuing such violations. This was a continuous policy of condonation, despite ample notice, by the same District Attorney, over many years.

Even one documented instance may put a policymaker on notice of an inherently obvious risk of injury. *See Cash,* 654 F.3d at 334-39; *Amnesty Am.,* 361 F.3d at 129 (single "egregious" incident enough); *Disorbo* v. *Hoy,* 74 F. App'x 101, 103-04 (2d Cir. 2003) (unpublished opinion) (single incident). In *Fiacco,* the Court of Appeals upheld a verdict against a municipality based on testimony about just five prior police incidents over five years, where there was additional evidence of lack of discipline and police department indifference. *See* 783 F.2d at 329-330. In *Babi-Ali,* the court upheld a *Monell* claim where plaintiff cited just nine *Brady* violations by Queens prosecutors over many years, most of which postdated plaintiff's conviction. *See* 979 F. Supp. at 274; Complaint at ¶¶ 20, 49, *Babi-Ali,* 979 F. Supp. 268 (No. 92 CIV. 7957), 1992 WL 12653494. And this Court recently held in *Keene* v. *City of Rochester, et al*., that the plaintiff adequately pled a *Monell* claim where he cited just eight instances of prior similar misconduct (excessive force), where the complaint also pled that the RPD failed to discipline any of the officers involved in those eight prior incidents and violated its internal policies and procedures. 17-cv-6708 (MAT)(JWF), Dkt. No. 16 (Apr. 7, 2018). Mr. Vann's allegations of the Monroe County D.A.'s deliberate indifference are more than adequate at this stage.

---

[5] The nine listed in the complaint, plus the two additional appellate reversals listed in footnote 4, *supra.*

## **CONCLUSION**

For the reasons herein, Mr. Vann respectfully submits that the County Defendants' Rule 12(b)(6) motion should be denied, and Mr. Vann should be permitted to proceed to discovery on his claims against the County Defendants.

Dated: New York, New York   Respectfully Submitted,
   November 14, 2018    ROTH & ROTH LLP


         By: _____ ~/s/~ _____
           Elliot Dolby Shields, Esq.
           *Attorneys for Plaintiff*
           192 Lexington Ave, Suite
           802 New York, New York
           10016 Ph: (212) 425-1020

To: (all parties via ECF)