UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID VANN,

                Plaintiff,

        -vs-

THE CITY OF ROCHESTER, a
municipal entity, POLICE OFFICER
MATTHEW DRAKE, IBM # 1956,
POLICE OFFICER STEVEN MITCHELL,
IBM # 2134, INVESTIGATOR JEFFREY
KESTER, IBM # 2230, SERGEANT
JEFFREY LAFAVE, II, IBM # 1634
POLICE OFFICER DAVID E. KEPHART,
IBM # 2074, POLICE OFFICER ADAM
BRODSKY, IBM # 2478, POLICE
OFFICER TIMOTHY DEMPSEY, IBM #
2122, INVESTIGATOR CHRISTOPHER
MUSCATO, IBM # 1331, CAPTAIN
GARY MOXLEY, POLICE OFFICER
ANGEL PAGAN, IBM # 2421, POLICE
OFFICER CHRISTOPHER J. BARBER,
IBM # 1949, SERGEANT DANIEL J.
ZIMMERMAN, IBM # 295, POLICE
OFFICER ERIC MCGRAW, IBM # 2131,
SERGEANT JOSEPH LAIOSA, IBM #
1180, INVESTIGATOR TOMESHA
ANGELO, IBM # 1665, TECHNICIAN
STEPHANIE MINTZ, IBM # 2496, ,
Police Officers "JOHN DOES 1-10"
(whose names are currently
unknown), and other unidentified
members of the Rochester Police
Department, THE COUNTY OF
MONROE, SANDRA DOORLEY,
individually and as District
Attorney of the County of
Monroe, and MICHAEL HARRIGAN, as
an employee of the Monroe County
District Attorney's Office and
individually,

                Defendants.

**DECISION and ORDER**
**No. 6:18-cv-06464(MAT)**

## I.    Introduction

Plaintiff David Vann ("Vann"), represented by counsel, instituted this action pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging violations of his constitutional rights by the City of Rochester ("the City"), the County of Monroe ("the County"), and the various individual defendants, who are either employees of the Monroe County District Attorney's Office ("MCDA") or the City of Rochester Police Department ("RPD"). Both the County and the City have filed motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). This Decision and Order addresses only the City's motion to dismiss, however.

## II.  Factual Background and Procedural History

The factual summary set forth below is gleaned from the Amended Complaint's allegations.[1]

### A.    Plaintiff's Arrest

On September 4, 2015, at approximately 11 p.m., Vann was at the A&Z Market ("the Market"), a convenience store located on South Avenue in the City of Rochester which had four properly functioning video surveillance cameras. Am. Compl. ¶¶ 36-37. Vann paid for a 75-cent loose cigarette or "loosie" by giving cash to the Market's owner, "Rafiq." When handing Vann his change, Rafiq shortchanged

---

[1]

Solely for purposes of Rule 12(b)(6), the Court has accepted all well-pleaded factual allegations as true and has drawn all reasonable inferences in Vann's favor, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), but has not accorded the same treatment to any legal conclusions couched as factual allegations. Id. (citation omitted).

him by approximately \$7.00. Vann requested the remaining change he was due, but Rafiq refused. Vann asked again, and employee "D.A." assaulted him and pushed him out of the Market. As Vann began walking home, D.A. called after him to come back to get his change. Vann turned around and returned to the Market.

Meanwhile, defendant Officer Matthew Drake ("Drake") of Rochester Police Department ("RPD") responded to a 911 call from someone at the Market. Vann complained to Drake about being shortchanged and being kicked out of the store. Am. Compl. ¶¶ 46-48. Vann, D.A., and Drake were discussing the matter when defendant RPD Officer Steven Mitchell ("Mitchell") arrived. While Drake continued to speak to Vann inside the store, D.A. went outside to speak with Mitchell. Defendant RPD Investigator Jeffrey Kester ("Kester") also responded to the scene.

At that point, Drake asked Vann to follow him out of the Market. Vann immediately complied, but Mitchell detained him in the doorway and prevented him from walking outside for about a minute and half. Am. Compl. ¶¶ 56-57. Vann again complained to all three officers about being shortchanged on a regular basis at the Market[2] and about being physically kicked out that evening. Id. ¶¶ 58-61. D.A. admitted to Drake, Kester, and Mitchell that he had assaulted

---

[2] About a month later, on October 16, 2015, the owner of the Store was arrested for felony misuse of food stamps after a year-long federal, state, and local investigation. Am. Compl. ¶ 62. Vann believes the Mitchell, Kester, and Drake should have known about this investigation and therefore should have found him credible. Id. ¶¶ 63-64.

Vann. Id. ¶ 79. Mitchell, however, told Vann, "[N]o one gives a fuck about your money," and directed him to leave or he would be arrested for trespassing. Id. ¶¶ 65-66.

