**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DAVID VANN,

Plaintiff,

-against-

CITY OF ROCHESTER, et al.,

Defendants.

**18-cv-6464 (EAW)(MJP)**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER TO ESTABLISH A PROTOCOL FOR OBJECTING AT DEPOSITIONS**

ROTH & ROTH, LLP
Elliot D. Shields
*Attorneys for Plaintiff*
192 Lexington Avenue, Suite 802
New York, New York 10016
(212) 425-1020
eshields@rothandrothlaw.com

1

## <u>INTRODUCTION</u>

Defendants stipulated to plaintiff taking up to 20 depositions in this case without leave of court. Plaintiff has only taken three depositions so far; however, plaintiff was unable to complete two of the three depositions because of defense counsel's numerous improper "relevancy" objections, speaking objections, and improper instructions to the witness not to answer questions.

By way of background, the City consented to plaintiff taking up to 20 depositions because there are 17 named defendants. This case arises from a September 4, 2015 incident—which was partially video-recorded by four security cameras—where Mr. Vann, who suffers from schizoaffective and bipolar disorders, was falsely arrested, placed in handcuffs, and then brutally beaten for several minutes after he was handcuffed by defendant RPD Officers Jeffrey Kester, Matthew Drake, and Steven Mitchell. After the beating, Kester, Drake, Mitchell and the other defendants fabricated evidence against Mr. Vann, coerced witnesses to sign false sworn statements, suppressed and destroyed evidence favorable to Mr. Vann, and initiated and continued his malicious prosecution based upon allegations in felony complaints and witness statements they *knew* were false. Despite Mr. Vann never resisting arrest or attempting to flee, the Defendant Officers falsely charged him with two counts of felony assault on a police officer. These false charges caused Mr. Vann to be incarcerated for approximately five months—first for several weeks in solitary confinement at the Monroe County Jail, and then for approximately four months at the Rochester Psychiatric Center. Mr. Vann was maliciously prosecuted for over 17 months until he was acquitted on all charges on February 16, 2017 after a three-day jury trial.

Mr. Vann seeks to hold the City liable for the above described misconduct of the officer defendants under *Monell* v. *Dept. Of Social Services*, 436 U.S. 658 (1978). The unlawful actions of the employees and agents of the City resulted from affirmative or de facto municipal policies,

practices and customs to violate the constitutional rights of arrestees and criminal defendants, and from deliberate indifference by policy-making officials, acting on behalf of the City of Rochester.

The depositions in this case are one of the most important—if not the most important—tools for establishing *Monell* liability. Yet, throughout the first three depositions of defendants Adam Brodsky, Tomesha Angelo, and Christopher Barber, Mr. Campolieto obstructed numerous lines of questioning related to the *Monell* claims by repeatedly objecting and claiming the questions were "irrelevant" or constituted "improper hypotheticals." Most recently, at the deposition of defendant Investigator Christopher Barber, Mr. Campolieto improperly instructed the deponent not to answer a *Monell*-related question allegedly because he did not believe it was relevant.

These improper objections and instructions not to answer questions have frustrated the fair examination of each of the three defendants who have been deposed so far and have caused substantial delays in the case. Plaintiff was unable to complete the depositions of both Adam Brodsky and Christopher Barber in large part because of Mr. Campolieto's improper objections and instructions not to answer, requiring that both come back for a second day of depositions.

If Mr. Campolieto is permitted to continue obstructing questions related to the *Monell* claims at the remaining 17 depositions (and the continued depositions of Brodsky and Barber) by making improper objections based on perceived lack of relevance, then the case will be unnecessarily prolonged and delayed. For example, if the improper objections and instructions not to answer prolonged each of the remaining 19 depositions by 20 minutes, that would total approximately 6 hours and 20 minutes of wasted time.

It is within this background that plaintiff brings the instant motion for a protective order pursuant to Fed. R. Civ. P. 26(c) to respectfully request that the Court enter plaintiff's proposed

order to limit defense counsel to only making "form" objections and to prevent defense counsel from engaging in further obstructive misconduct at future depositions in this case.

