UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID VANN,

                            Plaintiff,     **18-cv-6464 (EAW)(MJP)**

      -against-

THE CITY OF ROCHESTER, et al.,

                           Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S FEE APPLICATION PURSUANT TO THE COURT'S ORDER AT ECF 118**

                                                       ROTH & ROTH, LLP
                                                       Elliot D. Shields
                                                       *Attorneys for Plaintiff*
                                                       192 Lexington Avenue, Suite 802
                                                       New York, New York 10016
                                                       (212) 425-1020
                                                       eshields@rothandrothlaw.com

**INTRODUCTION**

Plaintiff respectfully submits this reply memorandum of law in response to Defendants' opposition and in further support of his application for attorney's fees pursuant to the Court's order at ECF 118.

In their opposition, Defendants claim that some of the hours detailed in your undersigned's billing records were unnecessary, and that the request to be compensated at the requested out-of-district rate is unreasonable.

As detailed below and in the underlying application, Plaintiff only seeks compensation for 11.4 hours of work directly related to the motion for contempt (ECF 91), which is a very reasonable number of hours for a complicated and important motion.

Additionally, Defendants have failed to adequately address Plaintiff's showing that out-of-district rates are appropriate under the circumstances here.

For these reasons, and the reasons detailed below and in the underlying motion, Plaintiff respectfully requests that the Court enter an order granting Plaintiff discovery sanctions in the amount of **$6,270** for 11.4 hours of work on the contempt motion at a rate of $550 per hour.

**ARGUMENT**

**POINT I**
**The Hours in Counsel's Fee Application Are Reasonable and Should Not Be Reduced**

First, Defendants argue that Plaintiff's Counsel should not be compensated for time spent drafting the supplemental brief requested by the Court on whether the discovery demands were served pursuant to the Court order or were instead a "supplemental demand" as Defendants claimed.

Defendants admit that this briefing was necessitated because they referred to those demands as "supplemental". Defendants' inaccurate terminology is the sole cause of the confusion,

which required Plaintiff's counsel to expend additional time drafting the supplemental brief requested by the Court. Thus, Defendants' complaint that Plaintiff is requesting to be compensated for this time—indicated by time entries on July 25, 2023 and July 20, 2023—is without merit.

Defendants next argue that Plaintiff should only be compensated for 3.0 hours of work in drafting the motion for contempt, and not 4.2 hours, as indicated in the December 23, 2022 time entry. See Campolito Decl. ¶ 9. Defendants simply claim that plaintiff "overbilled" for this time. *Id*. This bald assertion should not be credited by the Court.

This was a serious motion that required counsel to conduct legal research and review all the facts related to Defendants' misconduct. For example, unlike a straightforward motion for sanctions, a magistrate judge can only certify the facts of contempt pursuant to 28 U.S.C. § 636(e)(6)(B)(iii) and order the contemptuous party to show cause before the district court judge why they should not be held in contempt. In conducting this research, counsel reviewed the Court's recent decision in *Wishart v. Welkley*, 19-cv-6189 (DGL)(MJP) at Dkt. 100, and spoke to the plaintiff's counsel in the *Wishart* case, to ensure that the facts of this case were similarly egregious to justify making the motion for contempt.

Counsel then drafted the motion, which included several drafts and edits, with great care. The motion included a 14-page memorandum, a 9-page declaration and exhibits A-F. The process of conducting careful legal research and engaging in several rounds of edits is a normal process for drafting any important motion—a process that any quality law firm would go through. Notably, Defendants ignore the argument in the underlying fee application that "Most of the arguments concerning Defendants' failure to comply with paragraphs 10-13 of the order overlapped with arguments about their failure to comply with paragraphs 5-8 of the order," and thus that counsel should be compensated for the full 4.2 hours spent drafting the motion. (ECF 120-1 ¶ 20)

Moreover, Defendants have simply failed to demonstrate that 4.2 hours to draft an important motion is "too long"; instead, that is a very reasonable amount of time.

Lastly, Defendants argue that counsel should not be compensated for any of the time entries between October 31, 2022 and December 5, 2022, because they concerned communications and court appearances related to Plaintiff's attempts to get Defendants to comply with the Order prior to making the motion for contempt. This argument is meritless, because these time entries concern Plaintiff's good faith attempts to gain the Defendants' compliance with their discovery obligations and this Court's order before making the motion, which is required by Fed. R. Civ. P. 37(a)(1).

For all of these reasons, Plaintiff respectfully submits that counsel's hours should not be reduced in any amount.

