UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SILVON S. SIMMONS,

                    Plaintiff,              **AFFIDAVIT**

          vs.                               **17-CV-6176-FPG-MWP**

JOSEPH M. FERRIGNO, II, SAMUEL
GIANCURSIO, MARK WIATER,
CHRISTOPHER MUSCATO, ROBERT
WETZEL, MICHAEL L. CIMINELLI,
JOHN DOES 1-20, CITY OF ROCHESTER,
SHOTSPOTTER, INC., SST, INC.,
JOHN DOES 21-30 and PAUL C. GREENE,

                    Defendants.
_____

STATE OF NEW YORK)
COUNTY OF MONROE)        SS:

          Charles F. Burkwit, being duly sworn, deposes and says:

          1.    I am an attorney at law, duly licensed to practice my profession in the

State of New York and am the attorney of record for Plaintiff Silvon S. Simmons

(hereinafter "Plaintiff"), and as such, I am fully familiar with the facts and circumstances

of this action.

          2.    I give this Affidavit in support of Plaintiff's motion for an Order pursuant

to FRCP 26 (a)(2)(B) declaring that Plaintiff is not required to provide expert disclosures

for Monroe County Crime Laboratory employees Eric Freemesser and Ellyn Colquhoun

since they are not expert witnesses and in the alternative, if the Court disagrees and

deems them to be experts, an Order declaring that Plaintiff is not required to provide written reports prepared and signed by Eric Freemesser and Ellyn Colquhoun pursuant to FRCP 26(a)(2)(B) and declaring that their December 23, 2020 expert disclosures comply with FRCP 26(a)(2)(C), an Order pursuant to FRCP 26(b)(1) and 2(a) and FRCP 30(a)(2) compelling and granting Plaintiff leave to take the depositions upon oral examination of Defendant Michael L. Ciminelli, Laszlo Tordai, Stefanie Conte and employees or former employees of the City of Rochester's Information Technology Department including Anthony Sutera, Lisa Bobo, Steven J. Mickle, Bill Boudreaux, Brandon LaSage, Rick Wright and Tricia (City's IT database team leader) who may possess relevant information concerning the April 1, 2016 missing data and reports from the City of Rochester's Automated Vehicle Locator System (AVLS) and the storage and retention of such data for City of Rochester police vehicles, an Order pursuant to FRCP 16(b)(4) extending the Amended Scheduling Order (Document 97) deadlines by 60 days, an Order pursuant to FRCP 16(f), 37(b)(2)(A) and (C) imposing sanctions against the Defendants and/or their counsel and awarding reasonable expenses incurred including attorney's fees caused by their refusal to comply with this Court's November 24, 2021 Order and Amended Scheduling Order (Document 97) by arbitrarily stopping discovery.

3.     This action arises in part under 42 U.S.C. Section 1983 and involves an April 1, 2016 incident between Plaintiff Silvon S. Simmons (hereinafter "Plaintiff") and City of Rochester Police Officers which occurred in Plaintiff's neighbor's driveway at 9 Immel Street and the back yard of 5/7 Immel Street in the City of Rochester, New York.

4.     The pertinent facts of this case are set forth in Plaintiff's Amended Complaint And Jury Demand which is annexed hereto as **Exhibit A**.

2

5.     On August 5, 2019, Honorable Michael A. Telesca issued his Decision and Order, attached hereto as **Exhibit B**, granting the City Defendants' motion to dismiss Plaintiff's Sixth Cause of Action for malicious abuse of process and granting their motion to dismiss Plaintiff's Failure To Intervene claim against Defendants Ferrigno, Giancursio, Wiater and Ciminelli. (See **Exhibit B** – Decision and Order, pg. 2). Judge Telesca held that Plaintiff's Failure To Intervene claim may go forward against Defendant Muscato. (See **Exhibit B** – Decision and Order, pg. 22). The Court refused to dismiss any of Plaintiff's other claims alleged in the Amended Complaint. (**Exhibit A**).

*Monroe County Crime Laboratory Employees*
*Ellyn Colquhoun and Eric Freemesser*

6.     On December 23, 2020, the undersigned served Plaintiff's Expert Witness Disclosure for Ellyn Colquhoun, forensic biologist and DNA Technical Leader, Monroe County Crime Laboratory, concerning investigatory work her department performed and conclusions which were reached concerning the DNA swab of the 9 mm Ruger handgun, magazine and casing which were allegedly recovered by the Rochester Police Department the evening of April 1, 2016 in the back yard of 7 Immel Street in Rochester, York. A copy of Plaintiff's Expert Witness Disclosure for Ellyn Colquhoun is attached hereto as **Exhibit C**.

7.     On December 23, 2020, the undersigned served Plaintiff's Expert Witness Disclosure for Eric Freemesser, firearms examiner and firearms tool mark section supervisor, Monroe County Crime Laboratory, concerning his investigatory work

his department performed on April 4-7, 2016 concerning examinations and testing performed on the magazine, fired cartridge casings and bullets from Officer Ferrigno's Glock 45 and his examination and testing of the 9mm Sturm Ruger, the empty magazine and shell casing found in the chamber of that handgun. A copy of Plaintiff's Expert Witness Disclosure for Eric Freemesser is attached hereto as **Exhibit D**.

8.   It is the undersigned's position that neither Ms. Colquhoun nor Mr. Freemesser will be testifying as expert witnesses since they are fact witnesses. Both Ellyn Colquhoun and Eric Freemesser were involved through the Monroe County Crime Laboratory in investigating evidence and the events giving rise to this lawsuit, both testified during Plaintiff Silvon Simmons' criminal trial in October 2017 and neither of them were retained by the undersigned. Rather, the undersigned subpoenaed both of these witnesses to testify at their April 12, 2021 depositions in this action. The undersigned only served on Defendants' counsel expert witness disclosures for Ms. Colquhoun and Mr. Freemesser out of caution since the undersigned anticipates Defendants' counsel will seek to preclude their testimony at trial in the event expert disclosures are not served.

9.   Attached hereto as **Exhibit E** is a copy of Ellyn Colquhoun's deposition testimony which was taken on April 12, 2021.

10.   Ms. Colquhoun testified concerning how the Monroe County Crime Lab performs DNA testing on DNA swabs submitted by the Rochester Police Department and testified about how DNA gets onto an object. (See **Exhibit E** – Colquhoun Dep. pg. 9, line 2 to pg. 10, line 10).

11.   Ms. Colquhoun testified during her deposition that her 22 pages of criminal trial testimony marked as Exhibit 1 – Colquhoun was true and accurate at the

time she gave it and she believes that she was subpoenaed to testify in the criminal case by the prosecution. (See **Exhibit E** – Colquhoun Dep. pg. 10, line 17 to pg. 11, line 18).

12.   Ms. Colquhoun testified concerning a December 20, 2016 DNA report from the Monroe County Crime Lab marked as Exhibit 3 – Colquhoun which reflected that DNA analysis was performed on a buccal swab or a cheek swab obtained from Silvon Simmons and that the profile obtained for that was compared to the swab from the Ruger 9 millimeter handgun and the DNA did not match. (See **Exhibit E** – Colquhoun Dep. pg. 22, line 18 to pg. 24, line 16). She clarified that the DNA on the firearm did not indicate the presence of Silvon Simmons. (See **Exhibit E** – Colquhoun Dep. pg. 32, lines 5-15).

