| | |
|---|---|
| **UNITED STATES DISTRICT COURT** <br> **WESTERN DISTRICT OF NEW YORK** | |
| DAVID VANN, <br><br>                             Plaintiff, <br><br> v. <br><br> CITY OF ROCHESTER, et al., <br><br>                             Defendants. | **MEMORANDUM OF LAW IN OPPOSITION TO SUMMARY JUDGMENT** <br><br> Case No.: 18-cv-6464 |

## PRELIMINARY STATEMENT

Defendants deny that summary judgment is appropriate here. First, this matter is still in discovery and there are currently discovery disputes ongoing and discovery is open in this matter until August 30, 2024. This motion is premature at best. Almost every fact involved in this incident is in dispute. There is not a separate, numbered, Fed. R. Civ. P. 56 Statement of Facts filed with the movant's motion. The City was therefore unable to contradict any facts that the Plaintiff deems important, undisputed or relevant in this motion. The City has provided a statement of facts which it believes are relevant and determinative that this motion should be dismissed.

More importantly, the City believes that the City of Rochester Police Officers used reasonable force in order to prevent further harm to themselves and the individuals in and around the store which they themselves the in this motion provide its. The Supreme Court was clear in Graham v. Conners 490 U.S. 386 (1989) that you cannot judge the officers conduct by sitting back and second-guessing, determining correct amount of force requires viewing it from the presppective of a reasonable officer in the situation. The officers should also be afforded Qualified immunity if it is

determined that there conduct was improper.

## OPPOSING PERTINENT FACTS

The City objects and contends that all of the "pertinent facts" set out by the Plaintiff are disputed. The information contained in the "pertinent fact" section are not facts and certainly not undisputed. This information is a narrative set out by the Plaintiff and cannot be substituted for a Statement of Facts. The City has stated its undisputed facts in its Statement of Facts under separate cover. The motion for summary judgment should be dismissed, or resubmitted anew, due the failure to include a Rule 56 Statement of Undisputed Facts.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 241 (2d Cir. 2020).

> "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law. The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."

*Frost*, 980 F.3d at 242.

In this instant summary judgment there was no proper Rule 56 Statement of Facts so it Defendants are not able to say what facts are in dispute. In this case it must be assumed that all facts are in dispute or the Defendants facts are

accepted as true—in either determination the motion should be dismissed. Additionally, all of the Plaintiff's conclusory statements of law are disputed or contradicted by the facts and evidence submitted in this opposition.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this determination, a court must assess whether there are any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991). A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the non-moving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . .

, that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

In this case, the failure to include a Statement of Facts, prevents the City from properly contesting a major part of this motion and therefore the motion should be dismissed.

### I. PLAINTIFF DOES NOT ARTICULATE A CLAIM FOR EXCESSIVE FORCE BEYOND A QUESTION FOR THE JURY.

**Plaintiff claims that excessive force per se due to Plaintiff being restrained**

In his lettered argument A, Plaintiff claims that Plaintiff was handcuffed throughout the incident. This is a distinct area of disagreement between the parties in this case. The City of Rochester Police Officers have all stated that they did not believe that Plaintiff was handcuffed or handcuffed properly at any time during the incident. See Exhibit A, pg. 277; Exhibit C, p. 66-69. Additionally, the officers were clear in their understanding that Plaintiff was not searched until the physical altercation was over. Regardless of, whether Plaintiff was handcuffed, properly, or not at all, during the course of his arrest he was resisting with his body, legs and head continuously throughout the arrest. All of the force used against plaintiff was proper and necessary to make the arrest of the Plaintiff and to gain control of the Plaintiff in the safest manner possible.

In *Graham v. Conners 490 U.S. 386 (1989)* the "objectively reasonable" test was applied to the officers behavior in analyzing the use of force. The Court made specific

reference to the circumstances that police officers are challenged with in making certain arrests.  The Court stated that the reasonableness of particular uses of force must be judged from the perspective of reasonable officers at the scene.  Reasonableness must account for the fact that police officers are often forced to make split second judgments in circumstances that are tense uncertain and rapidly involving about the amount of force that is necessary in a particular situation.  *Id.*  This is the situation that the officers in this case faced.

