UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID VANN, *by guardian of his person and property Diana Vann*,

        Plaintiff,

v.

THE CITY OF ROCHESTER, *a municipal entity*, *et al.*,

        Defendants.
_____

**DECISION AND ORDER**

6:18-CV-06464 EAW

## INTRODUCTION

Plaintiff David Vann ("Plaintiff") has sued the City of Rochester and numerous employees of the Rochester Police Department for injuries arising out of an incident on September 4, 2015, during which he was arrested by defendants Police Officer Matthew Drake ("Drake"), Police Officer Steven Mitchell ("Mitchell"), Investigator Jeffrey Kester ("Kester"), Police Officer Adam Brodsky ("Brodksy"), and Police Officer Timothy Dempsey ("Dempsey") (collectively the "Arresting Defendants"). (Dkt. 143). Plaintiff has moved for partial summary judgment on his claims that Drake, Mitchell, Kester, Brodsky, and Dempsey used excessive force while arresting him. (Dkt. 134). For the reason set forth below, the Court grants Plaintiff's motion in part with respect to his excessive force claims against Mitchell and Drake, and otherwise denies Plaintiff's motion.

# BACKGROUND

## I. Factual Background

The parties present disparate versions of what occurred between Plaintiff and the Arresting Defendants on September 4, 2015. The entire interaction was captured on surveillance video, which the Court has viewed carefully. "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a <u>genuine</u> dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted and emphasis added). Where a videotape of the relevant events exists and there are no disputes about its accuracy[1], a court deciding a motion for summary judgment must "view[] the facts in the light depicted by the videotape." *Id*. at 381; *see also Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court on . . . [a motion for judgment as a matter of law[2]] if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party."). In accordance with these principles, the Court's factual recitation relies on its own review of the videotape evidence, and not on the gloss thereon provided by either party. The Court has noted where the

---

[1] Arresting Defendants admit that the video surveillance cameras were properly functioning on September 4, 2015, and that the video recordings submitted by Plaintiff are "[t]rue and correct copies of the video recordings from these cameras." (Dkt. 166 at ¶ 6; Dkt. 169 at ¶ 6).

[2] "[T]he standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000) (quotations omitted).

videotape is unclear and has further explained where the parties' claims are flatly contradicted thereby.

The Court has given no consideration to the unsigned, undated affidavit submitted by Mitchell. (*See* Dkt. 160-4). "The evidence proffered by a party in opposition to a motion for summary judgment must be admissible at trial." *Platt as co-trustees of Platt Fam. Artwork Tr. v. Michaan*, 695 F. Supp. 3d 420, 439 (S.D.N.Y. 2023). While that does "not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), it does generally prohibit reliance on unsworn statements, *see Griggs v. Schmauss*, 678 F. Supp. 3d 343, 352 (W.D.N.Y. 2023). Instead of the unsigned, undated affidavit, the Court has considered Mitchell's deposition testimony.

The Court has also given no consideration to the unsworn written statement given by witness Dawan Algazali ("Algazali") on September 5, 2015. (Dkt. 160-7). This statement is inadmissible hearsay, and a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial." *Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 409 (S.D.N.Y. 2015) (citation omitted). The Arresting Officers have not made such a showing with respect to the contents of Algazali's statement.[3]

---

[3]    The form on which Algazali made this written statement contains a notice that says: "FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE NEW YORK STATE PENAL LAW." (*See* Dkt. 160-7 at 1). The Second Circuit has explained that "an unsworn matter may be treated as sworn" if it satisfies three criteria: "the declarant must (1) 'declare (or certify, verify, or state),' (2) 'under penalty of perjury,' (3) that the matter sworn to is

On September 4, 2015, at approximately 11:00 p.m., Plaintiff went to a convenience store located on South Avenue in the City of Rochester. (Dkt. 166 at ¶ 2; Dkt. 169 at ¶ 2). Plaintiff testified at his deposition that he purchased an individual cigarette for 50 cents, and that Algazali, the store clerk, did not give him back the appropriate change. (Dkt. 134-4 at 8). According to Plaintiff, this disagreement over the proper amount of change escalated into a physical altercation where the store employees pushed him out the store's side door. (*Id*. at 9-10).