Once Vann left the Market he was detained on the sidewalk by Mitchell, Kester, and Drake; Kester made it clear to Vann he was not free to leave. Kester and Mitchell placed Vann under arrest and handcuffed Vann's wrists behind his back in a painful manner. Am. Compl. ¶¶ 81-83. Though Vann was not resisting, Mitchell pulled Vann's hands and wrists upwards toward his head, causing substantial pain. Id. ¶ 84. Kester grabbed the back of Vann's neck and dragged him head-first toward a metal bench on the sidewalk while Mitchell and Drake pushed Vann from behind. Id. ¶¶ 85-86. Mitchell, Drake, Kester, Vann all fell to the ground, with Kester pulling Vann on top of him as he fell and Mitchell and Drake pushing Vann from behind. Id. ¶¶ 89-92. Vann's head slammed into the metal bench as a result of the fall. Id. ¶¶ 87-88. During the fall, Vann suffered serious injuries, and Kester broke his leg. Id. ¶¶ 94-95.

Mitchell proceeded to beat Vann for about two minutes by striking him in the head and body with a closed fist. Am. Compl. ¶¶ 97-98. Mitchell then searched Vann, grabbed him by the handcuffs, dragged him to his feet, and walked him to Mitchell's vehicle. Id. ¶¶ 99-101. Mitchell slammed Vann into the side of the vehicle and punched him in the face all while Vann was still handcuffed behind

his back. Id. ¶¶ 102-04. Drake, who was standing close by, joined Mitchell in assaulting Vann. Drake and Mitchell slammed Vann into the vehicle and onto the sidewalk, causing serious injuries to Vann and also injuring Drake's shoulder. Id. ¶¶ 106-12. Mitchell continued to punch Vann in the head and body, grabbed him by the testicles and shirt, picked him up, and slammed him face-down on the sidewalk. Id. ¶¶ 113-15.

While Vann was handcuffed and lying face-down on the sidewalk, Mitchell sprayed him in the face with pepper spray for about five seconds, at a distance of two to three inches away from Vann's face. Am. Compl. ¶¶ 119-20. Mitchell sat on Vann's back and held him there for about 30 seconds. Id. ¶¶ 121-22. As defendant RPD Officer David E. Kephart ("Kephart") arrived on the scene, Mitchell rolled Vann face-up and punched him in the head and torso. Id. ¶ 123. RPD Officers Adam Brodsky ("Brodsky") and Timothy Dempsey ("Dempsey"), also defendants in this action, arrived on the scene. Mitchell, Kephart, and either Brodsky or Dempsey picked up Vann and slammed him into the sidewalk again, causing serious injuries. Id. ¶¶ 125-27.

While Brodsky, Dempsey, and Mitchell held Vann on the ground, Kephart searched Vann's person, including his pockets and waistband area, but found no weapons, drugs, or other contraband. Id. ¶¶ 130-31. Mitchell and Brodsky or Dempsey then pulled Vann to his feet, dragged his limp body to an RPD vehicle and placed him against the

side of the vehicle. Id. ¶ 132. Mitchell grabbed Vann by the handcuffs and pulled his arms above his head for about 60 seconds before placing him in the vehicle. Id. ¶¶ 133-37. Defendant RPD Investigator Christopher Muscato ("Muscato"), defendant RPD Sergeant Jeffrey LaFave, II ("LaFave"), and defendant RPD Investigator Tomesha Angelo ("Angelo") all arrived shortly before Vann was placed in Mitchell's patrol car.

An emergency medical services ("EMS") team arrived on the scene and evaluated Vann. Am. Compl. ¶ 140. The EMS personnel informed LaFave, the supervising officer, that Vann needed to be transported to the hospital for medical treatment, but LaFave declined to follow their recommendation. Id. ¶¶ 142-46. Instead, Mitchell and Kephart brought Vann directly to the Monroe County Jail ("Jail").

Once they arrived at the Jail, Mitchell, Kephart, and "other defendant officers" removed him from the RPD vehicle, threw him on the ground, and punched and kicked him numerous times in the head and body. Am. Compl. ¶ 150. When they brought Vann inside the Jail, they falsely informed staff that Vann had assaulted both Kester and Drake and caused them to suffer serious injuries (a broken leg and separated shoulder, respectively). Id. ¶¶ 151-52. Additionally, Mitchell, Kester, and other unnamed RPD officers instructed Jail staff members to place him in solitary confinement and to not provide him any medical treatment, in retaliation for Vann

resisting arrest and injureding Kester and Drake. Id. ¶¶ 153-55.

On September 7, 2015, Vann was arraigned and charged with two counts of Assault in the Second Degree (New York Penal Law ("P.L.") § 120.05(3)), Assault in the Third Degree (P.L. § 120.00(2)), Resisting Arrest (P.L. § 205.30), and Trespass (P.L. § 140.10). While awaiting presentation of his case to the grand jury, Vann was remanded to the custody of the Jail. Am. Compl. ¶¶ 157-59. Despite being made aware by Vann and his mother that Vann had certain serious medical conditions, Jail personnel denied him access to his prescription medications. Id. ¶¶ 160-65. Vann consequently suffered an exacerbation of his symptoms, which resulted in his involuntary transfer and admission to a medical facility for four months. Id. ¶¶ 166-68. After being remanded to the Jail on February 3, 2016, Vann posted bail and was released from custody. Id. ¶ 169.