## FACTS

Throughout the depositions of defendants Brodsky, Angelo and Barber, Mr. Campolieto frequently objected by simply stating "objection," where there was no apparent problem with the form of the question. When plaintiff requested that Mr. Campolieto refrain from making baseless objections or explanation the basis for the objection, Mr. Campolieto most often clarified that he was objecting based on his perception that the question was "irrelevant" or that the question was an "improper hypothetical" question, which is just another way of stating a "relevancy" objection.

For example, at the deposition of defendant Police Officer Adam Brodsky, I asked the officer: "striking someone above the clavicle with your hand could be considered a Level 4 use of force, correct?" Exhibit "A" at 40:21-22. Mr. Campolito objected and claimed that, "[y]ou're asking him hypothetical questions that make no sense to a police officer." When I told Mr. Campolito that "it's up to him to say that he's confused and doesn't understand my question," Mr. Campolieto doubled down on his improper objections, claimed that it was improper to ask "hypothetical" questions, and stated that he was going to continue making similar improper objections. See Exhibit A, 40:21-42:25.

This specific objection was improper for many reasons. First, this was not a "hypothetical" question, but a direct question about his understanding of the RPD's use of force matrix. In this excessive force case, where the security camera video clearly shows defendant Steven Mitchell repeatedly striking plaintiff in the head with a closed first—after he was handcuffed—this question was clearly relevant to the direct claims in the case. It was also relevant to the *Monell* claims in

this case, which allege that the City is deliberately indifferent to its officers' widespread use of excessive force; and to the defendants' affirmative defense of qualified immunity.

Similarly, at the March 24, 2022 deposition of defendant Investigator Tomesha Angelo, Mr. Campolito improperly interrupted the deposition by making speaking objections and improperly seeking clarification on behalf of the deponent. See Exhibit "B" at 16:7-10 (*"Objection. In terms of what, her job?"*); 20:3-8 ("if you remember, generally"); 32:20-25 ("just answer his question"); 42:10-16 (*"The answer is 'I don't know.'"*); 53:21-54:25 (*"What is good and proper police work? Define it. I don't know what that is."*); 55:15-56:3 (*"Priority to whom and what is the priority?"*);57:8-21 *("Is that what you are asking, Elliot? What are you asking?");* 61:6-13 *("The Rochester Department Code of Ethics and Rochester Police Standards?");* 138:19-141:8 (*"Objection. She answered the question … She didn't order her to do anything … The answer is objection. … She has no idea what Stephanie said. It is her report. … you need to stop with your hypothetical questions.");* 150:20-151:6 (*"Ask if him if you can review your report").* Moreover, throughout the deposition, it was obvious that Mr. Campolieto was having improper conversations with his client that were not captured on the record. *See id*. at 48:14-49:10.

Similarly, at the deposition of defendant Investigator Christopher Barber, defense counsel's improper objections and instruction to the witness not to answer based on his perception that the question was "irrelevant" led to many pages of the transcript filled with colloquy between counsel regarding the impropriety of defense counsel's objection and instruction to his witness not to answer. Defense counsel then unilaterally called for a break in the examination, and your undersigned called the Court. Exhibit "C" at 34:11-43:14. Thereafter, Judge Pedersen appeared at City Hall and heard arguments regarding the impropriety of defense counsel's instruction to Investigator Barber not to answer the question; Judge Pedersen held that it was improper to instruct

the witness not to answer the question. *Id*. at 56:6-60:25. In total, defense counsel's improper objection and instruction to his witness not to answer the question based on "relevance" wasted at least 30 minutes and prevented plaintiff from completing the deposition that day.

Later at that same deposition, when I asked Officer Barber a line of questions about other force incidents where RPD officers punched handcuffed subjects in the face, and under what circumstances it would be appropriate to punch a handcuffed subject in the face, Mr. Campolieto began objecting and attacking every question posed—a prohibited practice known as "Rambo tactics"—which interfered with the fair examination of the witness about clearly relevant information. *Id*. at 88:5-95:13. Again, when Mr. Campolieto objected, he failed to state the reason for the objection, but these were clearly not "form" objections.