## POINT II

**Out of district rates are warranted to deter similar misconduct in this case and other cases**

As detailed in the underlying motion, here, like *Casaccia*—and unlike *McGaffigan*—the fees awarded are disciplinary sanctions under Rule 37. Thus, the presumption in favor of the forum rule is less applicable, and Plaintiff respectfully submits that out-of-district rates are appropriate.

"[A]ttorney's fees awarded as sanctions are not intended only as compensation of reimbursement for legal services, but also serve to deter abusive litigation practices." *Ceglia* v. *Zuckerberg*, No. 10-CV-00569 (RJA)(LGF), 2012 WL 503810, at *6–7 (W.D.N.Y. Feb. 14, 2012); *see also Caisse Nationale de Credit Agricole–CNCA, New York Branch* v. *Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir.1994) (acknowledging "principal objective" of sanctions "is not compensation of the victimized party, but rather the deterrence of baseless filings and the curbing of abuses" during the litigation process).

In line with this reasoning, several courts in this Circuit—including this court in *Casaccia*—have concluded that the forum rule does not apply to fees awarded as sanctions and have applied out-of-district rates to better serve the punitive and deterrent purposes of sanctions. *See, e.g.*, *Ceglia*, 2012 WL 503810, at *4 (using out-of-district rates to determine fee award under Rule 37); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-CV-00201S F, 2010 WL 3992215, at *5 (W.D.N.Y. Oct. 12, 2010) (same). Significantly, in *On Time Aviation, Inc. v. Bombardier Capital, Inc.,* 354 F. App'x 448, 452 (2d Cir.2009), the Second Circuit upheld the district court's use of out-of-district hourly rates to calculate attorney's fees awarded as a Rule 11 sanction in order to advance the deterrent purpose of the sanction rather than to shift fees.

The Eastern District of New York decision in *Mikhlyn* v. *Bove*, No. 08-cv-03367 (ARR)(RER), 2011 WL 4529619 (E.D.N.Y. Aug. 3, 2011) (Reyes, M.J.), *report and recommendation adopted,* No. 08-cv-03367 (ARR)(RER), 2011 WL 4529613 (E.D.N.Y. Sept. 28, 2011) (Ross, D.J.), further supports the proposition that the forum rule does not apply to fees awarded as sanctions. Much like in this case, counsel for plaintiffs in *Mikhlyn* made a fee application after winning a Rule 37 sanctions motion based upon discovery misconduct committed by the defendants. In its decision, which was issued *after Simmons*, the Court, while noting that "generally courts look to the rates in the district where they sit," nonetheless used Southern District rates as a basis for comparison in approving, without reduction, the hourly rates requested by Plaintiff's counsel. The court noted that the rates it was approving were "slightly higher than those routinely awarded in the Eastern District." *Id.* at *8. The Court should do the same here.

Notably, the deterrent effect of the fees requested here is particularly important. As detailed in counsel's declaration, in this case, Plaintiff obtained PSS filed that Mr. Campolieto

and the City apparently represented to the Plaintiff and the Court in another case had been destroyed. Specifically, in the case *Silvon S. Simmons v. Joseph M. Ferrigno, II, et al.*, 17-cv-6176, the Plaintiff sought PSS files for Defendant Ferrigno and other RPD officers that predated the April 1, 2016 incident at issue in that case. The City repeatedly objected to the demands, forcing plaintiff's counsel to bring no less than motions to compel and for discovery sanctions. (See Exhibit "C" to the Shields Decl). Eventually, defense counsel, Mr. Campolieto, informed plaintiff's counsel that prior misconduct files for Defendant Ferrigno and several other officers had been destroyed pursuant to the City's records retention policy and could not be produced. (See Exhibit "C" to the Shields Decl. ¶¶ 101-102)

In this case, however, as a result of this motion being filed, the City produced five PSS files where Joseph Ferrigno was accused of misconduct prior to the April 1, 2016 incident in *Simmons*:

- 2010-1217 (Ferrigno excessive force, and failure to complete an SRR)
- 2011-1055 (Ferrigno and others, retaliatory ticketing of cars outside the Flying Squirrel Community Space because of the Emily Good incident)
- 2012-0568 (Ferrigno excessive force and Racially insensitive remarks)
- 2013-0641 (Ferrigno and Libertore – discourtesy and threats of physical violence to minors)
- 2015-0929 (Ferrigno insubordination sustained)

Additionally, in this case, the City produced the following PSS files for officer Thomas Rodriguez that predated the April 1, 2016 incident in *Simmons:*

- 1993-1003 (T. Rodriguez mva)
- 1997-0566 (Thomas Rodriguez – untruthfulness and excessive force)