13.   Ms. Colquhoun clarified that the DNA reports that she testified from (Exhibits 2, 3 and 4) were made and kept in the ordinary course and scope of business for the Monroe County Crime Lab. (See **Exhibit E** – Colquhoun Dep. pg. 37, lines 10-18).

14.   Attached hereto as **Exhibit F** is a copy of Eric Freemesser's deposition testimony which was taken on April 12, 2021.

15.   Mr. Freemesser testified that he has the ability to test whatever evidence a police department gives him including firearms and fire ammunition. (See **Exhibit F** – Freemesser Dep. pg. 15, line 21 to pg. 16, line 17).

16.   Mr. Freemesser testified that he examined the Sturm Ruger P85 nine millimeter handgun which was recovered by the Rochester Police Department after the April 1, 2016 Immel Street shooting and he testified at the criminal trial which took place against Silvon Simmons in October 2017. (**Exhibit F** – Freemesser Dep. pg. 23, lines 5-15).

17.   Mr. Freemesser acknowledged that his criminal trial testimony marked

as Exhibit 1 – Freemesser was a true and accurate transcript of the 73 pages of testimony he gave during Mr. Simmons' criminal trial. (**Exhibit F** – Freemesser Dep. pg. 23, line 16 to pg. 24, line 16).

18.     During his deposition, Mr. Freemesser testified concerning Exhibit 2 – Freemesser which is a four page firearms report dated April 7, 2016 and signed by him concerning the Glock 45 pistol, the nine millimeter Sturm Ruger pistol, ammunition and cases which were given to him for testing by the Rochester Police Department which dropped them off at the laboratory. (**Exhibit F** – Freemesser Dep. pg. 24, line 20 to pg. 25, line 17).

19.     Mr. Freemesser testified during his deposition about the basic components of firing the Sturm Ruger P85 nine millimeter handgun, how it works, operates and functions. (**Exhibit F** – Freemesser Dep. pg. 30, line 6 to pg. 37, line 25).

20.     Mr. Freemesser acknowledged that he tested the Ruger nine millimeter handgun and it was an operable firearm in working order with no malfunctions or misfires. (**Exhibit F** – Freemesser Dep. pg. 51, lines 4-25).

21.     Mr. Freemesser found it unusual and out of the ordinary that the Rochester Police Department recovered a Ruger handgun with an empty magazine with one casing in the chamber and that it was not in the lock back position. (**Exhibit F** – Freemesser Dep. pg. 56, line 24 to pg. 57, line 21).

22.     Mr. Freemesser acknowledged that if a person is holding their arm steady and extended outward with a firm grip when the last bullet is fired, he would expect the Ruger nine millimeter handgun which he tested in this case to go into the lock-back position. (**Exhibit F** – Freemesser Dep. pg. 66, lines 18-24).

23.     Mr. Freemesser testified that he was told that the Ruger handgun was found in the forward position. (**Exhibit F** – Fremesser Dep. pg. 69, lines 20-22). Mr. Freemesser did not have any reason or explanation as to why the nine millimeter Ruger handgun which he tested failed to go into the lock back position. (**Exhibit F** – Freemeser Dep. pg. 67, lines 3-13). Mr. Freemesser testified "If it was just discharged I would expect it to be in the lock-back position". (**Exhibit F** – Freemesser Dep. pg. 95, lines 8-15).

24.     During his deposition, Mr. Freemesser also testified concerning testing hands or clothing for gun powder residue and that Mr. Simmons' clothing could have been tested for gun powder residue had the Rochester Police Department given his clothing to him. (**Exhibit F** – Freemesser Dep. pg. 73, line 14 to pg. 81, line 24).

25.     Mr. Freemesser acknowledged that he had 1,500 cases last year where he tested guns, ammunition or fired ammunition components. (**Exhibit F** – Freemesser Dep. pg. 86, lines 17-25).

26.     Attached hereto as **Exhibit G** is a copy of the undersigned's January 31, 2022 letter which was sent to Defendants' counsel requesting that they sign a stipulation agreeing that a signed written report for Plaintiff's expert witnesses Ellyn Colquhoun and Eric Freemesser is not required pursuant to FRCP 26(a)(2)(B).

27.     In the January 31, 2022 letter to Defendants' counsel (**Exhibit G**), the undersigned explained that Mr. Freemesser and Ms. Colquhoun are unpaid witnesses who were both subpoenaed to testify at their depositions concerning their investigations which were performed during the initial criminal investigation against the Plaintiff.

28.     In the January 31, 2022 letter to Defendants' counsel, the undersigned

further explained that Mr. Freemesser and Ms. Colquhoun were "not retained or specially employed to provide expert testimony in the case", they are not a party's employee whose duties regularly involve giving expert testimony pursuant to FRCP 26(a)(2)(B) and their opinion testimony arises not from their enlistment as an expert but, rather, from their ground-level involvement in the events giving rise to the litigation and thus, they fall outside the compass of Rule 26(a)(2)(B).

29.     On February 1, 2022, counsel for the Shotspotter Defendants emailed the undersigned refusing to enter a stipulation contemplated by the undersigned's January 31, 2022 letter (**Exhibit G**) and indicating that the Shotspotter Defendants will oppose such motion if pursued with the Court.

30.     According to this Court's November 24, 2021 Order and Amended Scheduling Order (Document 97) attached hereto as **Exhibit H**, the deadline for Plaintiff to identify any expert witnesses pursuant to FRCP 26(a)(2)(A) and provide reports pursuant to FRCP 26(a)(2)(B) and/or disclosures pursuant to FRCP 26(a)(2)(C) is March 21, 2022 and accordingly this motion is timely made.

31.     Due to the importance of Mr. Freemesser's and Ms. Colquhoun's testimony at the future trial of this action and upon considering Defendants will likely seek to preclude their testimony at trial due to lack of written and signed reports under FRCP 26(A)(2)(B), the undersigned requests this Court enter an Order declaring that Plaintiff is not required to provide expert disclosures for Monroe County Crime Laboratory employees Eric Freemesser and Ellyn Colquhoun since they are not expert witnesses and in the alternative, if this Court disagrees and deems them to be expert witnesses, to issue an Order declaring that Plaintiff is not required pursuant to FRCP 26(a)(2)(B) to

provide written reports prepared and signed by Eric Freemesser and Ellyn Colquhoun and declaring that Plaintiff's December 23, 2020 expert disclosures previously made for both of these witnesses comply with FRCP 26(a)(2)(C).

32.     Mr. Freemesser and Ms. Colquhoun are not voluntarily participants in this litigation as they were not retained but rather subpoenaed to testify at their depositions. The undersigned anticipates both witnesses will be reluctant to have any further involvement in this case besides giving their prior testimony and they will refuse to prepare and sign a written report in this matter if requested to do so.

33.     In the event that this Court determines that Eric Freemesser and Ellyn Colquhoun are expert witnesses and written reports prepared and signed by Plaintiff's experts Eric Freemesser and Ellyn Colquhoun are required pursuant to FRCP 26(a)(2)(B), the undersigned requests this Court to extend Plaintiff's expert witness disclosure deadline by 60 days so that Plaintiff will have time to attempt to request written and signed reports from both of these experts.