At the time the officers decided that the Plaintiff would be arrested for trespassing the Plaintiff had been free to go but turned his body back toward the officers with his fist balled indicating that he may strike the officers.  See Kester Affidavit ¶7.  At no time had the Plaintiff been searched and the possibility remained that he may have a weapons.  In fact, the Plaintiff continued to reach for his waist band throughout his interaction with police.   The video tape is certainly not conclusive of a lack of danger to the officers, the danger is present in the facts.  Two of the three officers were incapacitated by the Plaintiff's resistance towards them.  One received a broken leg and another a broken collarbone, leaving one officer to deal with what had previously been a aggressive suspect and leaving that one officer in a state of exhaustion by himself.  See Exhibit A, pg. 310-316.

The force used by the officers was in this case necessary to effect the arrest of the Plaintiff.   See Exhibit A, C, Kester and Mitchell Affidavits.  The use of force by the officers here was the least amount of force that could be used to effect the arrest.  Exhibit F and G.   The officers stated that they used three point landing, hooking, arm bar take downs, distractionary techniques, all escort techniques to guide the plaintiff into

a position where he could be handcuffed-none being successful.  Further pepper spray and jabs were used when the lone officer left standing was engaged with the suspect to the point of exhaustion.

The Court in *Abujayyab v. City of New York, 2018 U.S. Dist. LEXIS 140914, 1,* applied test, which uses factors that may bear on the objective reasonableness of the force used: (1) the need for force, including the threat reasonably perceived by the officer and whether the plaintiff was actively resisting, (2) the relationship between the need and the degree of force used, (3) the extent of the plaintiff's injury, and (4) any effort made by the officer to temper or to limit the amount of force.   In the matter at hand, each of above factors show that the officers used proper amounts of force to simply control and arrest the Plaintiff.  There was need as the plaintiff was not complying with the orders of the officers and was actually moving away from the officers. The force used was simply that needed to arrest-escort, lift and control.  There are no documented injuries from any force used on the plaintiff, only injuries to two of the three officers.  The officers did not extend or use any means of force other than those needed to place the Plaintiff in handcuffs and transport him to their car.  See Exhibits E and F.

### B. OFFICERS CANNOT BEAT A RESTRAINED INDIVIDUAL WHO IS NOT RESISTING

As Plaintiff correctly points out, it is generally recognized that police officers cannot beat a restrained individual who is not resisting.  However that is not the case that is before the Court.  In this matter the Plaintiff was not beaten, the individual was not known to be restrained or handcuffed properly, was not searched and was actively

resisting. The handcuffs were never known to be properly placed on the plaintiff. Exhibit A, p. 290. From the beginning of the physical altercation with police officers Plaintiff presented himself in a fighting stance facing off against the officers. See Exhibit E, ¶1. When the officers attempted to handcuff him he resisted and moved forcefully away from the officers. Causing Officer Kester and Officer Mitchell to fall to the ground with the Plaintiff. This resulted in a broken leg for Officer Kester and incapacitating him from further assistance to the other two officers working the incident scene in taking custody of the Plaintiff. Additionally, the original complainants for the trespassing and a growing crowd had gathered at the scene and needed to also be protected from the officer involved altercation. See Exhibit H, p. 26 and Exhibit E.

There was no gratuitous use of force at any point in this interaction. Every action was the result of an action of the Plaintiff. See Exhibit F and G. Every action was meant to take control of the Plaintiff in effectuating the arrest and prevent any further threat or injury to the officers and the public. See Exhibit A, p. 277.

### C. KESTER ARM BAR

When Plaintiff pulled away from the officers when they initially attempted to handcuff him, it caused Officer Mitchell to attempt to grab Plaintiff and Officer Kester to attempt to grab his shoulder to bring him to the ground. Plaintiff categorizes this as attempting to grab his neck but the attempt was made to grab Plaintiff's shoulder in a proper three point landing takedown, it was the shoulder that would allow the officer to bring him under control on a ground takedown. See Exhibit C, pg. 79-88.

Plaintiff cites to *Brown v. City of New York, 798 F.3d 94 (2d cir. 2015)* as a case

which would demonstrate that refusal to put hands behind his back is not resisting arrest.  However, in this case there was an individual who maintained a fighting stance and violently moved his hand to his front of his body and moved his body to cause the officers to fall and injure themselves.  This was clearly resisting and threatening acts towards the officers which did cause injury.  *Cabisca v. Hogg, 14-cv-6485* is not similar in any respect. Cabisca was an elderly woman, at her home, after her dog was shot and it is not a similar matter   Situations are judged as factually specific according to the Court in *Ketcham v. City of Mount Vernon, 2024 WL 1552658*, and likewise the Supreme Court in *Graham v. Conners 490 U.S. 386 (1989).*