Algazali called 911. (Dkt. 166 at ¶ 10; Dkt. 169 at ¶ 10). Drake testified at his deposition that he was the first officer to arrive in response to this call. (Dkt. 134-7 at 4).[4] Drake spoke to Plaintiff, who was calm and peaceful during the discussion. (*Id*. at 5). Plaintiff did not act violent or aggressive towards Drake or Algazali. (*Id*. at 6).

---

'true and correct.'" *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (quoting 28 U.S.C. § 1746). While the notice on the written form may arguably satisfy the second of these criteria, nowhere in his written statement does Algazali satisfy the third requirement.

Moreover, even assuming that Algazali's written statement was sworn, it would not serve to create a genuine issue of material fact given the incontrovertible videotape evidence. Consideration of Algazali's written statement would accordingly not change the Court's resolution of the instant motion.

[4] In their response to Plaintiff's motion, Arresting Defendants suggest that Kester, Drake, and Mitchell arrived at the scene at the same time. (Dkt. 169 at ¶ 11). But the document they cite for this proposition does not state this, and this assertion is not consistent with the deposition testimony. (*See* Dkt. 134-7 at 4 (Drake testifying that he arrived at the scene first); Dkt. 134-8 at 4 (Mitchell testifying that Drake was already on the scene when he arrived), 8 (Mitchell testifying that Kester arrived on the scene while Mitchell was speaking with the store clerk)). Arresting Officers have not demonstrated a genuine dispute as to the order in which they arrived on the scene, nor is this fact in any event material to Plaintiff's excessive force claims.

Mitchell arrived on the scene and spoke to Algazali outside the store, while Drake remained inside the store speaking to Plaintiff. (*Id*. at 6-7). Kester arrived on the scene during this conversation. (Dkt. 134-8 at 8). Mitchell and Kester spoke briefly on the sidewalk, and then Mitchell went into the store to speak to Plaintiff and Drake went out to the sidewalk. (*Id*. at 8-9). Eventually Plaintiff exited the store. (Dkt. 134-9 at 4).

In opposition to Plaintiff's motion, Arresting Defendants assert that after he exited the store, Plaintiff "raised his fists in a fighting stance." (Dkt. 169 at ¶ 28; *see id*. at ¶¶ 29-32). This assertion is flatly contradicted by the surveillance video, which shows that Plaintiff exited the store with his hands swinging loosely by his side and that he then joined his hands in front of his body. (Dkt. 134-6, Ex. 8 at 4:07-4:24).[5] Mitchell also testified at his deposition that when Plaintiff exited the store, he "never raised his hands and squared up with" the officers. (Dkt. 170-2 at 68). The Court accordingly finds no genuine dispute as to whether Plaintiff raised his fists in a fighting stance when he existed the store; he indisputably did not and no reasonable juror could conclude to the contrary.

Kester testified at his deposition that while standing outside, Plaintiff "expressed that he was upset at the store clerk" and "wasn't leaving until he got some money," and that "right after that," Mitchell approached Plaintiff and told him he was under arrest. (Dkt. 134-9 at 5-6). On the surveillance video, Mitchell approaches Plaintiff and pulls his arms behind his back. (Dkt. 134-6, Ex. 8 at 4:23-4:26). Kester walks forward and grabs

---

[5] For ease of reference, the Court has cited to the video exhibit that compiles the footage of the incident. Time references are to the time elapsed on the compilation video, and not to the time stamp on the footage itself.

Plaintiff's right arm, while Mitchell begins to handcuff Plaintiff. (*Id*. at 4:26-4:29). Mitchell places a handcuff on Plaintiff's left wrist and starts placing a handcuff on Plaintiff's right wrist, when Plaintiff's arm begins to twist. (*Id*. at 4:29-4:38). It is not clear from the surveillance video whether Plaintiff deliberately twisted his arm or if this resulted from the officers moving his arms in an attempt to handcuff him. Mitchell and Kester then grab Plaintiff—Mitchell by the arms and Kester near the base of his neck. (*Id*. at 4:38-4:39). Drake also moves forward and puts a hand on Plaintiff's back. (*Id*.). A struggle ensues, and Plaintiff—still held by Mitchell and Kester—is propelled forward into a bicycle. (*Id*. at 4:38-4:41). The three officers and Plaintiff then move together down the sidewalk and fall to the ground. (*Id*. at 4:41-4:47).