**B.    The Investigation by the RPD**

Defendants Officer Eric McGraw ("McGraw"), Sergeant Joseph Laiosa ("Laiosa"), F/N/U Armstrong,[3] and Captain Gary Moxley ("Moxley") of the RPD viewed the surveillance videotapes and, at Angelo's direction, went to see Kester, Drake, and Mitchell to manufacture a consistent fabricated account of the interactions among Vann, Kester, Drake, and Mitchell. See Am. Compl. ¶¶ 192-203. After watching the surveillance videotapes, Angelo, LaFave, RPD

---

[3]
    Although Vann mentions this defendant in the Amended Complaint, he or she is not listed in the caption.

Technician Stephanie Mintz ("Mintz"), RPD Officer Christopher Barber ("Barber"), RPD Sergeant Daniel Zimmerman ("Zimmerman"), RPD Officer John Doe No. 5 and other unidentified RPD defendants decided to copy and preserve only the portion of the security camera video that is date- and time-stamped as "09-04-2015 11:35:00 PM" to "09-04-2015 11:44:59 PM." This segment of the footage omits Vann's arrival at the store and interactions with Rafiq and D.A. See Am. Compl. ¶¶ 204-29.

Angelo and LaFave ordered Kephart and unspecified officers to detain witnesses to the incident, including D.A., and obtain favorable statements from them by whatever means necessary. See Am. Compl. ¶¶ 230-48. At the time D.A. signed a supporting deposition, which was drafted by Angelo, D.A. had an open criminal case and a felony history. D.A.'s supporting deposition was false and contradicted by the surveillance video footage. Id. In addition, Vann alleges that unnamed police officers failed to obtain statements from other individuals depicted in the video, such as D.A.'s cousin, A.M. Id. ¶¶ 249-68. Angelo drafted the felony complaints signed by Kester and Drake which falsely accused Vann of assault. Id. ¶¶ 269-92. Mitchell's incident report contained a false narrative of the events at the Market on the night in question. Id. ¶¶ 293-302.

## C.   The Grand Jury Proceeding

With Zimmerman's approval, Angelo referred the felony

complaints to defendant Assistant District Attorney Michael Harrigan ("Harrigan") of the MCDA for presentation to a grand jury. While preparing Vann's case for presentation to the grand jury, Harrigan reviewed the security camera DVD with Mitchell, Kester, and Drake, and instructed them on how to testify so as to inculpate Vann and exculpate themselves. Id. ¶¶ 319-26. Mitchell, Kester, and Drake testified falsely before the grand jury that, among other things, Vann resisted arrest, fought with the officers, and was not handcuffed until he was taken to the ground the first time. See id. ¶¶ 327-36. The grand jury returned an indictment on April 29, 2016, charging Vann with two counts of assaulting a police officer. Id. ¶ 329, 337.

### D. The Trial

At trial, Harrigan elicited testimony from D.M., Kester, Mitchell, Drake that was false and materially contradicted by the surveillance video. Am. Compl. ¶¶ 370-78. Vann did not present a defense case, instead relying upon cross-examination of the prosecution's witnesses. The jury requested to see multiple playbacks of the surveillance video, including a request to have the video paused at the moment Vann was being handcuffed. Id. ¶ 383. After deliberating less than three hours, the jury returned a verdict acquitting Vann of all charges. Id. ¶ 384.

### E. Summary of the Amended Complaint's Claims

The Amended Complaint asserts fifteen causes of action as

follows: (1) warrantless arrest without probable cause against Kester, Drake, and Mitchell; (2) malicious prosecution under § 1983 against Kester, Drake, Mitchell, Kephart, Mintz, Angelo, Zimmerman, and LaFave; (3) malicious prosecution under New York State law against Kester, Drake, Mitchell, Kephart, Mintz, Angelo, Zimmerman, and LaFave; (4) denial of the right to a fair trial against Kester, Drake, Mitchell, Kephart, Mintz, Angelo, Barber, Zimmerman, and LaFave; (5) excessive force against Kester, Mitchell, Drake, Kephart, Dempsey, and Brodsky; (6) failure to intervene against Drake, Mintz, Barber, Dempsey, LaFave, and Angelo; (7) violation of the Privacy Protection Act, 42 U.S.C. § 2000aa, <u>et</u> <u>seq.</u>, against Angelo, Mintz, Mitchell, Barber, and Zimmerman; (8) supervisory liability against Zimmerman, Angelo, LaFave, Moxley, and Laiosa; (9) malicious abuse of process against Kester, Drake, Mitchell, Kephart, Mints, Angelo, Barber, Zimmerman, and LaFave; (10) deliberate indifference to serious medical needs against the City and RPD defendants; (11) municipal liability against the City for failure to discipline officers who use excessive force; (12) municipal liability against the City for failure to discipline officers who fabricate evidence and commit perjury; (13) municipal liability against the City for deliberate indifference to the rights of individuals suffering from mental health conditions; (14) denial of the right to a fair trial against Harrigan; and (15) municipal liability against the County for the Monroe County

District Attorney Sandra Doorley's failure to supervise or discipline prosecutors for violating defendants' constitutional rights.