## ARGUMENT

**I. Plaintiff has established good cause to request the Court enter his proposed protective order establishing a protocol for making objections at depositions.**

Plaintiff respectfully submits that he is entitled to a protective order pursuant to Rule 26(c) to prevent defense counsel from similarly obstructing future depositions in this case. Rule 26(c) authorizes courts, for good cause, to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "The text of Rule 26(c) is construed liberally to include a wide range of potential harms not explicitly listed." *Dongguk Univ*. v. *Yale Univ*., 270 F.R.D. 70, 73 (D.Conn.2010) (*citing Seattle Times Co*. v. *Rhinehart*, 467 U.S. 20, 36 (1984) ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."). Plaintiff plans to take approximately 17 additional depositions and will be materially prejudiced if defense counsel is permitted to continue their obstructive conduct at the future depositions.

The bedrock principle for lawyer conduct in depositions is spelled out in Rule 30(c)(1):

"The examination and cross-examination of a deponent proceed as they would at trial under the

Federal Rules of Evidence, except Rules 103 and 615." Thus, in general, the questioning of a

witness at a deposition should proceed in the same manner as it would in court in front of a

judge. This includes the making of objections by the defending attorney.

As explained in the 1993 Committee Notes to Rule 30(d)

> "The first sentence of new paragraph (1) provides that any
> objections during a deposition must be made concisely and in a
> non-argumentative and non-suggestive manner. Depositions
> frequently have been unduly prolonged, if not unfairly frustrated,
> by lengthy objections and colloquy, often suggesting how the
> deponent should respond. While objections may, under the
> revised rule, be made during a deposition, they ordinarily should
> be limited to those that under Rule 32(d)(3) might be waived if
> not made at that time, *i.e.,* objections on grounds that might be
> immediately obviated, removed, or cured, such as to the form of
> a question or the responsiveness of an answer. Under Rule 32(b),
> other objections can, even without the so-called "usual
> stipulation" preserving objections, be raised for the first time at
> trial and therefore should be kept to a minimum during a
> deposition."

In other words, at a deposition, "[a]n objection must be stated concisely in a

nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). Counsel "may instruct a

deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed

by the court, or to present a motion under Rule 30(d)(3)." *Weinrib* v. *Winthrop-Univ. Hosp.*, No.

14 Civ. 953 (JFB) (AKT), 2016 WL 1122033, at *2 (E.D.N.Y. Mar. 22, 2016) (internal quotations

& citations omitted). Under Fed. R. Civ. P. 30(d)(2), "[t]he court may impose an appropriate

sanction—including the reasonable expenses and attorney's fees incurred by any party—on a

person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P.

30(d)(2).

As explained below, defense counsel's improper conduct at the depositions of defendants Adam Brodsky, Tomesha Angelo and Christopher Barber frustrated the fair examination of these witnesses and unnecessarily prolonged the depositions. In fact, the depositions of defendants Brodsky and Barber were not completed largely because of Mr. Campolieto's improer objections.

For the reasons more fully explained below, plaintiff respectfully requests that pursuant to Rule 26(c), the Court should order that defense counsel is limited to stating: "object to the form," "objection; form," and "object to the form of the question" at all remaining depositions in this case. Such short-and-simple objections preserve any and all objections to the form of the question, *see* Fed. R. Civ. P. 32(d)(3)(B), including (1) leading; (2) vague; (3) ambiguous; (4) argumentative; (5) lack of personal knowledge; (6) lack of foundation; (7) calls for speculation; (8) calls for a legal conclusion; (9) assumes facts not in evidence; (10) misstates the facts, or the testimony; (11) hearsay; (12) compound; (13) the document speaks for itself; and so on. *See* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial,* § 11:493 at 11–99.

Further, pursuant to Rule 26(c), the Court should order that defense counsel be prohibited from making any objections based on perceived "irrelevancy", including objections to perceived "hypothetical" questions (as explained below), because these objections are unnecessary and are preserved for trial under Rule 32(b) and 30(d)(2).

## A. Defense counsel should be limited to objecting to the form of the question, and not make any objections based on perceived lack of relevancy.

Objections must be stated "concisely in a nonargumentative and nonsuggestive manner," as the Federal Rules command. Fed. R. Civ. P. 30(c)(2). It is only necessary to object at a deposition where the "form" of the question (not the nature of the question) is objectionable and a "seasonable" objection would provide an opportunity to correct the form.