6

- 1997-0546 (Thomas Rodriguez – untruthfulness sustained)

- 1999-0987 (Thomas Rodriguez - failure to take report)

- 2000-0028 (Thomas Rodriguez – untruthfulness and insubordination)

- 2000-0284 (Thomas Rodriguez – MVA)

- 2000-1123 (Thomas Rodriguez – untruthfulness, failure to report, discourtesy)

- 2006-0226 (Thomas Rodriguez – MVA)

- 2007-0927 (Thomas Rodriguez – MVA)

- 2013-1289 (Thomas Rodriguez – insubordination, sustained; FB post about Warren's husband)

- 2014-0243 (Thomas Rodriguez – Excessive force for kicking handcuffed subject and interference w recording, sustained)

It appears from the publicly filed papers on the docket in the *Simmons* matter that none of the above listed PSS files for Officers Ferrigno or Thomas Rodriguez were ever produced in the *Simmons* case.

As a result, in a decision and order on the City's motion for summary judgment dated September 14, 2023, Judge Geraci dismissed the plaintiff's *Monell* claim. Notably, Judge Geraci's decision apparently confirms that these files were never disclosed to the plaintiff in *Simmons*:

> "As Plaintiff also points out, Defendant Ciminelli acknowledged that Defendant Ferrigno "had some PSS history," id. ¶ 607, that is, that he had been the subject of complaints in the past. According to Ferrigno's deposition testimony, he was subject to several complaints alleging the unnecessary or excessive force prior to the Immel Street shooting. See ECF No. 152 ¶¶ 2-4, 6-8. Ferrigno was never terminated or suspended. ECF No. 152-1 at 9-10. The only reprimand Defendant Ferrigno recalled was a memorandum of record, although he could not recall its contents. See id. at 10. PSS also investigated Ferrigno's involvement in the Immel Street

7

> shooting, and Defendant Ciminelli classified the finding as "exonerated, which reflects that he acted in accordance with departmental policy, procedures and guidelines." ECF No. 142-26 at 61-62. Plaintiff also points to use of force complaints and lawsuits against several other RPD officers not named in this action. See e.g., ECF No. 152 ¶¶ 17-21, 29-31."

Id. at 24.

It is obvious that the City's refusal to disclose these files to the plaintiff in Simmons deprived the plaintiff of the opportunity to question Defendants Ciminelli and Ferrigno about the contents of those files, and the adequacy of those PSS investigations, and the decisions to impose or not to impose discipline as a result of those incidents.

The fact that these files apparently were not disclosed in *Simmons*, but they were disclosed here, supports counsel's request for out of district rates in three ways.

First, it demonstrates the need to impose severe sanctions against the City to deter similar misconduct in this case and other cases in the future.

Second, it demonstrates that all of the work counsel did in support of this motion for contempt was necessary to ensure that Defendants complied with the Court's order to produce these files, which are critical to Plaintiff's *Monell* claim in this case.

Third, it supports the argument that it was reasonable for the plaintiff to hire out of district counsel to prosecute his case, because of the complex nature of the *Monell* claims, and the difficulty in obtaining the discovery necessary to prove these claims.

### A. Plaintiff's request to be compensated at a rate of $550 per hour is reasonable

Defendants do not contest that $550 per hour is a reasonable Manhattan billing rate for Mr. Shields. Defendants also chose to ignore the fact that Justice Vincent Dinolfo approved Mr. Shields Manhattan billing rate of $550 per hour on September 16, 2022, in *Forsyth v. City of Rochester et al.*, No. E2018007067 (Sup. Ct. Monroe Co.). (ECF 120-3)

Thus, for the reasons outlined above, and by this Court in *Cassacia*, and by Justice Dinolfo in *Forsyth*, Plaintiff's counsel respectfully submits that the Court should grant the requested out-of-district rate of $550 per hour in this case.

## **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this Court order the City defendants to pay Plaintiff's attorney's fees in the total amount of **$6,270**, and that such amount be ordered paid within 10 days of this Court's order.

Dated: New York, New York  　　　　　Respectfully Submitted,
　　　　September 29, 2023  　　　　　　　ROTH & ROTH LLP

　　　　　　　　　　　　　　　　By: _____~/s/~_____
　　　　　　　　　　　　　　　　　　Elliot Dolby Shields, Esq.
　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*
　　　　　　　　　　　　　　　　　　192 Lexington Ave, Suite 802 New York,
　　　　　　　　　　　　　　　　　　New York 10016
　　　　　　　　　　　　　　　　　　Ph: (212) 425-1020