***Motion To Compel Depositions of Defendant
Michael L. Ciminelli, Laszlo Tordai, Stefanie
Conte, Anthony Sutera, Lisa Bobo,
Steven J. Mickle, Bill Boudreaux,
Brandon LaSage, Rick Wright and
Tricia (City's IT database team leader)***

34.     As this Court is aware, Plaintif has filed four (4) prior motions to compel discovery in this action against the City Defendants and this Court has granted sanctions twice against the City Defendants in the form of attorney fees and costs incurred in connection with making the motions. (See **Exhibit I** - May 26, 2021 Decision & Order

(Doc. 82) and **Exhibit H** - November 24, 2021 Order and Amended Scheduling Order

(Doc. 97)).

      35.    As this Court is aware, Plaintiff's motions to compel against the City

Defendants have focused on requests made in Plaintiff's First Request For Production of

Documents, Electronically Stored Information and Tangible Things (**Exhibit J**) including:

> 1(d) All records, reports, data, memos, maps, charts, email correspondence and documents sent to and/or generated from the City of Rochester's automated vehicle locator system (AVLS), Trackstar, AVLS database/server and gps data recorded for the police vehicles which were operated by Officers Joseph M. Ferrigno, II, Samuel Giancursio, Christopher Muscato, William Gallagher, William Wagner and Patrick Giancursio, Whitney Unrath, Amy Baurer, Mark Wiater, Michael DiMauro, Dylan Minnick and Joseph Zampatori on April 1, 2016 between 6:00 p.m. and 9:30 p.m.;
>
> 1(dd) All information contained in the files, computer and/or computers maintained by the internal affairs division of the City of Rochester Police Department and any other division of the City of Rochester Police Department including, but not limited to, PSS Investigative Summaries, Civilian Review Board determinations and Police Chief Reviews, concerning complaints made against any City of Rochester Police Department officer for the past 10 years for excessive use of force and/or deadly force, including but not limited to the information that is retrievable by computer code; and
>
> 1(ee) All information contained in the files, computer and/or computers maintained by the internal affairs division of the City of Rochester Police Department or any other division of the City of Rochester Police Department including, but not limited to, PSS Investigative Summaries, Civilian Review Board determinations and Police Chief Reviews, concerning all complaints made against City of Rochester Police Department Officers Anthony Liberatore, Patrick Giancursio, Thomas Rodriguez, Alexander Baldauf, Mario Masic and the officers involved in the arrest of Lentorya Parker, including Officers Jonathan Marsh, Daniel Rizzo, Edward First, Andrew Bostick and Joel Hasper, for excessive use of force and/or deadly force, including but not limited to the information that is retrievable by computer code.

      36.    On October 6, 2021, a phone conference motion hearing was

conducted between the Court and counsel for the parties at which time the Court directed

counsel for the City Defendants to produce the AVLS/Track Star database file to the undersigned's office by October 18, 2021. During this phone conference, counsel for the City Defendants represented that he will produce Nicholas Petitti from the Rochester Police Department to testify concerning the AVLS/Track Star gps data and reports.

37.     On October 7, 2021, this Court ordered that on or before October 18, 2021, the City Defendants shall produce a copy of the "Microsoft sequel data base file associated with the City's Track Star AVLS system" and "to identify the City witness to be deposed concerning the City's Track Star AVLS System". (**Exhibit K** – 10/7/21 Order (Doc. 95), pg. 2).

38.     On October 26, 2021, the undersigned received the attached email from President/CEO Michael B. Hughes of Track Star International, Inc. indicating that Mr. Campolieto provided him with a link yesterday afternoon that allowed him to set up a download of a SQL database file of approximately 9 Gigabytes of data. (See **Exhibit L**).

39.     In his October 26, 2021 email, Mr. Hughes explained that he found that the Vehicle History table, which would contain the records of the GPS position reports from the vehicular devices, contained no data (0.000 MB). (See **Exhibit L** – pg. 1). Mr. Hughes further explained that he found that the Unknown Vehicle History table contained 8,127,431 records that span a time frame begins on June 20, 2016 and ends on December 14, 2016 with 107 unique device identities. (See **Exhibit L** - pg. 2).

40.     Mr. Hughes concluded that from the contents of the database tables, it is very likely that the database file sent in Mr. Campolieto's link yesterday was captured after a "purge" of records from the database, resulting in the observed lack of data in the

Vehicle History table of the database. (See **Exhibit L** – pg. 3). Mr. Hughes concluded that the result is that the SQL database file contains no records in the Vehicle History table and that the data contained in the Unknown Vehicle History table, spanning the time period of June 20, 2016 until December 14, 2016, cannot be attributed to any vehicle. (See **Exhibit L** – pg. 4).

      41.     On January 25, 2022, the undersigned deposed Michael B. Hughes who confirmed his findings as described in paragraphs 38-40 above. The undersigned has yet to receive Mr. Hughes' deposition transcript.

      42.     On October 27, 2021, the undersigned sent the attached email (**Exhibit M**) to counsel for the City Defendants explaining that the City has not produced the Microsoft sequel database file containing the AVLS/Track Star gps data for April 1, 2016, that Plaintif needs to know how the gps data for Request 1(d) got onto the City's server, what server that data was stored on, where can it be inspected, was the data backed up and if so, was it backed up on a hard drive and/or stored in a cloud?

      43.     In the undersigned's October 27, 2021 email (**Exhibit M**), the undersigned asked counsel for the City Defendants where this data was kept during the 2 year data retention policy period. The undersigned informed counsel for the City Defendants that Plaintiff has retained a forensic computer expert named Jerry Grant who needs answers to these questions and he suggested that to obtain these answers, we arrange a time for him to meet with the City's IT staff to discuss where this data was originally stored, whether the Microsoft sequel database file for the data on that particular server exists, whether it was purged and if so, when it was purged and by whom and whether it can be retrieved.

44.     In the undersigned's October 27, 2021 email to counsel for the City Defendants (**Exhibit M**), the undersigned asked for the Court's assistance in how this matter should be handled going forward since answers have not been forthcoming and how the undersigned anticipates further depositions will not provide answers to these questions. The undersigned requested a meeting or that the Court conduct a hearing to obtain these answers.

45.     On November 22, 2021, a motion hearing conference took place between the Court and counsel for the parties at which time the Court instructed the undersigned to confer with opposing counsel and to send a letter to the Court by December 1, 2021 confirming the schedule for conducting remaining depositions.

46.     During the November 22, 2021 motion hearing phone conference, the Court agreed that the City should work with Plaintiff's expert Jerry Grant in determining whether the Track Star AVLS data exists. The Court advised that the undersigned must prove through interrogatories or depositions the information needed to support a spoilation motion should Plaintiff wish to bring one at a later time since a spoilation motion was not before the Court.

47.     In this Court's November 24, 2021 Order and Amended Scheduling Order (Document 97) (**Exhibit H**), this Court directed the parties to confer and by no later than December 1, 2021 to the Court a letter with agreed-upon dates for the depositions of Michael Ciminelli, Nicholas Pettite, Phong Huynh, Michael Hughes and Rural Metro Ambulance personnel. This Court denied that portion of Simmons' motion that seeks to compel further production of the City's Track Star AVLS system on the condition that the

13

City Defendants cooperate with plaintiff to provide any requested Track Star AVLS system data that they may have in their possession, custody, and/or control. (Exhibit H – pg. 2)(Doc. 97).