### D.  CLAIM THAT MITCHELL USED EXCESSIVE FORCE WHEN HE USED DISTRACTIONARY JAB

A jab is a trained technique to cause distraction with jabs or punches not meant to injure a person.  Not to be used repeatedly nor in the face and in this case they were not.  Plaintiff was a threat from the beginning of this encounter.   See Exhibit A, p. 277.  He reached for his waistband and a distractionary jab to the back was used to stop that behavior due to the potential danger to the officer and was proportional to the behavior.  See Exhibit A, pg. 299-230.  This is a taught technique and is meant to distract Exhibit F and G.  Qualified Immunity is available for kicks, punches and Baton even if it the distractionary jabs were found to be improper.  *See Bradley v. Bongiovanni, 2021 WL 3635206.*

### E. MITCHELL AND DRAKE DID NOT USE EXCESSIVE FORCE WHEN BROUGHT TO GROUND

It must be stated clearly that for the following use of force claims E-H, all of the following factors apply:

- The Officers deemed the Plaintiff a threat
- The Officers had not yet determined that the Plaintiff's handcuffs had been properly secured
- One officer was incapacitated; another would be when they went to the ground
- The lone officer was at the point of exhaustion as he had not ever encountered a altercation with a suspect lasting as long as this one had (2-5 minutes)
- Not defensive tactic or use of force was effective to this point in gaining control of the suspect.
- The Plaintiff had not yet been searched and was continually grabbing at his the waist-band of his pants.

At this time the Plaintiff was pulling away from the Officers Drake and Mitchell after struggling with the officers for 2-5 minutes. The other officer, Kester, was injured and in pain far away from where these officers were engaged with the Plaintiff. Plaintiff was still actively resisting and pulling away while reaching for his waistband, not searched and the officers are not sure if he is hand cuffed properly. See Exhibit H, pg. 13-14, 25-27.

### F. PEPPER SPRAY

It was at the time that Officer Mitchell used pepper spray that he was by himself. No other officers to assist him with the struggling Plaintiff. Exhibit E, F and Exhibit H14-15. Plaintiff continued reaching for his waistband and he would not stop and failed to heed any instructions. This caused apprehension in the officer, fear that the Plaintiff had weapons on his person and the only option was to try to use pepper spray to subdue the Plaintiff. Exhibit E, F and Exhibit H, pg. 14-15. The pepper spray was not effective and did not come of the canister. See Exhibit A, pg,. 315-318. Mitchell used ground stabilization to hold Plaintiff down until other officers arrived and when they did he was checked for proper cuffs and searched. Additionally, the pepper spray was not working properly, was not sprayed directly at the face of the Plaintiff and was deployed one to two feet from the Plaintiff. The pepper spray was the only tactic that the officer could use that would prevent him from being overpowered by the Plaintiff at the state of exhaustion the officer was feeling. See Exhibit A, pg. 315-318. This analysis precludes the granting of summary judgment for the use of pepper spray. *Tracy v. Freshwater, 623 F. 3d 90.*

### G. MITCHELL HOLDING PLAINTIFF ON THE GROUND DURING SEARCH

There is no excessive force with holding a struggling suspect down while he is searched after a 2-5 minute struggle with police officers. No reasonable jury of reasonable officer would find that the force used to search Plaintiff on the ground was excessive. Two officers had been injured during this 2-5 minutes and the suspect had not listened to any commands and was reaching for his waistband after not being searched. He was pinned by Officer Mitchell's ground stabilization technique and when

other officers got there he rolled over in order to osearch him for weapons as he had been reaching for his waistband causing Officer Mitchell constant concern and fear of Plaintiff possessing a weapon.  See Exhibit F.

### H.  SEARCHING PLAINTIFF AT CAR

When the Officers were able to get the Plaintiff searched on the ground they brought him to the police car where he was searched standing up.  Suspect would not stand still and was continuing to move as he had been during the 2-5 minutes struggle with the police.  See Exhibit F.  Officer Mitchell did not pull Mr. Vann's hands over his head and he stated clearly in his deposition that his hands were brought away from his waistband but not above his head because he was bent over the trunk.  Se  Exhibit A, pg. 345-347.

### II.     DEFENDANTS  ARE ENTITLED TO QUALIFIED IMMUNITY.

The Defendant-officers are entitled to qualified immunity, because police officers are privileged and permitted to stop, investigate and arrest with probable cause under valid law enforcement purposes.