The quality of the surveillance video significantly deteriorates during this portion of the incident, as Plaintiffs and the three officers move onto a part of the sidewalk covered by a black and white surveillance camera mounted some distance away. Drake can be seen standing over Plaintiff, Kester, and Mitchell, who are on the ground. (*Id*. at 4:53-4:58). Kester lays down on the ground while Drake continues to stand and Mitchell holds Plaintiff to the pavement. (*Id*. at 4:58-5:04).[6] It appears that Mitchell finishes handcuffing Plaintiff. (*Id*. at 5:05-5:11).[7] Plaintiff begins to move and Mitchell strikes him, then puts his weight on Plaintiff and appears to speak to him. (*Id*. at 5:11-5:34). Mitchell then stands and pulls

---

[6]   Kester seriously injured his leg when he fell. (Dkt. 160-11 at 36-37).

[7]   Mitchell testified before a grand jury that he finished handcuffing Plaintiff while on the ground. (Dkt. 160-11 at 12-13).

Plaintiff up from the ground and begins walking towards his patrol car, while Kester continues to lie on the ground with Drake standing near him. (*Id*. at 5:34-5:44).

The next part of the incident was captured in much better detail, from a color surveillance camera in front of the store. Mitchell walks with Plaintiff in front of him to his patrol car and pushes Plaintiff against it. (*Id*. at 6:45-6:49). Plaintiff is handcuffed with his hands behind his back and is not resisting or struggling in any fashion. Plaintiff's body bounces slightly to the left when it hits the patrol car, and Mitchell hits Plaintiff in the back of the head, grabs Plaintiff by the shoulders, throws him away from the patrol car, grabs him by the back of the neck, and punches him in the head. (*Id*. at 6:50-6:55). Throughout this interaction, Plaintiffs arms are handcuffed behind his back and are hanging loosely. (*Id*.). He does not struggle or attempt to fight with Mitchell.

Drake runs over and grabs Plaintiff's right side, while Mitchell holds his left side. (*Id*. at 6:55-6:57). Together, Drake and Mitchell throw Plaintiff to the pavement, where he lands on his back. (*Id*. at 6:57-7:00).[8] Immediately after Plaintiff lands, Mitchell punches him again. (*Id*. at 7:00-7:01). Drake sits with his body on Plaintiff's left leg while Mitchell moves Plaintiff's body. (*Id*. at 7:00-7:12). Mitchell then pulls Plaintiff out from beneath Drake, lifts him up, and pushes him onto the sidewalk on his stomach. (*Id*. at 7:12-7:20). Plaintiff does not resist Mitchell's effort to turn him over. (*Id*.). While Plaintiff is on his stomach on the sidewalk with his hands cuffed behind his back and Mitchell's body weight

---

[8] Plaintiff asserts that Drake and Mitchell pushed him against the patrol car after grabbing him (*see* Dkt. 166 at ¶ 55), but that is not clear from the surveillance video.

on him, Mitchell takes out a can of pepper spray and repeatedly sprays Plaintiff in the face. (*Id*. at 7:20-7:27). Plaintiff is not struggling or resisting in any way. (*Id*.).

Mitchell then stands and adjusts his position before returning to the ground. (*Id*. at 7:27-7:33). It appears that he again places his body weight on top of Plaintiff, though Drake blocks some of the view. (*Id*.). Drake gets up and moves away, while Mitchell continues to hold Plaintiff on the ground. (*Id*. at 7:33-7:50). Plaintiff begins to move, and Mitchell turns him over onto his back. (*Id*. at 7:50-7:56). Additional police officers, including Brodsky and Dempsey, arrive on the scene, while Mitchell continues to hold Plaintiff on the ground on his back. (*Id*. at 7:56-8:12). Brodsky and Dempsey approach Plaintiff and Mitchell, and the officers pick Plaintiff up and turn him from his stomach to his back. (*Id*. at 8:12-8:21). It is difficult to see precisely what happens during this part of the incident, because many people are clustered together, but it appears that Brodsky falls and lands on Plaintiff. (*Id*.).