The City Defendants' First Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") (Docket No. 19) seeks dismissal of the failure-to-intervene claim against Mintz as well as counts seven, eight, nine, ten, eleven, twelve, and thirteen in their entirety. See City Defendants' Memorandum of Law ("City Defs' Mem.") (Docket No. 19-2). Vann filed a memorandum of law in opposition, which was improperly docketed as an affidavit on CM/ECF. See Plaintiff's Memorandum of Law ("Pl.'s Mem.") (Docket No. 21). The City Defendants filed a reply. See City Defendants' Declaration ("Decl.") (Docket No. 25), Reply Memorandum of Law ("Reply") (Docket No. 25-1), and Exhibit (Docket No. 25-2). The Motion to Dismiss was submitted without oral argument on December 15, 2018.

## III. Rule 12(b)(6) Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A complaint pleads a claim with facial plausibility when it sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint that

consists merely of "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" or "'naked assertion[s]' devoid of 'further factual enhancement'" does not meet the plausibility standard. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557).

## IV. Discussion

### A. The Seventh Claim for Violating the Privacy Protection Act Is Dismissed

The City Defendants move to dismiss the seventh cause of action alleging a violation of the Privacy Protection Act ("PPA"), codified at 42 U.S.C. § 2000aa. "The PPA prohibits the government from [searching for or] seizing certain materials . . . that are intended for publication." Guest v. Leis, 255 F.3d 325, 340 (6th Cir. 2001). Vann relies on 42 U.S.C. § 2000aa-6, which provides a private right of action for violating the PPA. The prima facie elements of a such a claim are as follows: (1) a government officer or employee, (2) in connection with the investigation or prosecution of a criminal offense, (3) searched for or seized (a) work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication; or (b) documentary materials possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication; (4) in or affecting interstate or foreign commerce. 42 U.S.C. § 2000aa.

Vann notes that "documentary materials" as defined in 42 U.S.C. § 2000aa-7(a) includes "materials upon which information is recorded," and thus they include the security camera video recording of the incident at the Market. Pl.'s Mem. at 29. He argues that he was "aggrieved" by the RPD's "seizure of only a portion" of the video because the portion that was not collected and preserved was favorable to him and constituted Brady/Vilardi material. Id. (citing Am. Compl. ¶ 222). Vann speculates that Rafiq, the store owner, and D.A., the employee who assaulted him, had a "strong incentive to publicly disseminate the video to the news media" or "could have used the possibility of publishing the video as leverage" to forestall the RPD from demanding that they cooperate in Vann's criminal prosecution. Pl.'s Mem. at 29-30.

This claim is specious. The Amended Complaint contains no non-speculative allegations suggesting that the RPD has searched for or seized materials intended for publication in interstate commerce, and therefore it fails to state a plausible claim arising under 42 U.S.C. § 2000aa-6. Consequently, the seventh cause of action will be dismissed with prejudice.

**B.  The Eighth Claim for Supervisory Liability May Proceed**

The City Defendants seek dismissal of the eighth cause of action asserting supervisory liability against Zimmerman, Angelo, LaFave, Moxley, and Laiosa. The Amended Complaint asserts that these defendants "personally caused plaintiff's constitutional

injuries by being deliberately or consciously indifferent to the rights of others in failing to properly supervise, train, and discipline their subordinate employees." Am. Compl. ¶ 540.

The City Defendants' argument on this point is conclusory and largely cites case law on municipal liability, not supervisory liability. <u>See</u> City Defs' Mem. (Docket No. 19-2) at 5-6 of 14.[4] It is not the Court's job to make litigants' argument for them, and the City Defendants simply have not demonstrated their entitlement to dismissal of the eighth claim for relief. Accordingly, it may proceed.

### C. The Ninth Claim for Malicious Abuse of Process Is Dismissed

The City Defendants move to dismiss the ninth cause of action, which alleges malicious abuse of process by a number of RPD officers (Kester, Drake, Kephart, Angelo, Barber, Zimmerman, Mintz and LaFave). The Second Circuit has held that "section 1983 liability may lie for malicious abuse of criminal process." <u>Cook v. Sheldon</u>, 41 F.3d 73, 80 (2d Cir. 1994). "In New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective

---

[4] The City Defendants' Memorandum of Law is unpaginated. The Court therefore has cited to the page numbers automatically assigned by CM/ECF.

that is outside the legitimate ends of the process.'" <u>Savino v.</u> <u>City of New York</u>, 331 F.3d 63, 76 (2d Cir. 2003) (quoting <u>Cook</u>, 41 F.3d at 80).

"[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." <u>Id.</u> at 77. In other words, the use of the instrument or process must have itself been improper. <u>See</u> <u>Curiano v. Suozzi</u>, 63 N.Y.2d 113, (1984) (dismissing the plaintiffs' abuse of process claim because "[t]hey do not contend that the summons issued by defendants was improperly used after it was issued but only that defendants acted maliciously in bringing the action").