It is usually not necessary to make an objection based upon irrelevancy. 8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2113 (1994). Federal Rule of Civil Procedure 32(d)(3) provides: "Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition unless the ground of the objection is one which might have been obviated or removed if presented at that time." A question which calls for irrelevant information cannot be "cured" by restating the question, unless the question is changed to ask for relevant (*i.e.,* different) information. Thus, the objecting party must wait until trial (or just prior to trial) to make the objection when, and if, the deposition testimony is offered into evidence.

Defense counsel should also be ordered to refrain from making speaking objections. *See* Fed. R. Civ. P. 30(c)(2). A speaking objection generally is any commentary that goes beyond a statement of the specific legal basis. Interjections by counsel such as "if you know," "if you remember," "if you understand," or "if you have personal knowledge" constitute improper speaking objections and attempts to coach the witness. *See Freidman v. Fayenson*, 983 N.Y.S.2d 203 (Supreme Ct. N.Y. Dec. 4, 2013) (comments such as "if you understand the question you can answer," and "If you recall," are improper coaching). Such coaching-by-thinly-veiled-instruction violates spirit and letter of Rule 30(c)(2) and undermines the truth-seeking function of depositions.  *See* Fed. R. Civ. P. 1; Fed. R. Evid. 102.

Mr. Campolieto's frequent objections were improper because they were not limited to "form" objections and because they disrupted and impeded the fair questioning of the defendants. Every time that Mr. Campolieto did explain the basis for his "objection", it was clear that the objection was based on his perception that the question was "irrelevant," including his objections to alleged "hypothetical" questions.

Thus, to ensure that Mr. Campolieto only makes proper "form" objections, the Court should enter plaintiff's proposed protective order.

**B. Defense counsel should be precluded from objecting to questions he perceives to be "hypotheticals", as that is an improper relevancy objection which is preserved for trial.**

Mr. Campolieto incorrectly objected to several questions posed to the witnesses on the alleged basis that they were "hypothetical" questions when they were not. *See, e.g.*, Exhibit "A" at 40:21-42:25*;* Exhibit "B" at 138:19-141:8; Exhibit "C" 91:16-25; 92:13-93:16. For example, at the deposition of defendant Police Officer Adam Brodsky, I asked the officer: "striking someone above the clavicle with your hand could be considered a Level 4 use of force, correct?" Exhibit "A" at 40:21-22. Mr. Campolito objected and claimed that, "[y]ou're asking him hypothetical questions that make no sense to a police officer." When I told Mr. Campolito that "it's up to him to say that he's confused and doesn't understand my question," Mr. Campolieto doubled down on his improper objections, claimed that it was improper to ask "hypothetical" questions, and stated that he was going to continue making similar improper objections. Exhibit "A", 40:21-42:25.

Similarly, at the deposition of defendant Investigator Christopher Barber, when I asked a line of questions about other force incidents where RPD officers punched handcuffed subjects in the face and "under what circumstances would it be appropriate to punch a handcuffed subject in the face," Exhibit "C" at 88:5-95:13, Mr. Campolieto repeatedly and vehemently objected to nearly every single question, misconduct which is often referred to as "Rabmbo" tactics. *See, e.g., American Directory Service Agency, Inc. v. Beam,* 131 F.R.D. 15, 18–19 (D.C.D.C.1990) ("However, counsel should avoid the prohibited practice of engaging in so-called Rambo tactics where counsel attacks or objects to every question posed, thus interfering with, or even preventing, the elicitation of any meaningful testimony and disrupting the orderly flow of the deposition.")

Mr. Campolieto's objections to the above questions were improper and designed to obstruct the fair examination of the witnesses. Presumably, when Mr. Campolieto objected that the questions were improper "hypothetical" questions, what he meant was that the questions sought an expert opinion requiring specialized or technical knowledge within the scope of Rule 702. But that is not the case.