48.     On November 24, 2021, the undersigned sent an email to Defendants' counsel (**Exhibit N**) and specifically asked Mr. Campolieto to advise when Plaintiff's computer expert, Jerry Grant, can meet with the City's IT staff to determine if the 4/1/16 AVLS/Track Star gps data exists and can be retrieved or if it does not exist, to determine what happened to it. The undersigned asked Mr. Campolieto to contact him to discuss this further and make the necessary arrangements but there was no response from him.

49.     On November 28, 2021, the undersigned telephoned Mr. Campolieto and left a message for him to call the undersigned about whether the City will pay the attorney fee sanction or if the undersigned will have to file an affidavit with the Court. The undersigned also asked Mr. Campolieto to call back so that arrangements can be made for Plaintiff's expert, Jerry Grant, to meet or confer with the City IT Dept. employees concerning the AVLS/Track Star gps data. Mr. Campolieto never returned the undersigned's phone call.

50.     On November 30, 2021, the undersigned's paralegal Barbara Peck sent the attached email (**Exhibit O**) to counsel advising of her discussion with Mr. Campolieto today and informing them that "Mr. Campolieto will be contacting his IT person at the City to set up an initial telephone conference with Plaintiff's expert, Jerry Grant, to discuss the AVLS data issues. Once a date and time has been set for that telephone conference, you will be notified".

51.     After conferring with Defendants' counsel by email, the undersigned

faxed the attached December 1, 2021 letter (**Exhibit P**) to the Court and emailed a copy to Defendants' counsel advising that the depositions of Nicholas Petitti, Stefanie Conte and Phong Huynh have been scheduled for January 7, 2022, the deposition of Michael Hughes has been scheduled for January 25, 2022 and the Rural Metro Ambulance personnel depositions for Edward Morrison, Alexander Fisino-Bush and Tova Tomer have been scheduled for January 27, 2022.

52.     The undersigned's December 1, 2021 letter (**Exhibit P**) further confirmed that Mr. Campolieto will produce Nicholas Petitti and Stefanie Conte on January 7, 2022 and all parties have agreed to hold the dates open for January 25, 26, 27, 28 and February 1, 2 and 3, 2022 as Mr. Campolieto has confirmed he will produce Michael Ciminelli and Laszlo Tordai within that time-frame.

53.     In the undersigned's December 1, 2021 letter (**Exhibit P**), there was no misunderstanding whatsoever that Mr. Campolieto will produce Defendant Michael L. Ciminelli, Laszlo Tordai and Stefanie Conte for their depositions on or before February 3, 2022.

54.     Attached hereto as **Exhibit Q** is a copy of a December 1, 2021 email from Mr. Campolieto to the undersigned's paralegal, Barbara Peck, where Mr. Campolieto stated "I am available of January 25-28 and February 1-3. Reserve those dates and I will get Ciminelli and Tordai to appear on one of those days".

55.     Attached hereto as **Exhibit R** is a copy of a January 18, 2022 email from Mr. Campolieto to counsel where he indicated "I am trying to get Nick Petitti and Stefanie Conte to be deposed Friday at 2".

56.     Based on the foregoing, counsel for the parties clearly knew that these

remaining depositions needed to be scheduled and taken before February 3, 2022 and that Plaintiff was entitled to take them before the February 18, 2022 discovery deadline.

57.     In the undersigned's December 1, 2021 letter (**Exhibit P)**, it was memorialized that Mr. Campolieto agreed to contact the IT individual employed by the City of Rochester to arrange for an initial telephone conference with Plaintiff's expert, Jerry Grant, to discuss the AVLS data issues and that after the initial telephone conference has been conducted, an inspection of the City of Rochester computers and AVLS tracking system may be scheduled.

58.     Despite Plaintiff's requests, Mr. Campolieto never arranged for an initial telephone conference between an IT employed by the City of Rochester and Mr. Grant to discuss the AVLS data issues and no inspection of the City of Rochester computers and AVLS Track Star system occurred. Plaintiff's expert, Jerry Grant, is unable to render any opinions since the City Defendants refuse to cooperate and communicate with Mr. Grant and since the undersigned has been unable to obtain necessary information concerning the Track Star AVLS system through discovery since the witnesses deposed lack the necessary knowledge about the Track Star AVLS system and data which is sought.

59.     On December 27, 2021, the undersigned sent an email to Mr. Campolieto (**Exhibit S** – pg. 2**)** emphasizing how Judge Payson denied Plaintiff's motion to compel further production of the City's Track Star AVLS system on the condition that the City Defendants cooperate with Plaintiff to provide any requested Track Star AVLS system data that the City Defendants have in their possession, custody and/or control. (See **Exhibit H** – 11/24/21 Order and Amended Scheduling Order, pg. 2 (Doc. 97)).

60.     In the December 27, 2021 email (**Exhibit S –** pg. 2), the undersigned reminded Mr. Campolieto how during the November 22, 2021 motion hearing, we discussed how the City should work with Plaintiff's forensic computer expert, Jerry Grant, to determine whether the AVLS data exists and the parties agreed to do this. In this email, the undersigned further reminded Mr. Campolieto how a meeting would be arranged between Jerry Grant and the City's IT Department to determine if the data exists and how it can be retrieved or if it does not exist, when and how it was destroyed.

61.     In the December 27, 2021 email to Mr. Campolieto (**Exhibit S** – pg. 2), the undersigned reminded Mr. Campolieto about a November 30, 2021 discussion at which time Mr. Campolieto indicated he would like to arrange an initial phone conference between Mr. Grant and the City's IT staff to discuss this matter before any meeting or inspection takes place. In this email, the undersigned reminded Mr. Campolieto how he would get back to us with a date and time for this initial phone conference but he never did so. In this email, the undersigned informed Mr. Campolieto that he was hoping to have any phone conference, meeting and/or inspections completed before conducting the depositions of Nicholas Pettiti, Stefanie Conte and Phong Huynh on January 7.

62.     In response to the undersigned's December 27, 2021 email (**Exhibit S**), Mr. Campolieto responded by email on December 28, 2021 stating "No calls have been made by you to me to arrange this meeting and not returned. Nothing will be able to be arranged until at least January 3. I will call you on that date". (See **Exhibit S** - pg. 1).

63.     Despite phone calls and emails to Mr. Campolieto's office, an initial

telephone conference between the City's IT employee and Jerry Grant never took place and there was never an inspection of the City of Rochester's computers and AVLS Track Star system.

64. Due to illness, Mr. Campolieto was unable to go forward with depositions on January 7, 2022 and they had to be rescheduled for January 21, 2022.

65. On January 21, 2022, the depositions of Phong Huynh and Nicholas Petitti were completed but neither witness had sufficient knowledge concerning the AVLS Track Star system, the storage and retention of this data and neither witness had knowledge as to what happened to the AVLS Track Star data for April 1, 2016. Mr. Campolieto advised the undersigned on January 21, 2022 that Stefanie Conte was not available for her deposition that day and that it would be rescheduled.