"A government official is entitled to immunity from suit whenever (1) his conduct did not violate clearly established law, or (2) it was objectively reasonable for the official to believe that his action did not violate such law." *Naumovski v. Norris*, 934 F.3d 200, 210 (2d Cir. 2019). Clearly established law must be "particularized" to the facts of the case, in that precedent must establish that an officer acting under similar circumstances

had violated the Constitution. *White v. Pauly*, 580 U.S. 73, 793 (2017). "[U]nlawfulness must be apparent. *Id.* at 793.

A. **THE OFFICERS' CONDUCT DID NOT VIOLATE CLEARLY ESTABLISHED LAW.**

Only the United States Supreme Court and the Second Circuit may clearly establish law (*Moore v. Vega,* 371 F.3d 110, 114 (2d Cir. 2004)), and neither has held that an officer with probable cause cannot arrest or use required force to effect the arrest of a suspect for a violation of the law.  The Officer Defendants, Mitchell, Kester, Drake and Brodsky and Dempsy, should each be credited for Qualified Immunity for the purposes of dismissing this motion for summary judgment.

"[A] defendant is entitled to qualified immunity under the objectively reasonable standard if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Williams v. Ont. County Sheriff's Dep't*, 662 F. Supp. 2d. 321, 332 (W.D.N.Y, 2009) citing *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). "Because qualified immunity is an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir.1996).  Even if the plaintiff's rights were clearly established at the time of the alleged violation, an Officer may nonetheless enjoy qualified immunity if it was objectively reasonable for him to believe that his actions did not violate those rights. *Robison v. Via*, 821 F.2d 921 (2d Cir.1987). "Ordinarily, determining whether official conduct was objectively reasonable requires examination of the information possessed by the officials at that time (without consideration of subjective intent)." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d

84, 106 (2d Cir. 2003). "In an unlawful arrest action, an officer is . . . subject to suit only if his 'judgment was so flawed that no reasonable officer would have made a similar choice.'" *Provost v City of Newburgh*, 262 F3d 146, 160 (2d Cir 2001) quoting *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Pierson v. Ray*, 386 U.S. 547, 555 (1967).

The Officers should enjoy qualified immunity because at the time of the challenged arrest, it was objectively reasonable for them to believe their behavior did not violate the plaintiff's clearly established rights. It is undisputed that the officers believed that they had a right to arrest Plaintiff for trespassing as he would not leave the premises when lawfully ordered to do so and as such they should have a right to arrest and take custody of the Plaintiff at that time. It is also undisputed that the Plaintiff turned around and balled his fists in a threatening manner at the officers. See Exhibit E.

**"Even if the force (stop) is objectively unreasonable, an officer may still be eligible for qualified immunity if it was objectively reasonable for the officer to believe that [his] actions did not violate clearly established law."** Emphasis added. *Salim v. Proulx*, 93 F.3d 86, 89 (2d. Cir. 1996). It is impossible for a reasonable officer to to find that the actions of the officers in this case were objectively unreasonable, using an ordinary patrol officer in similar circumstances standard, when their conduct, was deemed appropriate by everyone who reviewed the investigatory documents, from their immediate Sergeant, the Professional Standards Section, the Chief of Police and the CRB. Plaintiffs can only speculate in generalized terms about excessive force in this matter.

Accordingly, Defendants are immune from liability on the excessive force cause of action.

## CONCLUSION

In Plaintiff's motion for summary judgment, 41 out of the Plaintiffs 57 Statement of Facts are disputed by the Defendants. Additionally, outside of the statement of facts, almost ALL of the facts of this matter are contested. All of the Plaintiff's conclusory statements of law are disputed or contradicted by the facts and evidence submitted in this opposition. The law submitted by the Plaintiff is wrong but in the least it is all contested with case law and evidence submitted by the defendants. Summary Judgment should not be granted in this matter and the motion submitted by the Plaintiff should be dismissed.

DATED: May 24, 2024                    PATRICK BEATH, CORPORATION COUNSEL

                                         /s/John M. Campolieto
                                       BY: JOHN M. CAMPOLIETO, ESQ, of Counsel
                                       *Attorneys for Defendants*
                                       City Hall Room 400A, 30 Church Street
                                       Rochester, New York 14614
                                       (585) 428-7410

To: To:   ROTH & ROTH LLP
          Elliot D. Shields, Esq.
          *Attorneys for Plaintiff*
          192 Lexington Avenue,
          Suite 802 New York, New
          York 10016 (212) 425-
          1020
          eshields@rothandrothlaw.com