Mitchell, Brodsky, and Dempsey hold Plaintiff on the ground while defendant Police Officer David E. Kephart searches him. (*Id*. at 8:21-8:54).[9] Mitchell and Brodsky then pull Plaintiff to his feet and move him to a patrol car. (*Id*. at 8:54-9:07). Plaintiff appears to be unable to walk under his own power. (*Id*.). Mitchell and Brodsky begin to place Plaintiff in the patrol car, but then pull him back out to conduct a further search. (*Id*. at 9:07-10:10) During this search, Mitchell lifts Plaintiff's handcuffed hands and arms backwards above his waist and holds them in that position. (*Id*. at 9:17-10:10).

---

[9]   No guns, weapons, drugs, or contraband were discovered during this search. (Dkt. 166 at ¶ 70; Dkt. 169 at ¶ 70).

## II. Procedural Background

Discovery is ongoing. (Dkt. 174). Arresting Defendants have not argued that discovery is incomplete regarding their use of force during Plaintiff's arrest.

Plaintiff filed the instant motion for partial summary judgment on February 29, 2024. (Dkt. 134). Arresting Defendants sought and received a lengthy extension of time for their response (*see* Dkt. 140; Dkt. 158), which they ultimately filed on May 24, 2024 (Dkt. 160). Plaintiff then realized that he had failed to file a statement of undisputed material facts, as required by Local Rule of Civil Procedure 56(a)(1), and sought and received permission to file such a statement. (*See* Dkt. 164; Dkt. 165; Dkt. 166; Dkt. 168). Arresting Defendants were given an opportunity to supplement their opposition papers (Dkt. 165; Dkt. 168), which they did on July 9, 2024 (Dkt. 169). Plaintiff completed the briefing by filing a reply. (Dkt. 170).

## DISCUSSION

### I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]"

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.     Plaintiff's Excessive Force Claims

Plaintiff seeks partial summary judgment with respect to his excessive force claims against Drake, Mitchell, Kester, Brodsky, and Dempsey. These claims are asserted pursuant to 42 U.S.C. § 1983, which provides a federal cause of action against persons who, under color of state authority, caused the deprivation of any rights, privilege, or immunities secured by the Constitution and laws of the United States.

Under the circumstances of this case, an allegation of excessive force invokes "the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). "All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 148 (2d Cir. 2021) (citation and alterations omitted). Assessing the reasonableness of the force "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 148-49 (citation and alteration omitted). "[A] government officer may not intrude on a person's Fourth Amendment rights by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019).

For the following reasons, the Court concludes that no reasonable juror could find all of the force employed by Mitchell and Drake reasonable under the objective circumstances of the arrest. But genuine issues of material fact preclude entry of summary judge with respect to Kester, Brodsky, and Dempsey.

A. **Claims Against Mitchell and Drake**

At the time of the incident at issue, "it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others."

*Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020). For example, in *Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010), the Second Circuit concluded that no reasonable officer could believe "that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee." *Id*. at 99 n.5; *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877 KMK, 2015 WL 5730605, at *17 (S.D.N.Y. Sept. 30, 2015) (no reasonable officer could believe that it was necessary to kick or punch an arrestee who was on the ground, handcuffed with his hands behind his back, and not actively resisting); *Ostroski v. Town of Southold,* 443 F. Supp. 2d 325, 343 (E.D.N.Y. 2006) ("[A] reasonable officer should have known that repeatedly striking a subdued suspect violates a clearly established constitutional right not to be subjected to excessive force during arrest.").

The surveillance video in this case compels the conclusion that Mitchell and Drake used unreasonable force against Plaintiff at a time when he was handcuffed and not actively resisting arrest. Specifically, after Mitchell walked Plaintiff over to the patrol car—at which time Mitchell acknowledged Plaintiff was fully handcuffed—he pushed Plaintiff against the patrol car, slapped Plaintiff in the back of the head, grabbed Plaintiff by the shoulders, flung him away from the patrol car, grabbed him by the back of the neck, and punched him in the head. (Dkt. 134-6, Ex. 8 at 6:45-6:55). The only explanation Mitchell offered at his deposition for why this force was necessary was that Plaintiff's "body weight pushe[d] off" the patrol car and Plaintiff moved to the left, interfering with Mitchell's ability to perform a search. (Dkt. 160-5 at 17). Mitchell did not claim that Plaintiff was fighting him or refusing to comply with his instructions—to the contrary, Mitchell testified that he had not said anything to Plaintiff at that time. (*Id*. at 20-21).