The Court agrees with the City Defendants that Vann has failed to state a plausible claim for malicious abuse of process under New York law because he has not plausibly alleged the "collateral purpose" element of such a claim. Vann alleges that the RPD defendants named in this cause of action caused him to be arrested and prosecuted in order to obtain a collateral objective outside the legitimate ends of the legal process, namely, avoiding discipline for their abuse of authority and acts of brutality, and to retaliate against him for the injuries they caused to themselves. Am. Compl. ¶ 547. Vann thus alleges, at most, an improper motive, not an improper purpose. <u>See</u>, <u>e.g.</u>, <u>Gilliard v.</u>

<u>City of N.Y.</u>, No. 10-CV-5187(NGG)(CLP), 2013 WL 521529, at *14 (E.D.N.Y. Feb. 11, 2013) ("At most, [d]efendants issued the summons with the improper motive of covering up their abuse of authority in arresting plaintiff . . .[,][b]ut an improper motive does not equate to an improper purpose; the [d]efendants used the process of the court for the purposes for which the law created[.]") (internal quotations and brackets omitted); <u>Dotson v. Farrugia</u>, No. 11 Civ. 1126(PAE), 2012 WL 996997, *8 (S.D.N.Y. Mar. 26, 2012) (plaintiff's contention that the summons was issued to in retaliation "for his perceived affront, and to attempt to cover up the wrongdoing of the [c]ourt [o]fficers in having arrested plaintiff" was insufficient to state a claim for abuse of process; "[t]hese allegations, . . . even if taken as true, do not support a claim for abuse of process, because they allege only an improper motive, which is not actionable, rather than an ulterior collateral purpose or objective") (internal quotations omitted). The Amended Complaint fails to state a plausible claim for malicious abuse of process. Accordingly, the ninth cause of action will be dismissed with prejudice.

**D.** **The Tenth Claim for Deliberate Medical Indifference May Proceed**

The City Defendants move to dismiss the tenth claim which alleges that the defendant RPD officers present on the scene denied Vann access to medical care for the serious injuries he suffered during the use of force incident, and later instructed the staff at

the Jail to deny him access to medical care. The City Defendants argue that Vann improperly failed to state this claim as a Fifth or Eighth Amendment violation. Neither of these constitutional amendments are pertinent here. Instead, because Vann was a pre-trial detainee in State custody at the time of the alleged violation, the source of his constitutional rights for a claim of deliberate indifference to serious medical needs is the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment. See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) (explaining that a pre-trial detainee is "not being 'punished,' the 'cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply").

Nonetheless, courts have traditionally applied the same two-part test whether the claim was brought by an inmate under the Eighth Amendment or by a pretrial detainee pursuant to the Fourteenth Amendment. See, e.g., Caiozzo v. Koreman, 581 F.3d 63, 71 (2d Cir. 2009) (holding that the same subjective standard for deliberate indifference claims under the Eighth Amendment's Cruel and Unusual Punishments Clause should apply to deliberate indifference claims under the Fourteenth Amendment's Due Process Clause). However, Caiozzo, relied upon by the City Defendants, was overruled by Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017), in the wake of the Supreme Court's decision in Kingsley v. Hendrickson, ___ U.S. ____, 135 S. Ct. 2466, 192 L. Ed.2d 416 (2015). In

Kingsley, "the Supreme Court held that, for excessive force claims brought under the Due Process Clause of the Fourteenth Amendment, 'a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.'" Darnell, 849 F.3d at 21 (quotation omitted).

Darnell observed that Kingsley's holding "has undercut the reasoning in Caiozzo[,]" 849 F.3d at 33 (footnote omitted), and thus Caiozzo was "overruled to the extent that it determined that the standard for deliberate indifference is the same under the Fourteenth Amendment as it is under the Eighth Amendment." Id. at 35 (footnote omitted); see also id. ("concluding that deliberate indifference should be defined objectively for a claim of a due process violation") (citation omitted).

"While the Second Circuit's holding in Darnell was applied to a claim of deliberate indifference to unconstitutional conditions of confinement, a footnote in Darnell indicates that 'deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment.'" Walker v. Wright, No. 3:17-CV-425(JCH), 2018 WL 2225009, at *5 (D. Conn. May 15, 2018) (quoting Darnell, 849 F.3d at 33 n.9). Consequently, district courts in this Circuit have "applied Darnell's objective 'mens rea' prong to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment." Id. (citing Lloyd v. City of New York, 246 F. Supp.3d 704, 718-19 (S.D.N.Y. 2017) ("read[ing] Darnell to

require that the 'mens rea prong' of deliberate indifference to serious medical needs claims under the Fourteenth Amendment be analyzed objectively: rather than ask whether the charged official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety,' courts are to instead determine whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety'") (quoting Darnell, 849 F.3d at 33, 35).

Vann alleges that he was beaten extensively about his head and body by multiple individuals, had his head slammed into a metal bench, was body-slammed into a vehicle and onto the ground, and was pepper-sprayed in the face at close range, among other things. When EMS personnel arrived and examined him, they recommended to the RPD officers on the scene that he be transported to the hospital, but the RPD officers refused to take him to the hospital or allow the EMS personnel to take him to the hospital. Am. Compl. ¶¶ 141-43.

The City Defendants assert that the Amended Complaint does not state a plausible deliberate indifference claim because it contains no allegation of any injuries that were "objectively serious to mandate [them] to provide transportation to a medical facility or EMS related medical care[.]" City Defs' Mem. at 9 of 14. The City Defendants concede that an argument could be made that Vann satisfied the subjective prong (now, under Darnell, properly referred to as the mens rea prong) of the test. Id.