Neither of the above examples sought an "expert" opinion. Instead, the questions asked about the defendants' understanding of the RPD's use of force policies. All RPD officers have personal knowledge of the RPD's rules, policies, procedures, and the general practices of the department. Thus, because such testimony is not based on specialized knowledge within the scope of Rule 702, but rather is based upon an RPD officer's personal knowledge, these "hypothetical" questions are proper and are not objectionable as improper "expert opinions". *See, e.g., Lightning Lube, Inc.* v. *Witco Corp*. 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business); *United States* v. *Westbrook*, 896 F.2d 330 (8th Cir. 1990) (two lay witnesses who were heavy amphetamine users were properly permitted to testify that a substance was amphetamine; but it was error to permit another witness to make such an identification where she had no experience with amphetamines).

To be sure, courts in the Second Circuit have repeatedly held that fact witnesses may be asked hypothetical questions, particularly where they "hypothetical" question is directly relevant to the claims and defenses in the lawsuit. *Ice Cube Bldg., LLC* v. *Scottsdale Ins. Co*., No. 3:17CV00973(KAD), 2019 WL 2323890, at *6 (D. Conn. May 31, 2019) ("As previously noted, there are only three appropriate bases on which to instruct a deponent not to answer, and the hypothetical nature of a question is not one. See Fed. R. Civ. P. 30(c)(2)."); *Dent* v. *U.S. Tennis*

11

*Ass'n*, No. CV-08-1533 RJD VVP, 2010 WL 1286391, at *1 (E.D.N.Y. Mar. 30, 2010) (in employment discrimination case, improper for defendants' counsel to object to "hypothetical questions about hypothetical convictions on the grounds that the questions asked for speculation and expert opinion," especially because the questions "have some direct relevance to the case since the person who was hired instead of the plaintiff here apparently disclosed a conviction for some sort of offense that had occurred many years earlier."); *Namoury* v. *Tibbetts*, No. 3:04CV599WWE, 2007 WL 638436, at *2 (D. Conn. Feb. 27, 2007) (it was improper to instruct defendant not to answer series of questions about real estate practice and procedure, in legal malpractice case arising out of a series of real estate transactions); *Gould Investors, L.P.* v. *General Ins. Co. of Trieste & Venice*, 133 F.R.D. 103 (S.D.N.Y.1990) (it was improper for counsel to instruct fact witness electrician not to answer questions about his opinion regarding the cause of the fire); *United States* v. *Ranney*, 719 F .2d 1183, 1187–88 (1st Cir.1983) (hypothetical questions about what certain investors would have done under certain circumstances allowed); See also In re Alexander Grant & Co. Litig., 110 F.R.D. 545, 548 (S.D.Fla.1986) (deposition questions allowed on CPA's present opinion, belief and understanding of certain accounting standards, and whether specific audits met these standards).

In federal litigation, parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b). The information sought does not have to be admissible as long as it is likely to lead to the discovery of admissible evidence. *Id*.

Here, the above questions were directly relevant to the defendants' understanding of the RPD's use of force policies. In this excessive force case, where the security camera video clearly shows defendant Steven Mitchell repeatedly striking plaintiff in the head with a closed first—after

he was handcuffed—these questions were clearly relevant to the direct claims in the case and to the affirmative defense of qualified immunity. And most importantly, it was also relevant to the *Monell* claims, which allege that the City is deliberately indifferent to its officers' widespread use of excessive force.

Plaintiff is going to continue to ask similar questions to the remaining 17 witnesses, and to Brodsky and Barber at their continued depositions. Based on Mr. Campolieto's repeated improper objections and obstruction of these lines of questions at the first three depositions, plaintiff respectfully submits that he has shown good cause for entry of his proposed protective order to prevent Mr. Campolito from objecting to said questions.

As mentioned above, it is unnecessary to objection to questions on the alleged basis that they are "irrelevant", because such objections are preserved for trial under Federal Rule of Civil Procedure 32(d)(3).

### C. Instructions not to answer questions on the basis of relevancy or because the question was already "asked and answered" must be prohibited and warrants the imposition of sanctions.

"A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3) (emphasis added)." Rule 30(d)(1).