66. After the January 21, 2022 depositions of Phong Huynh and Nicholas Petitti were finished, the undersigned ordered expedited transcripts for these witnesses since they lacked clearly lacked knowledge about the Track Star AVLS system and the missing data and since both witnesses referenced other City IT Department employees and former employees who may possess relevant knowledge and information concerning the April 1, 2016 Track Star AVLS data and reports and the storage and retention of such data for City of Rochester police vehicles.

67. On January 21, 2022, Mr. Campolieto sent an email to the undersigned (**Exhibit T**) advising that Stefanie Conte was not available that day due to her out of office status for the past couple of weeks but she is available Wednesday, Thursday or Friday of next week.

68. On January 25, 2022, the deposition of non-party witness Michael

Hughes from Track Star International was completed.

69.　　On January 26, 2022, the undersigned's paralegal Barbara Peck sent an email to Mr. Campolieto (**Exhibit U**) asking if he could schedule Stefanie Conte for next Wednesday and Mr. Campolieto responded "I will try to get that done".

70.　　On January 27, 2022, the deposition of Rural Metro Ambulance representative Tova Tomer was completed.

71.　　On January 31, 2022, the undersigned received the expedited deposition transcripts for Phong Huynh (**Exhibit V**) and Nicholas Petitti (**Exhibit W)** and after reviewing them, the undersigned identified that City of Rochester IT Department employees or former employees Anthony Sutera, Lisa Bobo, Steven Mickle, Bill Boudreaux, Brandon LaSage, Rick Wright and Tricia (City's IT database team leader) may have knowledge concerning the City's Track Star AVLS system, the April 1, 2016 missing data and reports and/or the storage and retention of the Track Star AVLS data.

72.　　During his deposition, Mr. Huynh made it clear that the Track Star database belongs to the database group, that he was not on the database team and he did not know if the database can be modified, changed or deleted. (**Exhibit V** – Huynh Dep. pg. 24, line 19 to pg. 25, line 3). Mr. Huynh clarified that the undersigned will need to contact the IT database team if there is anything we want to know about the database. (**Exhibit V** – Huynh Dep. pg. 25, lines 4-9). When Mr. Huynh left the City of Rochester and retired, he believes Tricia was in charge of the database team. (**Exhibit V** – Huynh Dep. pg. 26, lines 8-15).

73.　　During his deposition, Mr. Huynh acknowledged that he did not know

anything about the database, the backup system and did not know if any records or logs were kept for the Track Star AVLS system. (**Exhibit V** – Huynh Dep. pg. 32, lines 13-19). Mr. Huynh did not know who the administrator would have been for the Track Star system during the time he worked for the City. (**Exhibit V** – Huynh Dep. pg. 56, line 22 to pg. 57, line 4). When asked if he knew if any local copies of the MS SQL databases were stored on desktop computers with the local AVLS client, Mr. Huynh responded "You can call the database team, T-E-A-M, and ask them". (**Exhibit V** – Huynh Dep. pg. 32, lines 20-24). Mr. Huynh did not know what the retention period was for the data on the AVLS Track Star system back in 2016. (**Exhibit V** – Huynh Dep. pg. 32, line 25 to pg. 33, line 4). He did not know if the police have the ability to alter, modify or delete the data on the AVLS Track Star system. (**Exhibit V** – Huynh Dep. pg. 36, lines 15-18). My. Huynh does not know who has the ability to remove data from the system but acknowledged that they should not do that. (**Exhibit V** – Huynh Dep. pg. 38, line 23 to pg. 39, line 4). He did not know what kind of server the AVLS Track Star system was kept on at the Public Safety Building. (**Exhibit V** – Huynh Dep. pg. 52, lines 7-12). He confirmed that the AVLS Track Star data server was still in the Public Safety Building when he left in 2020. (**Exhibit V** – Huynh Dep. pg. 54, lines 4-10).

74. On April 1, 2016, Mr. Huynh's supervisor was Steve Mikel who retired. (**Exhibit V** – Huynh Dep. pg. 43, lines 5-12). Mr. Huynh's supervisor and his CIO were allowed to go into the network or the computer Track Star system. (**Exhibit V** – Huynh Dep. pg. 53, lines 3-8). Mr. Huynh does not know if anyone has permission to modify or remove data from the City's Track Star AVLS system. (**Exhibit V** – Huynh Dep. pg. 57, lines 7-9). When asked if he knew of anybody from the City of Rochester who destroyed

Track Star AVLS data for April 1, 2016, Mr. Huynh responded "No, I don't think so. I'm not sure. I don't think so". (**Exhibit V** – Huynh Dep. pg. 62, lines 13-22). When Mr. Huynh was asked if this data still exists at the City of Rochester, he replied "I do not know. You can call IT and ask them". (**Exhibit V** – Huynh Dep. pg. 69, lines 4-9). When asked if he knew if the AVLS data is stored in a Microsoft SQL database file, Mr. Huynh replied "You can ask the database team". (**Exhibit V** – Huynh Dep. pg. 70, line 24 to pg. 71, line 2). Mr. Huynh does not know if the AVLS data got purged during the time he worked for the City and he does not know if the City removed the data and stored it off premises. (**Exhibit V** - Huynh Dep. pg. 71, lines 3-9).

  75. Mr. Huynh never saw the January 19, 2017 Judicial Subpoena Duces Tecum to the Rochester Police Department concerning Track Star AVLS data concerning the police vehicles used by Officer Joseph Ferrigno and Officer Sam Giancursio on April 1, 2016 and this subpoena was never brought to his attention. (**Exhibit V** – Huynh Dep. pg. 63, lines 7-24). Mr. Huynh described that for the police to obtain that information, they would have to go to a police supervisor and then the police supervisor will ask his top supervisor, the CIO, who will then ask him to obtain it. (**Exhibit V** – Huynh Dep. pg. 67, lines 8-21). On April 1, 2016, Mr. Huynh's top supervisor in the IT Department was Lisa Bobo, the Chief Information Officer (CIO). (**Exhibit V** – Huynh Dep. pg. 68, lines 2-11). Mr. Huynh never spoke with Lisa Bobo about this subpoena. (**Exhibit V** – Huynh Dep. pg. 68, lines 9-15). Mr. Huynh's understanding is that the AVLS Track Star data should have been available because this was within the two year retention policy. (**Exhibit V** – Huynh Dep. pg. 75, lines 2-18).

  76. Nicholas Petitti is the Director of Business Intelligence for the

Rochester Police Department. (**Exhibit W** – Petitti Dep., pg. 6, line 16 to pg. 7, line 2). Mr. Petitti has been an IT employee since he was moved there from the RPD in 2017. (**Exhibit W** – Petitti Dep. pg. 10, lines 18-22). Mr. Petitti never had involvement with the City's Track Star automatic vehicle locator system other than when Mr. Campolieto asked him if he could help him get the data back out for this case. (**Exhibit W** – Petitti Dep. pg. 8, lines 5-9). Mr. Petitti did not know if the City of Rochester has a data retention policy concerning Track Star data. (**Exhibit W** – Petitti Dep. pg. 10, lines 4-7).