In other words, to find in Mitchell's favor on Plaintiff's excessive force claim, a juror would have to conclude that it was reasonable for Mitchell to slap, grab, and punch in the head a man who was handcuffed with his arms behind his back, not because he resisted or refused to comply with directions, but because he slightly moved his body. No reasonable juror could reach such a conclusion. Nor could a reasonable juror conclude that it was reasonable for Mitchell and Drake to grab Plaintiff—who again, was handcuffed with his arms behind his back and not actively resisting—and throw him to the sidewalk, or that it was reasonable for Mitchell to punch him immediately after he landed.

Arresting Defendants' arguments to the contrary are wholly unpersuasive. They claim that Plaintiff was "actively resisting and pulling away while reaching for his waistband, not searched and the officers are not sure if he is hand cuffed properly." (Dkt. 160-2 at 9). These contentions—apart from the fact that Plaintiff had not yet been searched—are entirely unsupported by the record. The incontrovertible surveillance video shows that Plaintiff was neither "actively resisting and pulling away" nor "reaching for his waistband" when he was first grabbed and punched by Mitchell, nor was he doing so when he was thrown to the sidewalk by Mitchell and Drake. Mitchell further testified that Plaintiff was fully handcuffed at this point. (Dkt. 160-5 at 14-15).

Moreover, while Mitchell claimed at his deposition that Plaintiff had reached for his waistband during other parts of the incident, he did not testify that Plaintiff was reaching for his waistband at this time or that this was the reason why he used these types of force

against Plaintiff. And in the grand jury testimony cited by Arresting Defendants[10] (*see* Dkt. 160-2 at 9), neither Mitchell nor Drake testified that Plaintiff was reaching for his waistband at this point in the incident (*see* Dkt. 160-11 at 14-15, 27-28).[11] There is no genuine issue of material fact as to whether Plaintiff was reaching for his waistband between the time that he was walked to the patrol car by Mitchell and the time he was thrown to the ground by Mitchell and Drake and punched by Mitchell.

A reasonable juror also could not find that it was reasonable for Mitchell to spray pepper spray into Plaintiff's face while he was restrained on the ground, with his hands cuffed behind his back. Again, Arresting Defendants' proffered rationale for this use of force lacks merit. Mitchell testified that he pepper-sprayed Plaintiff so that he would "stop moving around" so that he could be searched. (Dkt. 160-5 at 33). But the surveillance video shows that Plaintiff was on the ground and not moving around at the time Mitchell used the pepper spray. There is no genuine dispute of material fact that Mitchell sprayed pepper spray into the face of a handcuffed, unresisting arrestee who was on the ground on his stomach.[12] No reasonable juror could find this use of force anything other than

---

[10] The Court will assume for the sake of argument that the statements made by Mitchell and Drake before the grand jury could be presented in admissible form at trial.

[11] Mitchell did testify before the grand jury that Plaintiff "stood right in front of" him and "came at" him (Dkt. 160-11 at 14), which is flatly contradicted by the surveillance video.

[12] Mitchell testified at his deposition that the pepper spray "didn't come out the way it was supposed to" and "did not come out fully." (Dkt. 160-5 at 31-32). But there was no justification for any use of pepper spray on Plaintiff, and so any dispute regarding the efficacy of the first application is not material.

excessive.

Plaintiff also argues that Mitchell used excessive force when he struck Plaintiff while he was on the ground after falling on Kester, and for two other alleged punches that occurred immediately before Plaintiff was pepper-sprayed and after he was pepper-sprayed.  These alleged strikes/punches occur at 5:15-5:17, 7:18-7:20, and 7:53-7:55 on the compilation video attached to Dkt. 134-6 as Exhibit 8.  The Court finds that genuine issues of material fact exist as to this aspect of Plaintiff's excessive force claim against Mitchell.  The video of the first of these strikes (Dkt. 134-6, Ex. 8 at 5:15-5:17 (showing the recording from CAM 3 timestamped 11:41:06 PM to 11:41:07 PM)) is unclear, and the Court cannot say as a matter of law that Plaintiff was not reaching for his waistband, which is what Mitchell testified to at his deposition (*see* Dkt. 160-5 at 10-11).  Further, there is a dispute regarding whether Plaintiff was fully handcuffed at this time—Mitchell testified at his deposition that he did not fully get the handcuffs on Plaintiff before the fall.  Under these circumstances, the Court cannot conclude as a matter of law that this strike was excessive.