While Vann states that he suffered "serious physical injuries," he does not enumerate them. E.g., Am. Compl. ¶¶ 88, 94, 111. The Court finds that this is not fatal to Vann's ability to state a claim in this case, however. The Second Circuit has recognized that, among the relevant factors for determining whether a serious medical need exists are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment . . . ." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Tech., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)). Given the nature of the beating Vann describes, and the fact that EMS personnel recommended further treatment at the hospital, Vann has plausibly alleged that he had an injury that a reasonable doctor would find important and worthy of treatment. Thus, the Amended Complaint pleads a sufficiently "serious medical need" for purposes of a Fourteenth Amendment deliberate medical indifference claim. In addition, Vann has plausibly alleged that the RPD defendants, having received a recommendation from individuals specially trained in emergency medicine to bring Vann to the hospital for treatment of his injuries, either knew or should have known that their conduct in denying him medical treatment posed an excessive risk to health or safety. Thus, as the City Defendants essentially concede, Vann has plausibly alleged that the RPD defendants acted with the

requisite _mens_ _rea_.  The tenth cause of action accordingly may proceed.

**E.    The Eleventh and Twelfth Claims Alleging Municipal Liability May Proceed but the Thirteenth Claim for Municipal Liability Is Dismissed With Prejudice**

The City Defendants move to dismiss the eleventh, twelfth, and thirteenth causes of action which allege municipal liability under Monell.  The eleventh claim asserts that the City has deliberately and systemically failed to discipline RPD officers who use force without justification, even when this allegedly unlawful use of force is captured on video.  Am. Compl. ¶ 566.  The twelfth claim alleges that RPD officers have a policy, practice and custom of fabricating their accounts of their interactions with arrestees in official RPD paperwork and charging documents, and testifying falsely in court, in an attempt to justify false arrests and excessive use of force incidents, and that the City is aware of this but tolerates and encourages it.  See Am. Compl. ¶¶ 723-52.  The thirteenth cause of action asserts that City and the RPD maintain an unconstitutional policy, practice and custom of failing to train RPD officers in how to interact with individuals suffering from mental illnesses.  See Am. Compl. ¶¶ 753-86.

**1.    Municipal Liability Under Monell**

A municipality or other local government may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to

such deprivation." Connick v. Thompson, 563 U.S. 51, 60-61 (2011) (quoting Monell, 436 U.S. at 692). Since vicarious liability is unavailable under § 1983, local governmental entities are responsible only for "their own illegal acts[,]" Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986) (citing Monell, 436 U.S. at 665-83), not "for their employees' actions." Connick, 563 U.S. at 60 (citing Monell, 436 U.S. at 691; other citations omitted).

An essential element of a Monell claim is that the plaintiff's injury was caused by an "action [taken] pursuant to official municipal policy[.]" Monell, 436 U.S. at 691. A plaintiff may allege the "policy, custom or practice" requirement in several ways. See, e.g., Brandon v. City of N.Y., 705 F. Supp.2d 261, 276-77 (S.D.N.Y. 2010) (collecting cases). Here, the Amended Complaint suggests that the City has "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware," id. (citing, inter alia, City of St. Louis v. Prapotnik, 485 U.S. 112, 127 (1988)), and that there has been "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees," id. (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989); other citation omitted).

While City of Canton addressed a failure-to-train claim, "the

-22-

stringent causation and culpability requirements set out in that case have been applied to a broad range of supervisory liability claims," id., including those alleging failure to supervise and failure to discipline. Id. (citations omitted). To prove deliberate indifference as required by City of Canton, "the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995) (citing City of Canton, 489 U.S. at 390). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Id. (citations omitted).

### 2. Eleventh Claim

In support of the eleventh cause of action, Vann alleges that he was injured by the City's and the RPD's failure to discipline officers who use excessive force without justification when making arrests; that the City Defendants are aware of numerous instances of RPD officers using unjustified excessive force when making arrests; and that the City Defendants have demonstrated their deliberate indifference to this widespread practice by not only failing to discipline offending RPD officers but actively reinforcing this practice by granting them awards and promotions. See Am. Compl. ¶¶ 566-73. Vann has identified at least sixteen

instances between 2002 and 2017 wherein RPD officers allegedly used excessive force in detaining arrestees. See Am. Compl. ¶¶ 578-92; 596-614; 615-51; 652-73; 674-87; 697-708. Vann affirmatively alleges that the City was aware of each of these instances and that it failed to perform a meaningful investigation into those instances and failed to discipline the involved officers, even where the alleged constitutional violations were blatant and preserved on videotape. The Court accordingly finds that Vann has plausibly stated the elements of a Monell claim. In addition, Plaintiff alleges that although the City publically claims to follow certain procedures in investigating excessive force complaints, such as having a Professional Standards Section ("PSS") within the RPD and a Civilian Review Board ("CRB"), these entities are simply window-dressing, as demonstrated by their failure to recommend disciplinary or other action against RPD officers who engage in constitutional violations such as the use of excessive force. The Court finds that these allegations, which it is required to treat as true at this stage of the proceedings, are sufficient to state a claim under Monell with respect to the City's alleged deliberate indifference to the excessive use of force by its police officers. See, e.g., Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (stating that "municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of

ratification of unconstitutional conduct within the meaning of
Monell").