Where there are questions during a deposition that are objectionable, "the examination shall proceed, with the testimony being taken subject to the objections." Fed.R.Civ.P. 30(c). Generally, a party may object to an irrelevant line of question, but instructing a witness not to answer a question because it calls for inadmissible facts is sanctionable. *Boyd v. University of Maryland Medical System,* 173 F.R.D. 143, 144, 149 (D.Md.1997). Moreover, objections that interfere with or prevent the elicitation of any meaningful testimony and disrupting the orderly flow of the

deposition is also objectionable. *American Directory Service Agency, Inc. v. Beam,* 131 F.R.D. 15, 18–19 (D.C.D.C.1990).

Moreover, assertions that a question has been previously "asked and answered" is not a proper basis to instruct a witness not to answer in a deposition. *Cordero* v. *City of New York*, 15-cv-3436, 2017 WL 2116699, at *8 (E.D.N.Y. 2017).

If Mr. Campolieto violates this order and instructs a witness not to answer a question based on alleged lack of relevancy or because a question has allegedly already been "asked and answered", then he should be subject to sanctions under Rules 30(d)(2) and 37.

**D. If defense counsel stops the deposition to make a motion pursuant to Rule 30(d)(3), that Court should require that motion to be made within two days.**

The irrelevancy of a question is not grounds to instruct a witness not to answer the question (*See* Rule 30(c); *International Union of Elec., Radio and Mach. Workers, AFL—CIO v. Westinghouse Elec. Corp.,* 91 F.R.D. 277, 279 (D.C.D.C.1981); *Preyer v. U.S. Lines, Inc.,* 64 F.R.D. 430 (E.D.Pa.1973)), unless and until the pervasive or other nature of the questioning makes it obvious that it is necessary to stop the deposition and seek relief under Rule 30(d)(3) for being conducted in a manner evidencing bad faith, or to embarrass, annoy, or oppress the deponent.

It is not the embarrassment or annoyance which may be caused by unfavorable answers that is the criteria of 30(d)(3). It is the "manner" in which the interrogation is conducted that is grounds for refusing to proceed, followed by the required motion to seek relief. Likewise, the mere fact that more than one irrelevant question is asked, or even that a series of irrelevant questions is asked does not, by itself, constitute annoyance or oppression contemplated by (30)(d)(3).

Here, Mr. Campolieto has repeatedly objected to questions related the *Monell* claims. None of these questions were improper. Plaintiff is going to continue to ask the witnesses questions related to the *Monell* claims. If Mr. Campolieto believes that the manner in which the interrogation

14

regarding the *Monell* claims is improper, then he must stop the deposition and to make a motion for a protective order under Rule 30(d)(3).

Plaintiff requests that if Mr. Camplieto elects to stop any deposition to make a motion under Rule 30(d)(3), that he be ordered to make said motion within two days. If the motion is denied, then plaintiff can make a motion for sanctions under Rules 30(d)(2) and 37.

### E. Defense counsel should be prohibited from asking for clarification on behalf of the deponent.

Several times during the depositions of defendants Brodsky, Angelo and Barber, Mr. Campolieto interjected to seek clarification on behalf of the deponent. *See, e.g.,* Exhibit "A" at 25:13-15, 40:21-42:25*;* Exhibit "B" at 16:7-10, 57:8-21, 61:6-13. This is improper.

Courts in the Second Circuit have described a deposition as:

> "a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness—not the lawyer—who is the witness."

*Cordero* v. *City of New York*, 15-cv-3436, 2017 WL 2116699, at *7 (E.D.N.Y. 2017), quoting *Abu Dhabi Commercial Bank, et al.* v. *Morgan Stanley & Co. Inc*., No. 08 CV 7508, 2011 WL 4526141, at *7 (S.D.N.Y. Sept. 21, 2011) (citing *Hall* v. *Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993)).

Instead, if the questioning attorney wants clarification about the nature of an objection (say, to cure the problem), then counsel is free to ask. That is, the questioning attorney can ask the objecting attorney to explain the objection and thus request an opportunity to "correct[]" the "form of a question . . . at the time." *See* Fed. R. Civ. P. 32(d)(3)(B)(i). And if the questioning attorney

asks for clarification, and thus invites a more fulsome explanation, then the objecting attorney may provide it. Otherwise, counsel must make short, direct objections, and nothing else.