77.     When asked who from the City could access the data on the AVLS Trackstar system, Mr. Petitti responded that he did not know who the administrator is. (**Exhibit W** – Petitti Dep. pg. 11, lines 14-16). He testified that in 2016, there were supervisors in patrol and people in IT who could access the system. (**Exhibit W** – Petitti Dep. pg. 11, line 21 to pg. 12, line 4). Mr. Petitti did not know the make and model of the server which the City of Rochester used to receive and store Track Star AVLS data and he does not know if the server the City has now is the same one they had on April 1, 2016. (**Exhibit W** – Petitti Dep. pg. 30, lines 2-11). He clarified that somebody on the database administration team in IT would know which server was used for Track Star purposes. (**Exhibit W** – Petitti Dep. pg. 30, lines 12-15).

78.     It is Mr. Petitti's understanding that IT in facilitating Plaintiff's request for AVLS data returned the entire database and everything that was there. (**Exhibit W** – Petitti Dep. pg. 13, lines 16-24). Mr. Petitti explained how he took the request from Mr. Campolieto back a few months ago, he spoke with the CTO Bill Boudreaux to figure out who he should direct the request to and he opened a ticket on behalf of Mr. Campolieto. (**Exhibit W** – Petitti Dep. pg. 30, line 22 to pg. 31, line 8). Bill Boudreaux put Mr. Petitti in

touch with Brandon LaSage who is the database administrator who ultimately pulled the file and sent it to Mr. Campolieto. (**Exhibit W** – Petitti Dep. pg. 31, lines 7-14). Mr. Petitti believes that everything that the City has for Track Star was copied and delivered to Mr. Campolieto. (**Exhibit W** – Petitti Dep. pg. 32, lines 2-8).

79.    When asked who from the City or the City Police Department would have the ability to delete AVLS Track Star data back in 2016, Mr. Petitti responded that he did not know for sure what user permissions were set up in that system but it would be very rare if someone was given the ability to have read/write access at the end-user level. (**Exhibit W** – Petitti Dep. pg. 14, lines 10-18). Mr. Petitti does not know if anybody modified, altered or destroyed any of the Track Star data. (**Exhibit W** – Petitti Dep. pg. 32, lines 9-17). He clarified that the only people that would likely have the ability to tamper with or delete the data are the administrators. (**Exhibit W** – Petitti Dep. pg. 32, lines 21-24).

80.    Mr. Petitti did not know for sure if the server was a Microsoft SQL server, he did not know what version was installed on April 1, 2016 and did not know if the server was a virtual machine or a stand-alone computer. (**Exhibit W** – Petitti Dep. pg. 16, lines 3-23). He also did not know if the server was backed up on a daily or weekly basis and did not know what the data retention policy was and that somebody from the IT networking team would know. (**Exhibit W** – Petitti Dep. pg. 16, line 24 to pg. 17, line 16). He did not know if the backups were on disks or on a tape and if they were automatic or manual. (**Exhibit W** – Petitti Dep. pg. 18, lines 9-21). Mr. Petitti never modified, altered or deleted any Track Star AVLS data while working for the City of Rochester and he does not know how to do this. (**Exhibit W** – Petitti Dep. pg. 22, lines 10-23).

81.     Mr. Petitti clarified that in April of 2016, the Rochester Police Department did not have the ability to purge or destroy data, that they had read-only access to data and the only people that could purge or destroy Track Star data would be people from the IT Department. (**Exhibit W** – Petitti Dep. pg. 35, liens 8-24, pg. 36, lines 7-9). He did not know who the database administrator was in April 2016 but Lisa Bobo would probably know since she was the head of IT back then. (**Exhibit W** – Petitti Dep. pg. 37, lines 17-22). Mr. Petitti does not know if there was a Track Star AVLS database administrator back in 2016. (**Exhibit W** – Petitti Dep. pg. 41, lines 4-6).

82.     Mr. Petitti explained that Tony Sutera was the relationship manager for the RPD in 2016 so if the Rochester Police Department needed to access something in the Track Star system, Tony Sutera would have made the contact with the IT Department. (**Exhibit W** - Petitti Dep. pg. 41, line 21 to pg. 42, line 8). Tony Sutera was an IT employee and Mr. Petitti does not know if Tony Sutera made any requests to the IT Department concerning Track Star AVLS data concerning the April 1, 2016 officer involved shooting incident. (**Exhibit W** – Petitti Dep. pg. 42, lines 19-25). Mr. Petitti acknowledged that the undersigned needs to speak with somebody from the IT Department concerning the specific questions that were asked. (**Exhibit W** - Petitti Dep. pg. 57, lines 4-10).

83.     On February 1, 2022, the undersigned emailed Defendants' counsel (**Exhibit X** – pg. 2**)** advising them that further depositions are necessary since Mr. Huynh and Mr. Petitti do not have knowledge as to the database, storage and backup system of the AVLS Track Star system and do not have any knowledge as to what happened to the AVLS Track Star data for April 1, 2016. The undersigned explained that before he deposed these witnesses, it was his understanding that Mr. Campolieto would produce

person/s from the City's IT Department with knowledge of the Track Star data but obviously these witnesses did not have that knowledge. The undersigned advised that according to Mr. Huynh's and Mr. Petitti's testimony, it appears Mr. Huynh's supervisor, the Chief Information Officer and/or the person in charge of the City's IT database team had the ability to access, modify and/or delete the Track Star AVLS data. Also, the undersigned noted how Mr. Huynh testified that he did not know who the Track Star AVLS database administrator was during the time he worked for the City and that Plaintiff needs to conduct further discovery since witnesses with knowledge were not produced.

84.     In the undersigned's February 1, 2022 email (**Exhibit X** – pg. 2), the undersigned advised that after reviewing the deposition transcripts of Phong Huynh and Nicholas Petitti, the Plaintiff needs to subpoena and depose Anthony Sutera, Lisa Bobo and Steven J. Mickle who have all retired from the City of Rochester's IT Department and briefly depose Bill Boudreaux, Brandon LaSage, Rick Wright and Tricia (last name unknown, in charge of City's IT data base team) from the City's IT Department along with Stefanie Conte, Laszlo Tordai and Michael Ciminelli. The undersigned requested dates when counsel will be available so that these remaining witnesses can be subpoenaed and deposed and the undersigned also requested counsel agree to extend all scheduling order deadlines by 45 days. (See **Exhibit X**) – pg. 2).

85.     In response to the undersigned's February 1, 2022 email (**Exhibit X** – pg. 2), counsel for the Shotspotter Defendants responded by email (**Exhibit X** – pg. 1) stating that they do not agree that an extension is necessary, that the "number of depositions that have been taken in this case is excessive and wasteful" and advising the undersigned that "FRE Rule 30 limits the number of deposition a party can take to ten

depositions without leave of the court". (See **Exhibit X** – pg. 1). In this email, counsel for the Shotspotter Defendants indicated "we can meet and confer to discuss whether there is way for the parties to agree on some less excessive" and "if we can't agree, then Plaintiff will need to seek relief from the court". (See **Exhibit X** – pg. 1).