The Court also cannot conclude that the other two alleged punches even occurred, let alone that they were excessive as a matter of law.  As to the first, it is not clear from the surveillance video that Mitchell in fact punched Plaintiff.  He certainly appears to push Plaintiff to the ground (*see* Dkt. 134-6, Ex. 8 at 7:18-20 (showing the recording from CAM 4 timestamped 11:42:08 PM to 11:42:10 PM);  Dkt. 134-6, Ex. 15), but it is not apparent that this was a punch, as opposed to part of turning Plaintiff from his back to his stomach.  Mitchell testified at his deposition that he put his hand on Plaintiff's back to control him.

(Dkt. 160-5 at 25-26). The Court cannot conclude as a matter of law that this explanation is unreasonable.

As to the second alleged punch (*see* Dkt. 136-4, Ex. 8 at 7:53-7:55 (showing the recording from CAM 4 timestamped 11:42:43 PM to 11:42:45 PM)), the Court cannot discern where in the surveillance video this punch purportedly occurs (*see* Dkt. 134-6, Ex. 17). Mitchell rolls Plaintiff from his stomach to his back, but the Court cannot see the claimed punch. Mitchell denied striking Plaintiff at this point in the incident. (Dkt. 160-5 at 37-38). The Court cannot conclude on this record that this alleged punch constituted excessive force as a matter of law.

The Court also cannot conclude as a matter of law that Mitchell's raising of Plaintiff's arms above his head during the search was excessive force as a matter of law, contrary to Plaintiff's argument. It is important to recall for purposes of this analysis that the Court is not a fact-finder, and the question is not whether the Court thinks that this use of force was reasonable. Mitchell testified that Plaintiff did not complain that he was uncomfortable with the way that his arms had been moved. (Dkt. 160-5 at 57). The Court is unaware of any cases holding that it always constitutes excessive force to lift an arrestee's handcuffed arms behind their back while performing a search, nor has Plaintiff cited any such cases. While a jury certainly could conclude that Plaintiff was put in this position gratuitously and for the purposes of causing him pain, the Court cannot reach that conclusion as a matter of law.

Finally, as to those aspects of Plaintiff's excessive force claim against Mitchell that are intertwined with his excessive force claims against Brodsky and Dempsey, the Court

finds that genuine issues of material fact exist, for the reasons discussed as to those defendants.

In sum, the Court grants summary judgment to Plaintiff on his claims that: (1) Mitchell used excessive force when, after walking Plaintiff to his patrol car, he hit Plaintiff in the back of the head, grabbed and threw Plaintiff, and punched Plaintiff in the face (*see* Dkt. 134-6, Ex. 8 at 6:50-6:55 (showing the recording from CAM 4 timestamped 11:41:40 PM to 11:41:45 PM)); (2) Mitchell and Drake used excessive force when they grabbed Plaintiff and threw him to the sidewalk (*see id*. at 6:56-7:00 (showing the recording from CAM 4 timestamped 11:41:46 PM to 11:41:50 PM)); (3) Mitchell used excessive force when he punched Plaintiff immediately after Plaintiff landed on the sidewalk (*see id*. at 7:00-7:01 (showing the recording from CAM 4 timestamped 11:41:50 PM to 11:41:51 PM)); and (4) Mitchell used excessive force when he pepper-sprayed Plaintiff (*see id*. at 7:21-7:30 (showing the recording from CAM 4 timestamped 11:42:11 PM to 11:42:20 PM)). The Court finds that genuine issues of material fact exist with respect to Plaintiff's claims that Mitchell otherwise used excessive force.

B. **Claim Against Kester**

Plaintiff seeks summary judgment that Kester used excessive force when he pulled Plaintiff to the ground while attempting to handcuff him. (Dkt. 134-1 at 17-21). The Court finds that genuine issues of material fact exist with respect to the reasonableness of the force employed by Kester.