### 3.  Twelfth Claim

For his twelfth cause of action, Vann alleges that the RPD
officers named as defendants intentionally destroyed evidence
favorable to him, coerced eyewitnesses into signing false
statements, fabricated their accounts of the incident at the Market
to justify their use of excessive force, and testified falsely
against him at the grand jury and at trial. Am. Compl. ¶ 723. He
asserts that the RPD defendants' actions were taken pursuant to the
RPD's policy, practice, and custom of having its officers fabricate
their accounts of their interactions with arrestees in official
paperwork and charging documents, and then testify falsely in
court, in an attempt to justify false arrests and excessive use of
force incidents. Id. ¶ 723. Vann accuses high-ranking City and RPD
officials, including former RPD chief James Sheppard ("Sheppard"),
of being aware of, and perpetuating, these unlawful policies. Id.
¶¶ 724-25.

The City Defendants argue that Vann has failed to plead the
existence of an official municipal policy, practice, or custom
regarding the fabrication of charges and presentation of false
testimony against wrongfully arrested individuals. However, a
municipal "policy or custom need not be memorialized in a specific
rule or regulation." Kern v. City of Rochester, 93 F.3d 38, 44 (2d

Cir. 1996) (citation omitted). To the contrary, "the [Supreme] Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" Praprotnik, 485 U.S. at 127 (quotation omitted).

The Court finds that Vann has affirmatively alleged the existence of a longstanding RPD policy or practice of filing false charges and testifying falsely against arrestees that, while not officially memorialized, is sufficiently widespread that it fairly can be said to represent official RPD policy. In particular, the Amended Complaint alleges that Sheppard, the former chief of the RPD, has admitted in sworn testimony that the RPD has a policy pursuant to which RPD officers are instructed to issue dispersal orders to individuals lawfully present on public sidewalks and, if the individuals fail to display the proper degree of deference or subservience, to arrest them on trumped-up "cover charges" such as disorderly conduct, trespass, obstruction of governmental administration, and harassment. Am. Compl. ¶ 725. The Court offers no opinion on the likelihood that Vann will be able to prove this allegation at trial; however, at this motion to dismiss stage, the Court is required to accept it as true.[5] Moreover, Vann has set

---

[5] Accord Keene v. City of Rochester, No. 6:17-CV-06708-MAT, 2018 WL 1697486, at *5 (W.D.N.Y. Apr. 7, 2018).

forth allegations concerning multiple specific instances wherein this policy, practice, or custom was employed by RPD officers in performing their policing duties. See id. ¶¶ 726-40. Accordingly, the Court finds that dismissal is not warranted on this claim.

### 4. Thirteenth Claim

In support of his thirteenth cause of action, Vann alleges that the cause of his false arrest and excessive use of force was the RPD officers' "lack of training on identifying individuals suffering from mental health conditions, and how to properly interact with such individuals." Am. Compl. ¶ 756. He alleges that the City and the RPD lack any rules, regulations, or standards governing officers' interactions with individuals suffering from either chronic or acute mental illnesses, and that they do not provide any training, either at the police academy or in-service, regarding how to safely and lawfully interact with individuals suffering from either chronic or acute mental illnesses. Id. ¶¶ 757-58. However, based on Vann's own allegations, there was nothing about his behavior and statements at the time of the incident at the Market that would have put any of the responding RPD officers on actual or constructive notice that he was suffering from any type of mental illness or other condition that could affect his psychiatric functioning. It is therefore unclear how Mitchell, Kester, and Drake "should have known that Mr. Vann was suffering from a mental health condition when they were interacting with him

on the night of the incident." Am. Compl. ¶ 755. This significantly undermines the plausibility of Vann's claim.

Vann then completely contradicts his allegations about the lack of training provided to RPD officers by asserting that the RPD does have an Emotionally Disturbed Persons Response Team ("EDPRT"). Quoting from the City's website, Vann states that this consists of "[a] group of employees specially trained, on a *voluntary basis,* to deal with emotionally disturbed individuals in a variety of situations in the Rochester community. These situations may include suicidal persons, persons exhibiting irrational behavior, handling psychiatric patients, the homeless, various mental health concerns and/or referrals, and any other situations that deal specifically with the needs of the mental health community and emotionally disturbed persons." Am. Compl. ¶ 768 (quotation and footnote omitted; emphasis in original). Thus, the RPD apparently does have some type of training program and policy regarding interactions between officers and citizens with mental health issues.