### F. Defense counsel should be prohibited from initiating private conferences with the deponent during the depositions.

Several times at the depositions of defendants Brodsky, Angelo and Barber, Mr. Campolito unilaterally demanded that they take a break. This occurred, for example, at the deposition of defendant Barber when plaintiff announced that an exhibit was going to be displayed and a new line of questioning was going to explored. Exhibit "C" at 122:25-123:12. This was improper, as the obvious reason Mr. Campolieto requested the break was to coach his witness, or to "remind" them about what the "proper" answers to the anticipated questions would be.

Private conferences between deponents and their attorneys in the course of deposition are improper and should be prohibited except for the sole purpose of determining whether a privilege should be asserted. *Morales* v. *Zondo*, *Inc*., 204 F.R.D. 50, 53 (S.D.N.Y. 2001) ("in general, a deponent and the deponent's attorney have no right to confer during a deposition, except for the purpose of determining whether a privilege shall be asserted"); *Perry* v. *Leeke*, 488 U.S. 272, 281 (1989) ("when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying. He has an absolute right to such consultation before he begins to testify, but neither he nor his lawyer has a right to have the testimony interrupted in order to give him the benefit of counsel's advice."); *Eggleston* v. *Chi. Journeymen Plumber's Local Union 130, U.A.*, 657 F2d 890, 902 (7th Cir. 1981) ("it is too late once the ball has been snapped for the coach to send in a different play")

Rule 30(c) states: "Examination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of the Federal Rules of Evidence except Rules 103 and 615." In other words, a deposition should be conducted just as though the witness were testifying

16

at trial, with the exception that there is no judge there to rule on objections or admissibility and others may not be precluded from sitting in on the deposition.

At trial, a witness does not have the right to confer with counsel after their testimony has begun; and an attorney certainly does not have the right to call for a break to confer with a witness when an exhibit is displayed or when a new line of questioning begins. Similarly, a deponent also does not have the right to confer with counsel at any time during the deposition, including during breaks, lunch, or otherwise, and discussions between attorney and client "as to how a question should be handled" are not protected by the attorney-client privilege. *See Wade Williams Distribution, Inc. v. Am. Broad. Companies, Inc.*, No. 00 CIV. 5002 (LMM), 2004 WL 1487702, at *1 (S.D.N.Y. June 30, 2004). Indeed, "[opposing] counsel has the right to ask about matters that may have affected or changed the witness's testimony." *Id.*

This is particularly true where there are claims of improper interference or coaching by the deponent's attorney. Improper coaching by an attorney to "remind" the witness, or "refresh the recollection" of a witness as to what their testimony should be during a break in the deposition is not protected by the attorney-client privilege. *Pape* v. *Suffolk Cnty. Soc'y for Prevention of Cruelty to Animals*, No. 20CV01490JMAJMW, 2022 WL 1105563, at (E.D.N.Y. Apr. 13, 2022), citing Fed. R. Evid. 612(b) ("adverse party is entitled to have the writing [used to refresh a witness's memory] produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony"); *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 112 (S.D.N.Y. 2005) ("It is true ... that the privilege guarding such discussions will not protect pre-deposition conversations that are held to refresh a deponent's memory").

Thus, if defense counsel has a conversation with his client during a break about the testimony that led to the witness's recollection being refreshed, that conversation loses its privileged status, and is a proper subject for inquiry by the deposing attorney. *Pape* v. *Suffolk Cnty. Soc'y for Prevention of Cruelty to Animals*, No. 20CV01490JMAJMW, 2022 WL 1105563, at *4 (E.D.N.Y. Apr. 13, 2022).

<u>**Conclusion**</u>

Plaintiff respectfully submits that the Court should grant the within motion for a protective order in its entirety.

Dated: New York, New York       Respectfully Submitted,
      December 19, 2022        ROTH & ROTH LLP


By: _____ ~/s/~ _____
      Elliot Dolby Shields, Esq.
      *Counsel for Plaintiff*
      192 Lexington Ave, Suite 802 New York,
      New York 10016
      Ph: (212) 425-1020


To:    All parties (via ECF)