86.    On February 1, 2022, the undersigned responded in an email to counsel for the Shotspotter Defendants (**Exhibit X** – pg. 1) that meeting and conferring will not work here since we (Plaintiff) cannot agree to limit the number of depositions of the remaining witnesses and will move for leave to take these depositions. The undersigned noted how the City has not voluntarily produced witnesses with the necessary knowledge and information we need concerning the Track Star AVLS data from April 1, 2016 and therefore, this is the approach we must take unless the City voluntarily produces a witness or witnesses who can answer our questions. In this email (**Exhibit X**), the undersigned advised that we need to question these remaining witnesses in order to either obtain the requested AVLS Track Star data or to support our spoilation motion concerning this deleted data. The undersigned advised that the number of depositions taken are not excessive or wasteful, that this is a complicated case involving multiple defendants and claims and the depositions taken were necessary for the prosecution of Plaintiff's claims. (See **Exhibit X** – pg. 1).

87.    On February 2, 2022, the deposition of Rural Metro Ambulance employee Edward Morrison and Alexander Fisino were completed.

88.    After the February 2, 2022 depositions of Edward Morrison and Alexander Fisino were completed, the undersigned asked Defendants' counsel when Defendant Michael L. Ciminelli, Laszlo Tordai and Stefanie Conte would be produced for

their depositions. The undersigned also explained to Defendants' counsel how Phong Huynh and Nicholas Petitti did not have adequate knowledge concerning the AVLS Track Star system and the missing April 1, 2016 AVLS data and it will be necessary to depose additional witnesses from the City's IT Department. The undersigned explained to Defendants' counsel that Anthony Sutera, Lisa Bobo, Steven J. Mickle, Bill Boudreaux, Brandon LaSage, Rick Wright and Tricia (City's IT database team leader) were mentioned by Mr. Huynh and Mr. Petitti as City IT employees who may have knowledge of the Track Star AVLS system, the missing data and the storage and retention policies of the City of Rochester and how the undersigned wants to depose some or all of these witnesses.

89. On February 2, 2022, after the undersigned expressed the desire to depose the additional City IT witnesses, Defendants' counsel stated that they will not permit any further depositions to be taken in this action, including Defendant Michael L. Ciminelli, Laszlo Tordai, Stefanie Conte and the additional witnesses from the City's IT Department identified above and that Plaintiff will have to move this Court for leave to depose any additional witnesses in this case pursuant to FRCP 30.

90. On February 2, 2022, the undersigned sent an email (**Exhibit Y**) to Defendants' counsel acknowledging they will not allow Plaintiff to take any further depositions until leave is obtained pursuant to FRCP 30 and indicating that he (the undersigned) was hoping to at least complete the depositions of Laszlo Tordai, Defendant Michael Ciminelli and Stefanie Conte before the February 18 discovery deadline but this will not occur due to their position.

91. Based on the foregoing, the depositions sought by Plaintiff are highly

relevant to his causes of action alleged in the Amended Complaint (**Exhibit A**) and are relevant concerning the missing Track Star AVLS data. Since counsel for the City Defendants has not produced witnesses from the City's IT Department with knowledge of the City's Track Star AVLS system on April 1, 2016, it is necessary that the undersigned depose employees or former employees of the City of Rochester Information Technology Department including Anthony Sutera, Lisa Bobo, Steven J. Mickle, Bill Boudreaux, Brandon LaSage, Rick Wright and Tricia (City's IT database team leader). The testimony from these witnesses will be necessary to either obtain the sought after AVLS Track Star data or to prove what happened to this data in support of a future spoilation motion.

92.     There is absolutely no excuse why the Defendants refused to allow the depositions of Defendant Michael Ciminelli, Stefanie Conte and Laszlo Tordai to go forward prior to expiration of the February 18, 2022 fact discovery deadline. As of December 1, 2021, the Defendants certainly had no objection to these depositions when the undersigned confirmed them with this Court in writing and all parties and the Court had an expectation that these depositions would be completed as scheduled. (See **Exhibit P**).

93.     Defendants' refusal to at allow the depositions of Defendant Michael Ciminelli, Stefanie Conte and Laszlo Tordai is clearly willful and constitutes bad faith upon considering that this Court oversaw the scheduling of these depositions by and through the Court's November 24, 2021 Order and Amended Scheduling Order (Doc. 97) (**Exhibit H**) and upon considering these depositions were confirmed through the undersigned's December 1, 2021 letter to the Court (**Exhibit P**). Defendants should not be permitted to arbitrarily stop discovery just prior to expiration of the February 18, 2022

discovery deadline and refuse to allow the scheduled depositions of Defendant Michael Ciminelli, Stefanie Conte and Laszlo Tordai to go forward as previously agreed to.

94. There are multiple Defendants with multiple causes of action alleged in the Amended Complaint and it was clearly foreseeably that more than ten (10) depositions would need to be taken in this case.

95. The following depositions were completed in this action:

Amy Baurer – 6/29/21;
Robert Bressler – 11/20/20;
Robert Bressler – 3/9/21 continuation;
Ralph Clark – 11/19/20;
Ellyn Colquhoun – 4/12/21;
Kenneth Coniglio – 9/14/21;
Dawn Darragh – 5/3/21;
Michael DiMauro – 9/14/21;
Eric Ferguson – 6/29/21;
Joseph M. Ferrigno, II – 10/5/21;
Stephen Fischer – 7/8/21;
Eric Freemesser – 4/12/21;
William Gallagher – 9/10/21;
Patrick Giancursio – 7/15/21;
Samuel Giancursio – 7/16/21;
Paul Greene – 11/25/20;
Jonathan Henderson – 5/3/21;
Phong Huynh – 1/21/22;
Dylan Minnick – 7/15/21;
Christopher Muscato – 7/29/21;
Detron Parker – 5/3/21;
Nicholas Petitti – 1/22/22;
Silvon Simmons – 11/19/20;
Silvon Simmons – 12/10/20 continuation;
Whitney Unrath – 9/10/21;
William Wagner – 7/16/21;
Scott Weiser – 11/20/20;
Robert Wetzel – 2/25/21;
Mark Wiater – 3/2/21;
Joseph Zampatori – 9/10/21;
Flamur Zenelovic – 7/19/21;
Tova Tomer – 1/27/21;
Edward Morrison – 2/2/22; and

Alexander Fisino – 2/2/22.

96.     The Defendants never raised any objection to the number of

of depositions that had been taken until February 1, 2022 when the undersigned

expressed that some additional City IT witnesses would have to be deposed due to the

Mr. Huynh's and Mr. Petitti's lack of knowledge as they expressed during their

depositions. Prior to February 1, 2022, the Defendants acquiesced to the 30 plus

depositions which were conducted and it was only after 30 depositions were taken and

16 days before the expiration of the February 18, 2022 discovery deadline that

Defendants decided to stop further depositions which were agreed to occur claiming that

the Plaintiff has taken in excess of 10 depositions and will have to move for leave to take

additional depositions.

97.     Based on the foregoing, the Defendants have demonstrated

willfulness, bad faith and fault by stopping further depositions in this action. The City

Defendants' have additionally shown bad faith in their refusal to cooperate with Plaintiff's

forensic computer expert to provide information concerning the Track Star AVLS data,

whether it exists or can be recovered, whether it was purged or destroyed and how and

when such occurred.