Plaintiff argues that the Second Circuit's decision in *Brown v. City of New York*, 798 F.3d 94 (2d Cir. 2015), establishes his entitlement to summary judgment on his

excessive force claim. To the contrary, the Court finds that *Brown* precludes entry of summary judgment in Plaintiff's favor.

In *Brown*, two police officers took the defendant, a 120-pound woman, to the ground and sprayed her with pepper spray because she would not cooperate with their attempts to handcuff her. *Id*. at 102-103. The Second Circuit concluded that "[t]he assessment of a jury [was] needed" to determine "whether Fourth Amendment reasonableness was exceeded when Brown was taken to the ground after refusing to put her hands behind her back and when officers struggled with her on the ground and used pepper spray to accomplish handcuffing." *Id*. at 103. In other words, the Second Circuit in *Brown* expressly left open the possibility that a jury could find the officers' actions reasonable.

Here, a jury could find that Plaintiff moved his right arm away while Mitchell and Kester were attempting to handcuff him.[13] Under *Brown*, the Court cannot conclude as a matter of law that it was then unreasonable for Kester to attempt to take Plaintiff to the ground. The determination of Plaintiff's excessive force claim against Kester is properly left for the trier of fact.

C. **Claims Against Brodsky and Dempsey**

Plaintiff seeks summary judgment that Mitchell, Brodsky, and Dempsey used excessive force when they turned him from his back to his stomach, which he describes as

---

[13] The jury would not be required to make such a finding. It is unclear from the video whether Plaintiff moved his arm, or his arm was moved by the officers as they attempted to handcuff him. Of course, if Plaintiff was cooperating—as he claims—it would have unquestionably been excessive for Kester to try to take him to the ground. But the record before the Court is not conclusive on that issue.

"body slamming" him into the sidewalk. (Dkt. 134-1 at 25-26). As an initial matter, Plaintiff argues that he should be granted summary judgment on his claims against Brodsky and Dempsey because Arresting Defendants did not specifically address them in their opposition papers. (Dkt. 170 at 14-15). However, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). The Court must look at the evidence presented by Plaintiff and determine whether he has established as a matter of law that Brodsky and Dempsey used excessive force against him. The Court finds that he has not.

In viewing the video of this portion of the incident, it is difficult to discern precisely what happens. (*See* Dkt. 136-4 at Ex. 18). The involved officers are flipping Plaintiff from his back to his stomach when Brodsky suddenly lurches forward and lands on Plaintiff, causing him to hit the sidewalk. It appears from the video that Brodsky may have lost his balance and fallen. The record before the Court is devoid of any testimony from either Plaintiff or Brodsky regarding what precisely happened during this portion of the incident. Plaintiff's reliance solely on the video, which is ambiguous as to this part of the incident, is insufficient to demonstrate excessive force as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for partial summary judgment (Dkt. 134) is granted in part and denied in part. Specifically, the Court grants Plaintiff's motion as to the following claims: (1) that Mitchell used excessive force when, after walking Plaintiff to his patrol car, he hit Plaintiff in the back of the head, grabbed and threw

Plaintiff, and punched Plaintiff in the face (*see* Dkt. 134-6, Ex. 8 at 6:50-6:55 (showing the recording from CAM 4 timestamped 11:41:40 PM to 11:41:45 PM)); (2) that Mitchell and Drake used excessive force when they grabbed Plaintiff and threw him to the sidewalk (*see id.* at 6:56-7:00 (showing the recording from CAM 4 timestamped 11:41:46 PM to 11:41:50 PM)); (3) that Mitchell used excessive force when he punched Plaintiff immediately after Plaintiff landed on the sidewalk (*see id.* at 7:00-7:01 (showing the recording from CAM 4 timestamped 11:41:50 PM to 11:41:51 PM)); and (4) that Mitchell used excessive force when he pepper-sprayed Plaintiff (*see id.* at 7:21-7:30 (showing the recording from CAM 4 timestamped 11:42:11 PM to 11:42:20 PM)).  The Court denies Plaintiff's motion for summary judgment in all other respects.

    SO ORDERED.

                                             _____
                                             ELIZABETH A. WOLFORD
                                             Chief Judge
                                             United States District Court

Dated:  August 28, 2024
        Rochester, New York