Where, as here, a municipality "has a training program, a plaintiff must . . . 'identify a specific deficiency in the city's training program and establish that that deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation.'" Wray v. City of N.Y., 490 F.3d 189, 196 (2d Cir. 2007) (quoting Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004); further quotation omitted). "The fact

that a deprivation of a constitutional rights may have occurred does not, in and of itself, establish an inadequacy in training and supervision." Marte v. New York City Police Dep't, No. 10 CIV. 3706 PKC, 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010) (citing Jenkins v. City of N.Y., 478 F.3d 76, 95 (2d Cir. 2007) ("A training program is not inadequate merely because a few of its graduates deviate from what they were taught.")). Vann, however, does not identify a specific deficiency in the RPD's Emotionally Disturbed Persons Response Team program. Instead, he simply asserts that no RPD officers ever receive any training on how to properly and lawfully interact with individuals who have mental health issues, yet this appears to be belied by the existence of the EDPRT. The foregoing deficiencies are sufficient for this Court to conclude that Vann has not stated a plausible failure to train Monell claim in the thirteenth cause of action. See, e.g., Marte, 2010 WL 4176696, at *3 (finding that while the plaintiffs alleged that the NYPD and Task Force are responsible for training and supervision of its officers, they failed to plead "any facts that plausibly allege a specific deficiency in the training or supervision program that accounts for deprivation of their constitutional rights") (citing Iqbal, 129 S. Ct. at 1949 (to defeat a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged")). Accordingly, the

thirteen claim will be dismissed.

**F.    The Motion to Dismiss the Failure to Intervene Claim Against Mintz in Claim Six Is Denied**

The City Defendants move to dismiss the failure to intervene claim against Mintz, an RPD technician, on the basis that there "would be no reasonable steps for a technician to take in regards to intervening in an arrest by uniformed officers." City Defs' Mem. at 4 of 14. However, as Vann points out, the City Defendants have misunderstood his failure-to-intervene claim against Mintz, as set forth in the sixth cause of action. Vann does not allege that Mintz should have intervened to stop the use of excessive force or unlawful arrest; rather, he contends that her failure to intervene occurred in the context of her collecting and preserving evidence. Specifically, Vann alleges that Mintz watched the security camera videotape but, after being ordered by Angelo to preserve only a specific portion of the videotape, Mintz "failed to intervene and copy, collect, and preserve" the portions that allegedly were favorable to Vann. See Am. Compl. ¶ 220. Since the City Defendants' argument for dismissing the failure to intervene claim does not address the Amended Complaint's actual allegations against Mintz, the request to dismiss this claim is denied.

**G.    The Request for a More Definite Statement Is Denied**

In the Motion to Dismiss, the City also has moved for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, which provides in relevant part as follows: "If a

pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). "A motion pursuant to Rule 12(e) should not be granted 'unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'" ESI, Inc. v. Coastal Corp., 61 F. Supp.2d 35, 68 (S.D.N.Y. 1999) (quoting Tagare v. NYNEX Network Systems Co., 921 F. Supp. 1146, 1153 (S.D.N.Y. 1996); further quotation omitted).

While the Amended Complaint is ponderously long and at times unduly repetitive, it is neither vague nor unintelligible. Therefore, relief under Rule 12(e) is unwarranted. See Kok v. First Unum Life Ins. Co., 154 F. Supp. 2d 777, 782 (S.D.N.Y. 2001) (denying relief under Rule 12(e) where "pleading is skimpy, but not unintelligible, and plaintiff will not be prejudiced by an attempt to answer it").

**H.   The Request to Strike Is Denied**

The City Defendants have moved, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike "all of the media sources cited to and incorporated by reference" into the Amended Complaint. Rule 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent,

or scandalous matter[,]" either <u>sua</u> <u>sponte</u> or on motion. Fed. R. Civ. P. 12(f). In the Second Circuit, when "deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 893 (2d Cir. 1976) (collecting cases).

The City Defendants argue that the media materials incorporated by reference into the complaint are not "sufficiently factual or evidentiary," but they cite no legal authority for this assertion. The Second Circuit has explained that "[e]videntiary questions . . . should especially be avoided at such a preliminary stage of the proceedings[,]" and "ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." <u>Lipsky</u>, 551 F.2d at 893. Since the City Defendants have not attempted to show that the matter sought to be stricken "could not possibly be relevant," <u>id.</u>, they have not justified their demand for relief under Rule 12(f). Therefore, the Court declines to strike any portion of the Amended Complaint under Rule 12(f).

## V. Conclusion and Orders

For the foregoing reasons, the City Defendants' First Motion to Dismiss for Failure to State a Claim (Docket No. 19) is granted

in part and denied in part. Accordingly, it is hereby

**ORDERED** that the Motion to Dismiss is **granted** to the extent that the **seventh** claim (violation of the Privacy Protection Act); the **ninth** claim (malicious abuse of process); and the **thirteenth** claim (municipal liability) are **dismissed with prejudice.** It is further

**ORDERED** that Motion to Dismiss is **denied** to the extent that the following claims may proceed: the **sixth** claim (failure to intervene as to Stephanie Mintz); the **eighth** claim (supervisory liability); the **tenth** claim (deliberate medical indifference); and the **eleventh** and **twelfth** claims (municipal liability). It is further

**ORDERED** that the request for a more definite statement under Rule 12(e) and the request to strike under Rule 12(f) are **denied.**

**IT IS SO ORDERED.**

**s/ Michael A. Telesca**
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    March 25, 2019
          Rochester, New York