98.     Pursuant to FRCP 16(f), 37(b)(2)(A) and (C), the Plaintiff requests this

Court to issue an order imposing sanctions against Defendants and/or their counsel for

their refusal to comply with this Court's Order.

99.     Upon considering that this is the fifth motion to compel discovery which

has been made against the City Defendants, upon considering that sanctions have

already been imposed twice against them in the form of reasonable expenses and

attorney fees and upon considering that this pattern of sanctionable conduct continues by

the City Defendants, a more severe sanction is warranted.

100.    During the fourth motion to compel discovery, Plaintiff requested this

Court to strike the City Defendants' Answer with respect to Counts VIII (Violation of 42

USC §1983 by Defendant City of Rochester for Failure To Implement Policies, Customs

and Practices) and IX (Violation of 42 USC §1983 by Defendants City of Rochester and

Michael L. Ciminelli for Supervisory Liability/*Monell v. Dept. of Social Services*, 436 US

658 (1978)) of the Amended Complaint and render a default judgment in favor of Plaintiff

on these causes of action since the City refused to provide Plaintiff all complaints made

against Rochester Police Department officers for the past ten (10) years for excessive

use of force and all complaints against the named officers for excessive use of

force/deadly force which were unlimited in time. These complaints were requested at

paragraphs 1(dd) and 1(ee) of Plaintiff's First Request For Production of Documents.

(**Exhibit J** – Burkwit Affidavit). Plaintiff moved for and requested this specific sanction on

the Fourth Motion To Compel (See Doc. 86-1, Burkwit Affidavit, paragraphs 45 & 46)

believing that these documents existed but the City Defendants refused to turn them over.

101.    After Plaintiff filed the fourth motion to compel discovery, the

undersigned learned by letter from Mr. Campolieto that many of the complaints sought by

Plaintiff no longer exist due to the Professional Standards Section's Purge and Retention

Policy. (See Doc. 91-3). The City Defendants filed the Affidavit of Laszlo Tordai which

was submitted unsigned at Doc. 90-5 but sent signed and notarized to the Court under

separate cover. Lieutenant Tordai admitted at paragraph 17(b) of his Affidavit (Doc. 90-

5) that the Professional Standards Section's Purge and Retention Policy requires any

exonerated, unfounded, officed or unprovable incident reviews to be purged after five years and how any of the complaints from 2010 to 2015 that fit into these categories would have been purged and are not available for production.

102. During the fourth motion to compel discovery, the undersigned informed the Court in the undersigned's Reply Affidavit at paragraph 27 (Doc. 91) that since the City Defendants have purged and destroyed the documents Plaintiff has requested at paragraphs 1(dd) and 1(ee) in Plaintiff's First Request For Production of Documents, Plaintiff is unable to prove and establish Plaintiff's claims for Failure To Implement Policies, Customs and Practices and Supervisory Liability/Monell v. Dept. of Social Services, 436 US 658 (1978)) and Plaintiff will not be able to successfully defend against any future motion for summary judgment dismissing these claims if and when such a motion is made by the City Defendants. The Plaintiff required these complaints to support the claims alleged at Counts VIII and IX of the Amended Complaint (**Exhibit A** – Burkwit Affidavit) and the Plaintiff requires the deposition testimony of Defendant Michael L. Ciminelli and Laszlo Tordai to establish that the requested complaints were purged and destroyed, no longer exist and to support a spoilation motion.

103. Upon considering the City Defendants' recurring pattern of willful misconduct, the undersigned requests that this Court sanction the City Defendants and/or their counsel by striking the City Defendants' Answer and grant Plaintiff a default judgment with respect to Counts VIII and IX of the Amended Complaint. This sanction will alleviate the need to take Defendant Ciminelli's and Lieutenant Tordai's depositions. Since the City Defendants' counsel agreed to produce these two witnesses, represented and assured to the Court that they would be produced and then refused to produce them, the City Defendants should not be given another chance to produce them and should be

subject to the sanction of having their answer struck and a default judgment granted on these two causes of action for which their testimony was required. With the pattern of willful non-compliance which has been shown by the City Defendants, this sanction is warranted and should be imposed by this Court.

104.    The undersigned requests that pursuant to FRCP 37(a)(5) and 37(b)(2)(C), this Court grant reasonable expenses, including attorney's fees, caused by Defendants' willfulness and bad faith in arbitrarily stopping discovery in this action and failure to comply with this Court's Order. In the event that such expenses and fees are granted, the undersigned will submit an affidavit of services and disbursements to the Court.

### *Request To Extend Scheduling Order Deadlines*

105.    Based on the foregoing, the Plaintiff respectfully requests a 60 day extension of all deadlines, including but not limited to the February 18, 2022 factual discovery deadline, contained in this Court's Amended Scheduling Order. (Doc. 97) (**Exhibit H**).

106.    Based on the foregoing, the undersigned has been attempting in good faith to complete depositions and obtain discovery concerning the Track Star AVLS system but has faced insurmountable barriers as described herein with the Defendants' refusal to cooperate in allowing and/or providing discovery.

107.    Based on the foregoing and pursuant to FRCP 16(b)(4), good cause has been shown why this Court should again modify and extend all the deadlines in this Court's Amended Scheduling Order (Doc. 97) (**Exhibit H**) by 60 days.

**WHEREFORE**, your deponent respectfully prays for the following relief:

A. An Order pursuant to FRCP 26 (a)(2)(B) declaring that Plaintiff is not required to provide expert disclosures for Monroe County Crime Laboratory employees Eric Freemesser and Ellyn Colquhoun since they are not expert witnesses and in the alternative, if the Court deems them to be experts, an Order declaring that Plaintiff is not required to provide written reports prepared and signed by Eric Freemesser and Ellyn Colquhoun pursuant to FRCP 26(a)(2)(B) and declaring that their December 23, 2020 expert disclosures comply with FRCP 26 (a)(2)(C);

B. An Order pursuant to FRCP 26 (b)(1) and (2)(a) and FRCP 30 (a)(2) compelling and granting Plaintiff leave to take the depositions upon oral examination of Defendant Michael L. Ciminelli, Laszlo Tordai, Stefanie Conte and employees or former employees of the City of Rochester Information Technology Department including Anthony Sutera, Lisa Bobo, Steven J. Mickle, Bill Boudreaux, Brandon LaSage, Rick Wright and Tricia (City's IT database team leader) who may possess relevant information concerning the April 1, 2016 missing data and reports from the City of Rochester's Automated Vehicle Locator System (AVLS) and the storage and retention of such data for City of Rochester police vehicles;

C. An Order pursuant to FRCP 16(b)(4) extending the Amended Scheduling Order (Document 97) deadlines by 60 days; and

D. An Order imposing the requested sanctions herein against the Defendants and/or their counsel and awarding reasonable expenses incurred including attorney's fees caused by their refusal to comply with this Court's November 24, 2021 Order and Amended Scheduling Order (Document 97), pursuant to FRCP 16(f), 37(b)(2)(A) and (C), and

E. An Order granting for such other and further relief as the Court may deem just and proper; and

                                     _____s/Charles F. Burkwit, Esq._____
                                       Charles F. Burkwit, Esq.

Sworn to before me this
14th day of February, 2022


_____s/Barbara Peck_____
Notary Public